UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT F. BACH AND DIANE M. BACH, On Behalf of Themselves And All Others Similarly Situated,<br><br>         Plaintiffs,<br>  v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, and DALE E. REDMAN,<br><br>         Defendants. | No. 3:10-cv-00395-BAJ-CN<br>Honorable Brian A. Jackson<br>Magistrate Judge Christine Noland |
| DAVID ISMAN, on behalf of himself and all others similarly situated,<br><br>         Plaintiffs,<br>  v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, and DALE E. REDMAN,<br><br>         Defendants. | No. 3:10-cv-00464-BAJ-DLD<br>Honorable Brian A. Jackson<br>Magistrate Judge Docia L. Dalby |
| ARIK DVINSKY, On Behalf of Himself And All Others Similarly Situated,<br>         Plaintiffs,<br>  v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, DALE E. REDMAN, JOHN F. GIBLIN, and GREGORY H. BROWNE,<br><br>         Defendants. | No: 3:10-cv-00470-JJB-CN<br>Honorable James J. Brady<br>Magistrate Judge Christine Noland |

| | |
|---|---|
| MELVIN W. BRINKLEY, On Behalf Of Himself And All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>  v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, and DALE E. REDMAN,<br><br>          Defendants. | No. 3:10-cv-00497-JJB-CN<br>Honorable James J. Brady<br>Magistrate Judge Christine Noland |

**MEMORANDUM OF LAW IN SUPPORT OF THE BIRMINGHAM RETIREMENT SYSTEM FOR CONSOLIDATION OF RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

# TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ....................................................................................................... ii

MEMORANDUM OF LAW .......................................................................................................1

I. INTRODUCTION ...........................................................................................................1

II. PROCEDURAL HISTORY.............................................................................................2

III. FACTUAL BACKGROUND ..........................................................................................3

IV. LEGAL ARGUMENT.....................................................................................................5

    A. The Related Actions Should Be Consolidated......................................................5

    B. The Birmingham Retirement System Is Presumptively The Most
       Adequate Lead Plaintiff ........................................................................................6

       1. The Procedure Required by the PSLRA ......................................................6

       2. The Birmingham Retirement System Satisfies All Lead Plaintiff
           Requirements of the PSLRA........................................................................7

           a. The Birmingham Retirement System Has a Significant Financial
              Interest in the Relief By the Class.......................................................7

           b. The Birmingham Retirement System Satisfies Rule 23 ..................8

       3. As an Institutional Investor, the Birmingham Retirement System is the
           Preferred Choice to Serve as Lead Plaintiff...............................................10

       4. The Birmingham Retirement System's Selection of Counsel is Well
           Qualified, and Should be Approved............................................................11

V. CONCLUSION..............................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                                                                           **PAGE NO.**

*Armour v. Network Assocs., Inc.,* 171 F. Supp. 2d 1044 (N.D. Cal. 2001) ....................................... 7

*Bowman v. Legato Sys., Inc.,* 195 F.R.D. 655 (N.D. Cal. 2000) ............................................ 2, 9, 11

*Enron Corp. Sec. Litig.,* 206 F.R.D. 427 (S.D. Tex. 2002) ......................................................... 6

*Fischler v. Amsouth Bancorp*, No. 96-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ...................................................................................................................................... 8

*Gluck v. CellStar Corp.,* 976 F. Supp. 542 (N.D. Tex. 1997) ..................................................... 10

*In re Cavanaugh,* 306 F.3d 726 (9th Cir. 2002) ....................................................................... 7

*In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729 (S.D. Ind. 2000) ........................................ 10

*In re Network Assocs. Litig.,* 76 F. Supp. 2d 1017 (N.D. Cal. 1999) ....................................... 9, 10

*In re Tronox, Inc. Sec. Litig.* Nos. 09 Civ 6220 (SAS), 09 Civ. 6990 (SAS), 09 Civ. 7116 (SAS), 2009 U.S. Dist. Lexis 95349 (S.D.N.Y. Oct. 13, 2009) .................................................... 8

*Johnson v. Celotex Corp.,* 899 F.2d 1281 (2d Cir. 1990) ......................................................... 2, 6

*Takeda v. Turbodyne Technologies,* 67 F. Supp. 2d 1129 (C.D. Cal. 199) .................................... 8

*Thompson v. Shaw Group, Inc.,* No. 04-1685, 2004 U.S. Dist. LEXIS 25641 (E.D. La. Dec. 13, 2004) ............................................................................................................................... 10

**OTHER AUTHORITY**                                                                 **PAGE NO.**

Fed. R. Civ. P. 23(a) ................................................................................................................ 8

