UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT F. BACH and DIANE M. BACH, On Behalf Of Themselves And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, and DALE E. REDMAN,<br><br>Defendants. | No. 10-cv-395-BAJ-CN |
| DAVID ISMAN, On Behalf Of Himself And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, and DALE E. REDMAN,<br><br>Defendants. | No. 10-cv-464-BAJ-DLD |
| ARIK DVINSKY, On Behalf Of Himself And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, DALE E. REDMAN, JOHN F. GIBLIN, and GREGORY H. BROWNE,<br><br>Defendants. | No. 10-cv-470-JJB-CN |

[Captions continued on next page]

**MEMORANDUM OF LAW IN SUPPORT OF CITY OF TALLAHASSEE RETIREMENT SYSTEM'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF <u>LEAD PLAINTIFF'S SELECTION OF LEAD AND LIAISON COUNSEL</u>**

| MELVIN W. BRINKLEY, On Behalf Of Himself And All Others Similarly Situated, | No. 10-cv-497-JJB-CN |
|---|---|
| Plaintiff, | |
| v. | |
| AMEDISYS, INC., WILLIAM F. BORNE, and DALE E. REDMAN, | |
| Defendants. | |

Class member City of Tallahassee Retirement System ("City of Tallahassee"), respectfully submits this memorandum of law in support of its Motion requesting: (i) consolidation of the above-captioned related actions; (ii) its appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA" or the "Act"), 15 U.S.C. § 78u-4(a)(3)(B); (iii) the approval of its selection of Barroway Topaz Kessler Meltzer & Check, LLP ("Barroway Topaz") as Lead Counsel for the Class; and (iv) the approval of its selection of Morrow, Morrow, Ryan & Bassett ("Morrow") as Liaison Counsel for the Class.

## I. PRELIMINARY STATEMENT

Presently pending in this district are four securities class action lawsuits (the "Related Actions")[1] brought on behalf of all purchasers of securities issued by Amedisys, Inc. ("Amedisys" or the "Company") against Amedisys and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act"). The most comprehensive class period to date asserts claims between August 2, 2005 and July 12, 2010 (the "Class Period").[2] The Related Actions similarly assert claims under the Exchange Act based on the defendants' issuance of materially false statements and omissions of material information relating to the Company's reliance on fraudulent billing practices to increase Medicare reimbursements based on in-home therapy visits that were not always medically necessary. The Company's practices also violated Amedisys' Code of Ethical Business Conduct. The Related Actions involve common questions of law and fact and should be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule

---

[1] *See Bach v. Amedisys, Inc.*, No. 10-395 (M.D. La. filed June 10, 2010), *Isman v. Amedisys, Inc.*, No. 10-464 (M.D. La. filed July 14, 2010), *Dvinsky v. Amedisys, Inc.*, No. 10-470 (M.D. La. filed July 16, 2010) and *Brinkley v. Amedisys, Inc.*, No. 10-497 (M.D. La. filed July 28, 2010).

[2] *Dvinsky* asserts a class period between August 2, 2005 and June 30, 2010. *Brinkley* asserts a class period between April 30, 2008 and July 12, 2010. For purposes of this motion, City of Tallahassee's financial interest is calculated based on transactions in Amedisys securities between August 2, 2005 and July 12, 2010.

42(a)"). The process for selecting a lead plaintiff and counsel in an action under the PSLRA follows the resolution of any motions to consolidate related actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The PSLRA sets forth a sequential process for the selection of a lead plaintiff. Pursuant to the PSLRA, courts are required to appoint the "most adequate plaintiff" as the lead plaintiff in any action subject to the Act. 15 U.S.C. § 78u-4(a)(3)(B)(i). In this regard, the most adequate plaintiff is determined by identifying the movant asserting the "largest financial interest" in the relief sought by the Class. Once the movant with the largest financial interest is identified, the inquiry then shifts to whether such movant can also make a *prima facie* showing of adequacy and typicality under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). City of Tallahassee respectfully submits that it is the "most adequate" plaintiff to represent the putative class.