H.R. Conf. Rep. No. 104-369, at 34 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 730 ................................................................................. 10

S. Rep. No.104-98, at 11 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 679 ................................................................................. 10

15 U.S.C. § 78u-4(a)(1) ............................................................................................................. 6

15 U.S.C. § 78u-4(a)(3)(A)(I) .................................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................................ 1

15 U.S.C. § 78u-4(a)(3)(B)(I) ...................................................................................................6

15 U.S.C. § 78u-4 (a)(3)(B)(ii) ...............................................................................................5, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa) ............................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................................11

## I. INTRODUCTION

Class member the City of Birmingham Retirement and Relief System (the "Birmingham Retirement System") respectfully submits this Memorandum of Law in support of its motion, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for an order: (i) consolidating the Related Actions; (ii) appointing Birmingham Retirement System as lead plaintiff of a class of purchasers of the securities of Amedisys, Inc. ("Amedisys" or the "Company"); and (iii) approving Birmingham Retirement System's selection of Carney Williams Bates Bozeman & Pulliam, PLLC ("Carney Williams") as lead counsel and Due', Price, Guidry, Piedrahita & Andrews, APA as liaison counsel for the Class.[1]

## II. PROCEDURAL HISTORY

On June 10, 2010, the first action, *Robert Bach et al v. Amedisys, Inc., et al,* (3:10-cv-00395-RET-CN), was filed against Amedisys and certain of its officers and directors (the "Defendants"). Subsequently, three additional complaints[2] were filed against Amedisys and certain of its officers and directors, each alleging similar violations of law and arising from the same set of facts. The four filed actions (collectively referred to as the "Related Actions") allege that Defendants violated the federal securities laws by issuing financial statements during the Class Period that were materially false and misleading. In situations where there are cases pending that involves a common question of law or fact, the Court has the authority to

---

[1] The Birmingham Retirement System purchased Amedisys common stock during the relevant class period. The federal securities laws specifically authorize class members, regardless of whether they have filed a complaint, to move for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B). A copy of Birmingham Retirement System's Certification and chart summarizing their losses in Amedisys common stock is attached as Exhibits 3 and 4 to the Declaration of Kirk A. Guidry ("Guidry Declaration") submitted concurrently herewith.

[2] *David Isman v. Amedisys, Inc., et al*, (3:10-cv-00464-BAJ-DLD); *Arik Dvinsky v. Amedisys, Inc., et al,* 3:10-cv-470-JJB-CN; and *Melvin W. Brinkley v. Amedisys, Inc.,* (3:10-cv-00497-JB-CN).

1

consolidate the actions pursuant to Fed. R. Civ. P.42(a). *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir. 1990). Indeed, as the Court in *Bowman* recognized, "[w]hen multiple putative classes assert substantially the same claims under the [Exchange] Act, the Court must resolve any motions to consolidate prior to considering the issue of appointing a lead plaintiff." *Bowman v. Legato Sys., Inc.*, 195 F.R.D. 655, 656 (N.D. Cal 2000). Consolidation is preferable even if there are some factual differences in the claims asserted in the various lawsuits, as long as all of the "lawsuits are based upon a 'fraud on the market' theory arising out of the same set of alleged statements and omissions" *Id.* at 657. Following the Court's decision whether to consolidate, "the Court shall appoint 'the most adequate plaintiff' to act as lead plaintiff for the litigation." *Id.* at 656.

The related actions against the Defendants claim violation of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated there under, on behalf of investors who purchased or otherwise acquired Amedisys common stock. The related actions are substantially similar and arise from the same set of facts and conduct. As a result, the Court should consolidate all of the aforementioned cases, and any others filed subsequent to this Motion.

### III.     FACTUAL BACKGROUND

Amedisys describes itself as a leading provider of high-quality, low-cost home health services to the chronic, co-morbid, aging American population. The company was started by William F. Borne in 1982 with a $1,500 loan and has grown to over $1.5 billion in annual revenues last year. The Company went public in 1994 and Borne serves as Chief Executive Officer and Chairman of the Board. Amedisys owns and operates some 521 Medicare-certified

2

home health agencies and 65 Medicare-certified hospice agencies in 40 states within the United States, the District of Columbia and Puerto Rico.

Amedisys services its patients through two business units: home health and hospice divisions Amedisys' home health agencies offer a wide range of in home services to individuals who may be recovering from surgery, have a chronic disease or disability or terminal illness. A typical Amedisys home health patient is Medicare eligible, approximately 83 years old, takes approximately 12 different medications on a daily basis and has co-morbidities. In the hospice division, Amedisys provides palliative care and comfort to terminally ill patients and their families. The vast majority of Amedisys patients are Medicare recipients. In fact in 2009, 2008 and 2007, Medicare payments (tax dollars) accounted for 88%, 87%, and 89% respectively of the company's net service revenue.