Here, City of Tallahassee suffered a loss exceeding $580,000 on both a first-in, first-out (FIFO) basis and on a last-in, first-out (LIFO) basis from its Class Period transactions in Amedisys securities.[3] Further, City of Tallahassee satisfies the necessary requirements of Rule 23, as its claims are typical of the other members of the proposed Class, and because City of Tallahassee, a sophisticated institutional investor that manages over $900 million in assets, will adequately represent the Class. In addition, City of Tallahassee has selected and retained Barroway Topaz and Morrow, both law firms with substantial experience in prosecuting securities fraud class actions, to serve as Lead and Liaison Counsel, respectively, for the Class. *See Tarica v. McDermott Int'l, Inc.*, No. 99-3831, 2000 U.S. Dist. LEXIS 5031, at *16 (E.D. La. Apr. 13, 2000) ("the most adequate plaintiff[s] shall, subject to the approval of the court, select and retain counsel to represent the

class") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(v)).  Accordingly, City of Tallahassee respectfully requests appointment as Lead Plaintiff and for the Court to otherwise grant the relief requested in its motion.

## II.     FACTUAL BACKGROUND[4]

Amedisys is a provider of home health services operating in two segments: home health and hospice segments.  The Company's home health agencies deliver a range of services in the homes of individuals who may be recovering from surgery, have a chronic disease or disability or terminal illness and need assistance with the essential activities of daily living.  The Company's services are primarily paid for by Medicare, which represented approximately 88%, 87%, and 89% of the Company's net service revenue in 2009, 2008 and 2007, respectively.  Medicare reimbursements for in-home services account for a significant portion of Amedisys' Medicare-based revenue.

Throughout the Class Period, Amedisys' statements to investors reported "record" financial results and its adherence to proper billing practice.  For example, the Company's 2005 Annual Report (filed with the Securities and Exchange Commission ("SEC") on March 9, 2006) declared, "Various federal and state laws impose criminal and civil penalties for submitting false or fraudulent claims for Medicare, Medicaid or other health care reimbursements. . . . ***We believe that we bill for our services under all state and federal health care programs accurately***."  The Company also assured investors that its operations included a "zero tolerance" policy for employees failing to following proper billing procedures.  According to the Company's 2008 Annual Report (filed with the SEC on Form 10-K on February 19, 2009):

---

[3]     City of Tallahassee's transactions in Amedisys securities during the Class Period are set forth in the certification attached hereto as Ex. A.  Losses calculated on both a FIFO and LIFO basis for City of Tallahassee are included in the charts attached as Ex. B.

[4]     Unless otherwise noted, all facts are taken from the *Dvinsky* and *Brinkley* actions.  All emphases are added.

> We maintain comprehensive controls over our billing processes to help ensure accurate and complete billing. We have company-wide annual billing compliance testing; use formalized billing attestations; limit access to billing systems; use risk forecasting methodologies; perform direct line supervisor audits; hold weekly operational meetings; use automated daily billing operational indicators; deploy operational "turnaround teams" when problems are identified; and terminate employees who knowingly fail to follow our billing policies and procedures in accordance with a well publicized "Zero Tolerance Policy".

Additionally, Amedisys' Class Period statements routinely assured investors about its financial success. For example, in an April 30, 2008 press release the Company declared that it was "very pleased with our first quarter operations" in which it "reported ***record revenue*** and strong EPS. . . ." Continuing the Company's positive theme, on February 17, 2009, defendant William Borne (Amedisys' CEO) declared: "Today we are reporting outstanding results, with record revenue and earnings for both the fourth quarter and full year . . . This marks the ***sixth consecutive year*** that earnings per share growth has exceeded 20%."