Between 2000 and 2007 the Centers for Medicare & Medicaid Services ("CMS") paid home health agencies ("HHA"), such as Amedisys a flat fee of $2,200 for up to nine in home therapy visits. Medicare paid an additional reimbursement of $2,200 when a HHA made over nine visits. Beginning in January 2008, CMS eliminated the $2,200 additional reimbursement at ten visits and now provides additional payments at six, fourteen and twenty therapy visits.
Before 2008, Amedisys provided many of its patients with just enough in home therapy visits to trigger the extra $2,200 reimbursement. In 2005 through 2007, very few Amedisys patients received nine visits; however, a large percentage received ten or more visits. For example, in 2007, 28.5% of Amedisys in home therapy patients received between ten and twelve visits, thus triggering the extra $2,200 Medicare reimbursement. Interestingly, in 2008, after CMS modified its rules to trigger extra payments at visits six, fourteen and twenty, Amedisys' in home visit patterns changed to coincide with the triggers for additional Medicare reimbursements. For

3

Case 3:10-cv-00395-BAJ-CN   Document 15-1   08/09/10   Page 8 of 17

example, in 2008, the percentage of Amedisys patients receiving ten visits dropped by 50%, while the percentage of patients receiving six, fourteen and twenty in home therapy visits increased by 8%, 33% and 41% respectively.

On April 27, 2010, *The Wall Street Journal* ("WSJ") reported that Amedisys has been taking advantage of the Medicare reimbursement system by increasing the number of in home therapy visits in order to trigger additional reimbursements. As reported in the article, according to a former Amedisys nurse, the excess visits that triggered additional reimbursements were "not always medically necessary." This nurse also said that she was told by a superior, "we have to have ten visits to get paid." The WSJ article further noted this nurse was instructed by her supervisor to look through patient files to find those who were just shy of the ten visit mark and to call their therapist to arrange for an extra visit. In the wake of this revelation, Amedisys stock price fell $3.98 or 6.5%.

On May 13, 2010, the WSJ did a follow up article where it reported that the Senate Finance Committee had started an investigation into the billing and operating practices of Amedisys. In a Committee letter dated May 12, 2010 to Amedisys, the Committee cited the findings of the WSJ article and requested the Company to produce documents dating as far back as 2006, concerning data on therapy visits, lists of physicians with the highest patient referrals to the Company, and copies of all marketing materials. In the wake of this additional revelation, Amedisys securities fell nearly 8% or $4.48. Additionally, the United States Securities & Exchange Commission has launched an investigation of Amedisys' compliance with federal securities laws.

The Complaint against Amedisys alleges that throughout the Class Period[3], the company through its officers and directors made false and/or misleading statements, as well as failed to disclose material adverse facts about its business, operations, and prospects. Specifically, the Complaints allege that defendants made false and/or misleading statements and/or failed to disclose:

> (1) that the Company's reported sales and earnings growth were materially impacted by a scheme whereby the Company intentionally increased the number of in-home therapy visits to patients for the purpose of triggering higher reimbursement rates under the Medicare home health prospective payment system, as those excess visits were not always medically necessary;
>
> (2) that the Company's reported sales and earnings were inflated by said scheme and subject to recoupment by Medicare;
>
> (3) that the Company was in material violation of its Code of Ethical Business Conduct and compliance due to the scheme to inflate Medicare revenues; and
>
> (4) based on the foregoing, defendants lacked a basis for their positive statements about the Company, its prospects and growth.

## IV. LEGAL ARGUMENT

### A. The Related Actions Should Be Consolidated

The Reform Act provides that the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as Lead Plaintiff for the consolidated actions." *Id.*

Courts have recognized that securities class actions, in particular, are ideally suited for consolidation pursuant to Rule 42(a) because the unification of related actions expedites pretrial

---

[3] The four actions pending before this court all have different proposed class periods. The *Bach* action proposes a class period of February 23, 2010 through and including May 13, 2010; the *Isman* action, April 30, 2008 through June 30, 2010; the *Dvinsky* action, August 2, 2005 through June 30, 2010; and the *Brinkley* action, April 30, 2008 through July 12, 2010.

5

proceedings, reduces case duplication, avoids the contacting of parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *E.g. Johnson, 899 F.2d at 1285* ("[C]onsiderations of judicial economy favor consolidation."); *Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 439 (S.D. Tex. 2002). The Related Actions present virtually identical factual and legal issues, as they all allege violations of the federal securities laws. Each action names similar defendants and arises from the same underlying facts and circumstances; thus, consolidation is appropriate.