However, on April 27, 2010, an investigative report published by the *Wall Street Journal* began to expose the Company's assurance about its adherence to ethical billing practices and the quality of its financial results as being blatantly false.[5] In the report, the *Journal* explained that Medicare guidelines for reimbursing in-home service take into account, among other things, the number of visits a therapist, such as Amedisys, provides per year. According to the *Wall Street Journal*, "[between 2000 and 2007] Medicare reimbursements [were] determined in part by the number of at-home therapy visits each patient receives, with an extra fee kicking in as soon as a patient hits a certain number of visits."[6] During this time, "Medicare paid companies a flat fee of about $2,200 for up to nine home therapy visits. It paid an additional reimbursement of roughly

---

[5] *See* Barbara Martinez, "Home Care Yields Medicare Bounty," *The Wall Street Journal* (Apr. 26, 2010).
[6] *Id.*

$2,200 if the therapy surpassed nine visits. That incentive was designed so that agencies didn't 'stint' on therapy visits. . . ."[7]

A review of Amedisys' records by the *Journal* revealed a suspicious pattern where a disproportionately large number of Amedisys' patients received 10 visits per year (as opposed to 9 visits or 11 visits) in 2007. By making a tenth visit, Amedisys was paid an additional $2,200 for a service costing the Company approximately $80 per visit. Amedisys employees interviewed by the *Journal* confirmed that Company managers pressured employees to make a tenth visit even in cases where the visit was not medically necessary. According to a former Amedisys nurse quoted by the *Journal*, "I was told we have to have ten visits to get paid . . . The tenth visit ***was not always medically necessary***." The nurse also reported that supervisors reviewed patients' files to determine those who were just shy of the 10-visit and then called employees to encourage them to make the extra appointment.

On May 12, 2010, Senators Grassley and Baucus, on behalf of the Senate Finance Committee, wrote to Amedisys (as well as other companies) demanding information regarding the *Journal*'s findings. The letter states, in part, "The findings reported in the Wall Street Journal article are of great concern to us. . . . These findings suggest that [home health agencies] are basing the number of therapy visits they provide on how much Medicare will pay them instead of what is in the best interests of patients." News of the Congressional inquiry caused the Company's shares to fall approximately 8%, from a closing price of $56.21 per share (as of May 12) to close at $51.73 per share (as of May 13, 2010).

The Company denied any wrongdoing in a statement issued on May 13, 2010. The Company's assurances of its innocence aside, on July 1, 2010, Amedisys announced that the

---

[7] *Id.*

Company "received notice of a formal investigation" from the SEC and received a "subpoena for documents relating to the matters under review by the Senate Finance Committee." The Company's shares fell 10% in response to close at $39.34 per share (on July 1). Additional negative news followed. On July 12, 2010, Amedisys announced that the cost of the Senate and SEC investigations would result in it reporting earnings per share (EPS) of $1.12 for the second quarter of 2010 – which was significantly lower than expected. The Company's stock fell 23% in response, from a closing price of $35.02 per share (as of July 12, 2010) to close at $26.57 per share (as of July 13, 2010).

The allegations raised by the *Wall Street Journal*, the Congressional inquiry, the SEC's formal investigation and the financial cost to the Company from these events have taken a significant toll on the Company's stock price. The losses are directly related to the market absorbing corrective information removing the artificial inflation caused by the defendants' false statements and material omissions.

## III. ARGUMENT

### A. The Related Actions Should Be Consolidated

Rule 42(a) permits the consolidation of actions that involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). *See also* 15 U.S.C. § 78u-4(a)(3)(B)(ii); *Tarica*, 2000 U.S. Dist. LEXIS 5031, at *11 ("the court shall not make the determination . . . [regarding the appointment of lead plaintiff] until after the decision on the motion to consolidate is rendered") (brackets in original); *In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 382 (E.D. Tex. 2002).

"In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (internal citation omitted). Differences in class periods do not prevent consolidation of otherwise related

actions. *See Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 105 (E.D.N.Y. 2005).

Consolidation of the Related Actions is appropriate in this litigation. The Related Actions present substantially identical factual and legal issues, as they each arise out of defendants' false statements and omissions relating to Amedisys' use of medically unnecessary patient visits to defraud Medicare and to artificially boost the Company's profitability. The Related Actions assert claims under the Exchange Act against overlapping defendants. Because the actions before the Court present related factual and legal issues, consolidation is appropriate. *See* Fed. R. Civ. P. 42(a). Moreover, defendants will not face any prejudice by litigating identical claims in one action rather than in multiple suits.