### B. The Birmingham Retirement System Is Presumptively The Most Adequate Lead Plaintiff

#### 1. The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), (a)(3)(B)(ii).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(I). Within 60 days after publication of that notice, any person who is a member of the proposed class may apply to the Court to be appointed lead plaintiff. *Id.*

Second, the PSLRA provides that within 90 days after publication of notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B)(I). In determining the "most adequate plaintiff," the Act provides:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii); *See generally In re Cavanaugh,* 306 F.3d 726, 729-30 (9th Cir. 2002); *Armour v. Network Assocs., Inc.,* 171 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001).

### 2. The Birmingham Retirement System Satisfies All Lead Plaintiff Requirements Of The PSLRA

The Birmingham Retirement System has timely responded to the statutory notice of the action by moving this Court to appoint it as lead plaintiff. The Birmingham Retirement System is well qualified to represent the class. The Birmingham Retirement System executed a certification listing its respective transactions in Amedisys securities, and stating its willingness to serve as a representative party on behalf of all class members. Thus, the Birmingham Retirement System satisfies the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

#### a. The Birmingham Retirement System Has A Significant Financial Interest In The Relief Sought By The Class

During the Class Period, as evidenced by, among other things, the accompanying certification, Birmingham Retirement System purchased Amedisys stock and has suffered estimated losses of $126,737.69 as a result of Defendants' misconduct. *See* Exhibit 3 to the

7

Guidry Declaration submitted concurrently herewith. The Birmingham Retirement System has expended $356,606.00 to purchase 8,900 shares of Amedisys stock during the class period.[4]

### b. The Birmingham Retirement System Otherwise Satisfies Rule 23

Significantly, at this stage of the proceedings, a court need only consider whether a proposed lead plaintiff meets the typicality and adequacy requirements of Rule 23. *In re Tronox, Inc. Sec. Litig*. Nos. 09 Civ. 6220 (SAS), 09 Civ. 6990 (SAS), 09 Civ. 7116 (SAS), 2009 U.S. Dist. Lexis 95349, at *13 (S.D.N.Y. Oct. 13, 2009); *Takeda v. Turbodyne Technologies,* 67 F. Supp. 2d 1129, 1131-1135 (C.D. Cal. 199). The Birmingham Retirement System satisfies these elements of Rule 23[5] because, like other class members, it purchased Amedisys common stock on the open market during the Class Period at prices artificially inflated by the materially false and misleading statements issued by Defendants, and has been damaged thereby.[6] Thus, their claims are typical, if not identical to those of the other members of the class. The Birmingham Retirement System will also be an adequate representative of the class, as its interests are clearly aligned with the other members of the class. The Birmingham Retirement System shares numerous common questions of law and fact with the other members of the class, further

---

[4] For the purposes of calculating losses for this Motion, Birmingham Retirement System used the most expansive class period of the *Dvinsky* action, August 2, 2005 through June 30, 2008. Because Birmingham did not sell any Amedisys stock during the class period its LIFO and FIFO damages are the same.

[5] Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

[6] "A wide-ranging analysis under Rule 23 is not appropriate [at this stage] and should be left for consideration of a motion for class certification." *Fischler v. Amsouth Bancorp*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997).

substantiating that its claims are typical of other claims. What is more, the Birmingham Retirement System has already taken significant steps demonstrating that it has and will protect the interests of the class; it has timely sought to participate as the lead plaintiff for the class, and has retained competent and experienced counsel to prosecute their claim. Thus, the Birmingham Retirement System satisfies the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements of Rule 23 of the Federal Rules of Civil Procedure.

The Birmingham Retirement System will work diligently to maximize the Class's recovery if appointed lead plaintiff. *See* Declaration of Patricia C. Burns ("Burns Declaration") at ¶5, attached as Exhibit 2 to the Guidry Declaration submitted concurrently herewith. To this end, appointment of the Birmingham Retirement System as lead plaintiff would advance one of the Reform Act's primary goals - to encourage institutional investors with large financial stakes in the outcome to assume control over securities class actions. *In re Network Assos. Sec. Litig.,* 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999). Courts have repeatedly recognized that such ability and willingness to exercise effective supervision over the litigation, as the Birmingham Retirement System will exercise in this case, is a significant factor to consider when appointing a lead plaintiff. *See, e.g., Bowman v. Legato Systems, Inc.,* 195 F.R.D. 655, 658 (N.D. Cal. 2000).