### B. The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes a sequential process for selecting a lead plaintiff in class action lawsuits alleging violations under the federal securities laws. *See* 15 U.S.C. § 78u-4(a).

First, the plaintiff who files the initial action must publish a notice to the class within twenty days, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, in connection with the filing of the first filed action, notice was published on *Globe Newswire* on June 10, 2010, advising investors of, *inter alia*, their right to seek appointment as lead plaintiff. *See* Ex. C.

Second, within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Based on the date notice of the first filed action was circulated, the time period in which class members may move to be appointed lead plaintiff in this case expires on August 9, 2010. *See* 15 U.S.C. § 78u-4(a)(3)(A),(B).

Third, the PSLRA provides that within ninety days after publication of notice, courts shall consider any motion made by a class member and appoint as lead plaintiff the member "or members" of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice…;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Tarica*, 2000 U.S. Dist. LEXIS 5031, at *12-13.

Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, City of Tallahassee timely moves this Court for appointment as lead plaintiff on behalf of all members of the class. *See Tarica,* 2000 U.S. Dist. LEXIS 5031, at *10. In addition, City of Tallahassee has selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See* Exs. D & E. Accordingly, City of Tallahassee satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff.

### C. City of Tallahassee is the "Most Adequate Plaintiff"

#### 1. City of Tallahassee Has the Largest Financial Interest in the Relief Sought by the Class

As set forth in its accompanying certification, City of Tallahassee suffered losses of over $580,000 (on both a FIFO and LIFO basis) in connection with its Class Period transactions in the Company's common stock.[8] *See* Ex. B. To the best of its knowledge, this loss represents the largest financial interest in the relief sought by the class of any qualified movant before the Court. *See Tarica,* 2000 U.S. Dist. LEXIS 5031, at *12-13.

#### 2. City of Tallahassee Satisfies Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Although Rule 23 consists of four requirements, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required. *See Tarica,* 2000 U.S. Dist. LEXIS 5031, at *13; *In re Orthodontic Centers of Am., Inc., Sec. Litig.*, No. 01-949, 2001 U.S. Dist. LEXIS 21816, at *11 (E.D. La. Dec. 17, 2001).

---

[8] FIFO and LIFO are the two methodologies that courts use to calculate losses. *See Thompson v. Shaw Group Inc.*, No. 04-1685, 2004 U.S. Dist. LEXIS 25641, at *14 (E.D. La. Dec. 13, 2004) ("Under FIFO . . . shares sold during the class period are matched with the first shares held or purchased at the beginning of the class period, whichever comes

####    a.      City of Tallahassee is Typical

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. The test of typicality is whether "plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all class members." *Thompson*, 2004 U.S. Dist. LEXIS 25641, at *17 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999)).

Here, City of Tallahassee's claims are typical of the class because, just like all other class members asserting claims under the Exchange Act, it: (1) purchased or otherwise acquired Amedisys securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by the defendants' conduct causing the price of Amedisys' securities to decline in value. *See Tarica,* 2000 U.S. Dist. LEXIS 5031, at *14. Thus, City of Tallahassee's claims are typical of other class members' claims because both sets of claims arise out of the same course of events and are predicated on identical theories of liability and damages. *See id.*

####    b.      City of Tallahassee is Adequate

The adequacy requirement of Rule 23(a)(4) is met if the representative party makes a showing that it will "fairly and adequately protect the interests of the class." In evaluating adequacy, courts consider whether the: (1) "class representatives . . . [do] not have interests antagonistic to the class members;" and (2) lead plaintiff's selection of counsel is "qualified, experienced, and able to

---

first. Under the LIFO approach, a plaintiff's sales of the defendant's stock during the class period are matched against the last shares purchased, resulting in an off-set of class-period gains from a plaintiff's ultimate losses.").

prosecute the action vigorously." *Tarica*, 2000 U.S. Dist. LEXIS 5031, at *14; *see also Orthodontic Centers of Am*, 2001 U.S. Dist. LEXIS 21816, at *12-13.