Here, as set forth in the Guidry Declaration and accompanying exhibits, the Birmingham Retirement System has made the requisite showing required by the PSLRA and its interests are clearly aligned with those of the proposed Class. First, as noted above, the Birmingham Retirement System shares substantially similar questions of law and fact with other members of the Class, and its claims are typical of the other members of the Class. There is also no evidence of antagonism between the Birmingham Retirement System and any other member of the Class.

9

*See Thompson v. Shaw Group, Inc.,* No. 04-1685, 2004 U.S. Dist. LEXIS 25641 (E.D. La. Dec. 13, 2004), at *17.

### 3. As Institutional Investor, the Birmingham Retirement System Is the Preferred Choice to Serve as Lead Plaintiff

In enacting the PSLRA, Congress expressed its hope that the law would "increase the likelihood that institutional investors will serve as Lead Plaintiffs [in securities cases]" because such investors with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733. Echoing this theme, the Senate Report on the PSLRA states:

> The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts.
>
> Institutions with large stakes in class actions have much the same interests as the plaintiff class generally...

S. Rep. No.104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (citations omitted). In addition, many courts have acknowledged the preference for institutional investors to serve as lead plaintiffs. *See In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 734 (S.D. Ind. 2000) ("Congress has expressed a preference for institutional investors to be appointed lead plaintiff."); *Gluck v. CellStar Corp.,* 976 F. Supp. 542, 548 (N.D. Tex. 1997)("Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"); *In re Network,* 76 F. Supp. 2d at 1020 ("Congress expected that the lead plaintiff would normally be an institutional investor....").

Consistent with these authorities, it is unquestionable that the Birmingham Retirement System, as a sophisticated institutional investor, is precisely the type of class member qualified

to ensure that the litigation proceeds in the best interest of the Class. *See Bowman,* 195 F.R.D. at 657 (holding that there is "no doubt" that a large institution with significant monetary losses is "exactly the type of lead plaintiff envisioned by Congress when it instituted the lead plaintiff requirements ... by enacting the [PSLRA]"). Indeed, with a full understanding of the fiduciary duties of a lead plaintiff and class representative in a securities fraud class action, the Birmingham Retirement System authorized Carney Williams to file the instant motion requesting that this Court appoint the Birmingham Retirement System lead plaintiff. *See* Burns Declaration at ¶5. As such, the Birmingham Retirement System will work diligently to maximize the Class's recovery if appointed lead plaintiff. *Id.*

### 4. The Birmingham Retirement System's Selection of Counsel Is Well Qualified, And Should Be Approved

Under Section 21D(a)(3)(B)(v) of the Exchange Act, 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class. Birmingham Retirement System has selected and retained the law firms of Carney Williams as lead counsel and Due', Price, Guidry, Piedrahita & Andrews, APA as liaison counsel.

The Birmingham Retirement System has retained competent and experienced counsel. Carney Williams has served as securities counsel for the Birmingham Retirement System since 2005. In this capacity Carney Williams regularly monitors the Birmingham Retirement System's investment portfolio and regularly communicates with officials with the Birmingham Retirement System. *See* Burns Declaration at ¶¶ 2, 4. Based on its own experience, and the firm's credentials, the Birmingham Retirement System is confident that Carney Williams is more than adequately qualified and experienced to litigate this case in the best interest of the Class, a fact highlighted by the sheer number of class actions in which counsel has served as lead or co-lead counsel. *See* Exhibit 6 to the Guidry Declaration (Carney Williams firm resume).

11

## V. CONCLUSION

For the foregoing reasons, movant respectfully requests that this Court (1) consolidate all of the Related Actions currently pending before this Court and any subsequently-filed actions; (2) appoint the Birmingham Retirement System as lead plaintiff in these actions and any subsequently-filed related actions; and (3) approve its selection of the law firms of Carney Williams Bates Bozeman & Pulliam, PLLC as lead counsel and Due', Price, Guidry, Piedrahita & Andrews, APA as liaison counsel for the class.

Dated: August 9, 2010

Respectfully submitted,

  /s/Kirk A. Guidry
Kirk A. Guidry, La. Bar Roll 20842
B. Scott Andrews, La. Bar Roll #24280
**Due', Price, Guidry, Piedrahita & Andrews, APA**
8201 Jefferson Highway
Baton Rouge, Louisiana 70809
Tel: (225) 929-7481
Fax: (225) 924-4519

**[Proposed] Liaison Counsel**

Darrin L. Williams
Randall K. Pulliam
**Carney Williams Bates Bozeman & Pulliam, PLLC**
11311 Arcade, Suite 200
Little Rock, Arkansas 72212
Tel: (501) 312-8500
Fax: (501) 312-8505

[**Proposed**] **Lead Counsel**