Here, City of Tallahassee meets the adequacy requirement as its interests are aligned with the interests of the class as both suffered loss from the revelation of defendants' false and misleading statements and material omissions. Additionally, there is no evidence of antagonism between City of Tallahassee and the class. City of Tallahassee is a large, sophisticated institutional investor that suffered a substantial loss as a result of its Class Period purchases of Amedisys stock and is committed to vigorously prosecuting this litigation and maximizing the recovery for the class. *See* Ex. A. Finally, as shown below, City of Tallahassee's proposed lead and liaison counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, City of Tallahassee satisfies the typicality and adequacy requirements of Federal Rule 23.

### 3. City of Tallahassee is the Prototypical Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the preliminary requirements of Rule 23, the appointment of City of Tallahassee as lead plaintiff also fulfills a critical legislative goal behind the enactment of the PSLRA – encouraging sophisticated institutions with large financial interests to serve as lead plaintiff in securities class actions. *See Gluck v. CellStar Corp.,* 976 F. Supp. 542, 548 (N.D. Tex. 1997) (noting that "Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"); *see also* H.R. Conf. Rep. No. 104-369 (1995) reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Specifically, City of Tallahassee is a public pension plan for the benefit of current and former employees of the City of Tallahassee, Florida. The City of Tallahassee is responsible for managing more than $900

million in assets (as of September 2009). Thus, City of Tallahassee is clearly a suitable – and indeed the preferred – Lead Plaintiff.

### C. The Court Should Approve City of Tallahassee's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Tarica*, 2000 U.S. Dist. LEXIS 5031, at *16. The Court should not disturb lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *Thompson*, 2004 U.S. Dist. LEXIS 25641, at *23. Because City of Tallahassee selected and retained counsel experienced in litigating securities fraud class actions with the resources necessary to prosecute this action in order to achieve the greatest recovery possible for the class, its choice of lead counsel should be approved.

Here, City of Tallahassee has selected Barroway Topaz as lead counsel for the class. Barroway Topaz specializes in prosecuting complex class action litigation and is one of the preeminent law firms in its field. Barroway Topaz is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. Barroway Topaz is currently serving as Lead or Co-Lead Counsel in several high profile securities class actions, including actions involving Lehman Brothers, Bank of America, Medtronic, and UBS and has secured billions of dollars in recoveries for investors. *See* Ex. D.

In addition, Morrow has ample experience prosecuting general civil and business matters, including securities and shareholder derivative suits in Louisiana and throughout the country. *See* Ex E. Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from these firms. Both firms are highly qualified and will zealously represent the class's interests.

## IV. CONCLUSION

For the foregoing reasons, City of Tallahassee respectfully requests that the Court: (i) consolidate the Related Actions; (ii) appoint City of Tallahassee as Lead Plaintiff pursuant to the PSLRA; (iii) approve City of Tallahassee's selection of Barroway Topaz to serve as Lead Counsel for the Class; and (iv) approve City of Tallahassee's selection of Morrow to serve as Liaison Counsel for the Class.

Dated: August 9, 2010

Respectfully submitted,

MORROW, MORROW, RYAN
  & BASSETT

/s/ Patrick C. Morrow
Patrick C. Morrow (#9748)
Post Office Drawer 1787
Opelousas, LA 70571-1787
Telephone: (337) 948-4483
Fax: (337) 942-5234
E-mail: pmorrow@mmrblaw.com

[Proposed] Liaison Counsel

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
Sean M. Handler
Darren J. Check
Naumon A. Amjed
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

[Proposed] Lead Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of August, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Patrick C. Morrow
Patrick C. Morrow (#9748)
MORROW, MORROW, RYAN & BASSETT
Post Office Drawer 1787
Opelousas, LA 70571-1787
Telephone: (337) 948-4483
Fax: (337) 942-5234
E-mail: pmorrow@mmrblaw.com

[Proposed] Liaison Counsel
