UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT F. BACH AND DIANE M. BACH, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs <br> v. <br><br> AMEDISYS, INC., WILLIAM F. BORNE, and DALE E. REDMAN, <br><br> Defendants | CIVIL ACTION NO. <br> 3:10-cv-00395-BAJ-CN |

**MEMORANDUM OF LAW IN SUPPORT OF WEST PALM BEACH POLICE PENSION FUND'S MOTION TO CONSOLIDATE RELATED CASES, FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF COUNSEL AS LEAD COUNSEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I. PRELIMINARY STATEMENT ....................................................................................1

II. STATEMENT OF FACTS .............................................................................................3

III. ARGUMENT ..................................................................................................................5

    A. The Related Actions Should Be Consolidated......................................................5

    B. The Fund Should Be Appointed Lead Plaintiff ....................................................7

        1. The Fund Has Satisfied the Procedural Requirements
           of the PSLRA ..............................................................................................8

        2. The Fund Has The Largest Financial Interest In The
           Relief Sought By The Class........................................................................8

        3. The Fund Is a Sophisticated Institutional Investor
           That Satisfies the Requirements Of Rule 23 ..............................................8

              i. The Fund's Claims Are Typical of the Claims
                 of the Class........................................................................................9

              ii. The Fund Will Fairly And Adequately Represent
                 The Interests Of The Class..............................................................10

    C. This Court Should Approve the Fund's Choice of Lead Counsel .......................11

IV. CONCLUSION.............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Glauser v. EVCI Ctr. Colleges Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ...................................................................... 5, 6

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
   08 M.D.L. No. 1963,
   2008 WL 50132, at *6-7 ............................................................................................ 6

*In re Cardinal Health, Inc. Sec. Litig.*,
   226 F.R.D. 298 (S.D. Ohio 2005) .......................................................................... 11

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ................................................................................... 7

*In re Motorola*,
   03 C. 287,
   2003 WL 21673928 (N.D. Ill. July 16, 2003) ......................................................... 11

*In re Orthodontic Centers of America, Inc. Sec. Litig.*,
   No. Civ. A. 01-949
   2001 WL 1636846 at *4 (E.D. La. Dec. 18, 2001) ................................................... 9

*In re Oxford Health Plans, Inc., Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................. 11

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................... 5, 6

*Lowinger v. Global Cash Access Holdings, Inc.*,
   No. 08 Civ. 3516(SWK),
   2008 WL 2566558 (S.D.N.Y. June 26, 2008) ......................................................... 5

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ................................................................................... 9

*Olsen v. New York Cmty. Bancorp, Inc.*,
   233 F.R.D. 101 (E.D.N.Y. 2005) ............................................................................ 6

*Query v. Maxim Integrated Prods., Inc.*,
   558 F. Supp. 2d 969 (N.D. Cal. 2008) .................................................................... 7

*Tarica v. McDermott Intern, Inc.*,
   No. Civ. A. 99-3831,
   2000 WL 377817 (E.D. La. Apr. 13, 2000) ................................................................................ 9

*Thompson v. Shaw Group, Inc.*,
   No. 04-1685,
   2004 WL 2988503 (E.D. La. Dec. 13, 2004) ................................................................... *passim*

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)(i) ................................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) .............................................................................................. 5

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(ii) ................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ......................................................................................... 1, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ............................................................................................ 7

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................................. 11

U.S.C. § 78u-4(a)(3)(A)-(B) ..................................................................................................... 7

**Other Authorities**

H.R. Conf. Rep. No. 104-369, at 11,
   104th Cong. 1st Sess. (Nov. 28, 1995),
   *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ..................................................................... 10, 11

**Rules**
Fed. R. Civ. P. 23(a) ..................................................................................................... 2, 7, 8, 9
Fed. R. Civ. P. 42(a) ................................................................................................................. 5

**I.     PRELIMINARY STATEMENT**

The West Palm Beach Police Pension Fund (the "West Palm Beach Police Fund") respectfully submits this memorandum in support of its motion pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (a) consolidating the following actions into one action for all purposes: *Bach v. Amedisys, Inc., et al.*, Civ. Action No. 3:10-cv-00395-BAJ-CN (M.D. La.); *Isman v. Amedisys, Inc., et al.*, Civ. Action No. 3:10-cv-00464-BAJ-DLD (M.D. La.); *Dvinsky v. Amedisys, Inc., et al.*, Civ. Action No. 3:10-cv-00470-JJB-CN (M.D. La.); and *Brinkley v. Amedisys, Inc., et al.*, Civ. Action No. 3:10-cv-00497-JJB-CN (M.D. La.) (hereinafter referred to as the "Related Actions"); (b) appointing the West Palm Beach Police Fund as Lead Plaintiff for a class (the "Class") described herein; and (c) approving its selection of Berman DeValerio as Lead Counsel and Harrell & Nowak, LLC as Liaison Counsel for the Class.

The underlying cases arise from violations of the federal securities laws by Amedisys, Inc. ("Amedisys" or the "Company") and certain of its officers and/or directors. Specifically, the complaints allege that Defendants engaged in a fraudulent income-generating scheme to repeatedly inflate the Company's publicly reported revenue and earnings by pushing patients into extra, sometimes unnecessary, home-health care visits in order to hit a threshold level that secured Amedisys more Medicare reimbursements and, as a result, issued materially false and misleading financial results to investors.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation

and also has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see Thompson v. Shaw Group, Inc.*, No. 04-1685, 2004 WL 2988503, at *5 (E.D. La. Dec. 13, 2004).

The West Palm Beach Police Fund respectfully submits that it is the "most adequate plaintiff" to represent the Class of investors in Amedisys securities by virtue of the large loss it suffered from its investments in Amedisys as a result of Defendants' misconduct. Specifically, the West Palm Beach Police Fund incurred a loss of approximately $73,000 from its investments in Amedisys securities during the Class Period.[1] Accordingly, the West Palm Beach Police Fund has a large financial interest in this litigation – an interest presently believed to be greater than that of any competing movant.

Further, the West Palm Beach Police Fund satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as its claims are typical of the other members of the proposed Class, and it will fairly and adequately represent the Class. Indeed, as a sophisticated public pension fund, the West Palm Beach Police Fund has experience prosecuting securities class actions. The West Palm Beach Police Fund is the exact kind of investor Congress sought to empower and lead securities class actions when it enacted the PSLRA and will actively supervise counsel's prosecution of this case. The West Palm Beach Police Fund has also selected and retained Berman DeValerio, a law firm with substantial experience in prosecuting securities

---

[1] The currently filed complaints allege Class Periods of differing lengths. The Court-appointed Lead Plaintiff will ultimately determine the operative Class Period to allege in this litigation, subject to certification by the Court. However, the loss stated above corresponds to the longest combined Class Period alleged in any of the related Amedisys securities class actions - August 2, 2005 to July 12, 2010. *See Dvinsky v. Amedisys, Inc.*, Civil Action No. 3:10-cv-00470-JJB-CN (M.D. La.) (beginning class period on August 2, 2005 and ending on June 30, 2010); *Brinkley v. Amedisys, Inc.,* Civil Action No. 3:10-cv-00497-JJB-CN (beginning class period on April 30, 2008 and ending on July 12, 2010).

fraud class actions, to serve as Lead Counsel for the Class. Accordingly, the West Palm Beach Police Fund would serve as an exemplary Lead Plaintiff and should be appointed.

## II. STATEMENT OF FACTS

The complaints allege that, during the Class Period, Defendants issued materially false and misleading statements and/or failed to disclose that Amedisys' publicly reported revenue and earnings growth were materially inflated by the Company's fraudulent income-generating scheme of pushing patients into extra, sometimes unnecessary, home-health care visits in order to hit a threshold level that secured the Company more in Medicare reimbursements. A portion of Amedisys' net service revenue and earnings was subject to recoupment by Medicare. The Company also violated its Code of Ethical Business Conduct due to its fraudulent income-generating scheme to inflate Medicare revenue. Further, the Company lacked effective internal controls, particularly over its patient recertification and billing processes. As a result of Defendants' false statements and omissions, Amedisys' securities traded at artificially inflated prices during the Class Period.

The truth did not begin to emerge until April 26, 2010, when *The Wall Street Journal* ("WSJ") published an article, *Home Care Yields Medicare Bounty*, questioning whether health-care companies, including Amedisys, were taking advantage of the Medicare reimbursement system by clustering at-home therapy visits around Medicare reimbursement targets. According to this article, Medicare paid companies a flat fee for the first nine home therapy visits, and an additional reimbursement of roughly $2,200 was paid if the therapy surpassed nine visits. The article further reported that "Amedisys provided many of its patients just enough therapy visits to trigger the extra $2,200 payment. In 2005, 2006 and 2007, very few Amedisys patients received nine therapy visits while a much higher percentage got 10 visits or more." A former Amedisys

nurse was also quoted as saying that "[t]he tenth visit was not always medically necessary." The article states that even after Medicare changed its rule in January 2008 to provide new reimbursement thresholds, the Company continued its pattern of clustering at-home therapy visits around the new reimbursement thresholds. As a result of this news, the Company's stock price closed at $56.52 per share on April 27, 2010, dropping 6.58% on heavy trading volume, compared to a close of $60.50 per share on April 26, 2010.

Then, on May 12, 2010, after the market closed, the WSJ published a follow-up article in which it reported that the Senate Finance Committee sent a letter that same day - May 12, 2010 - to the Company informing it that they had started an investigation into the billing and operating practices of Amedisys. After the announcement of the Senate Finance Committee investigation, the Company's stock dropped 7.97% on heavy trading volume, from a close of $56.21 per share on May 12, 2010 to a close of $51.73 per share on May 13, 2010.

Over a month after the announcement of the Senate Finance Committee's inquiry letter, on June 30, 2010, the Company announced that it had "received a notice of formal investigation from the Securities and Exchange Commission (SEC) pertaining to the company, and received a subpoena for documents relating to the matters under review by the Senate Finance Committee." In response to the announcement, the Company's stock dropped 10.55% from a close of $43.98 per share on June 30, 2010 to a close of $39.34 per share on July 1, 2010.

The Company's stock took another significant drop on July 13, 2010 after the Company announced its estimated second quarter earnings of $1.12 per share, which was down from the $1.27 per share reported a year earlier and also below the $1.36 per share amount estimated by Thomson Reuters analysts. As a result of this news, the Company's shares dropped over 24% from a close of $35.02 per share on July 12, 2010 to a close of $26.57 per share on July 13, 2010.

4

Case 3:10-cv-00395-BAJ-CN   Document 20-1   08/09/10   Page 8 of 17

Investors have since filed multiple securities class actions. The first action, *Bach v. Amedisys, Inc.,* Civil Action No. 3:10-cv-00395-BAJ-CN (M.D. La.), was filed on June 10, 2010. That same day, a PSLRA-compliant notice was published informing investors of the filing of the action and the 60-day deadline for filing a motion to seek lead plaintiff status, a copy of which is provided as Exhibit A to the Declaration of Leslie R. Stern (the "Stern Decl."). Under the PSLRA, an investor wishing to serve as lead plaintiff must file a motion within 60 days of the publication of this notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The West Palm Beach Police Fund has satisfied this requirement with the filing of this motion.

## III. ARGUMENT

### A. The Related Actions Should Be Consolidated

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

Courts have broad discretion under Rule 42(a) of the Federal Rules of Civil Procedure to consolidate actions and, in making that determination, "are to consider whether judicial economy favors consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). "Consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports." *Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 Civ. 3516(SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) (quoting *Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006)).

Moreover, "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law,

and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan*, 240 F.R.D. at 91; *see also In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 08 M.D.L. No. 1963, 2008 WL 50132, at *6-7 (rejecting argument that differing class periods and ways in which parties acquired shares prevented consolidation).

Consolidation of the Related Actions is appropriate since all of these actions assert similar claims based on the same or similar legal and factual allegations. Although the Related Actions allege slightly differing class periods and one action names an additional defendant, all of the actions rely upon the same or similar factual and legal allegations and claims. For instance, all of the Related Actions allege that defendants engaged in a fraudulent income-generating scheme to repeatedly inflate the Company's publicly reported revenue and earnings by pushing patients into extra, sometimes unnecessary, home-health care visits in order to hit a threshold level that secured the Company more Medicare reimbursements and, as a result, issued materially false and misleading financial results to investors. Further, the actions all share a common legal question: to wit, whether defendants' misrepresentations violated federal securities laws. Moreover, any minor differences between the actions can be resolved when the court-appointed lead plaintiff files a consolidated amended complaint. *See, e.g., Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 104-105 (E.D.N.Y. 2005) (finding consolidation appropriate, noting differences could be resolved upon the filing of a consolidated complaint).

As such, the Court should consolidate the Related Actions and any others filed subsequent to this motion which purports to assert claims against defendants in connection with the above-mentioned allegations.

### B. The West Palm Beach Police Fund Should Be Appointed Lead Plaintiff

The PSLRA sets forth a three-step procedure for the appointment of a lead plaintiff in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(3)(A)-(B); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). First, within twenty days of filing a class action, the filing plaintiff must publish a notice advising members of the purported class of the pendency of the action, the claims asserted, the purported class period, and their right to move the court for appointment as lead plaintiff of the purported class. 15 U.S.C. § 78u-4(a)(3)(A)(i).

Second, upon considering all motions for appointment as lead plaintiff filed in response to the notice, the court appoints "the presumptively most adequate plaintiff" to serve as lead plaintiff. The "presumptively most adequate plaintiff" is the person that: (1) has either filed the complaint or made a motion to serve as lead plaintiff within 60 days after publication of the required notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .

Third, the court must then "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730. Only proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class" can rebut the presumption in favor of appointing the presumptively most adequate plaintiff as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Query v. Maxim Integrated Prods.*, 558 F. Supp. 2d 969, 973 (N.D. Cal. 2008).

### 1. The West Palm Beach Police Fund Has Satisfied the Procedural Requirements of the PSLRA

Plaintiff in the first-filed action caused notice to be published through *Globe Newswire* on June 10, 2010, the same day that the initial complaint was filed. *See* Stern Decl., Exhibit A. This notice, in accordance with the PSLRA, announced that a securities class action complaint had been filed against the defendants and advised Amedisys investors that applications for lead plaintiff must be made no later than 60 days from the date on which the notice was published.

The West Palm Beach Police Fund has satisfied the procedural requirements of the PSLRA by filing the instant motion seeking lead plaintiff status within the 60-day deadline; to wit, by August 9, 2010, and by filing a certification that complies with the PSLRA. *See* Stern Decl., Exh. B.

### 2. The West Palm Beach Police Fund Has The Largest Financial Interest In The Relief Sought By The Class

As courts in this circuit have recognized, "[t]he chief criterion for selection of Lead Plaintiff is the financial interest each plaintiff has in the litigation (*i.e.* loss sustained due to the defendant's alleged fraud)." *Thompson*, 2004 WL 2988503, at *2. During the Class Period, the West Palm Beach Police Fund suffered a loss of $72,886.48. *See* Stern Decl., Exh. C. The West Palm Beach Police Fund is aware of no other movant with greater losses.

### 3. The West Palm Beach Police Fund Is a Sophisticated Institutional Investor That Satisfies the Requirements Of Rule 23

The PSLRA also requires that the lead plaintiff must satisfy the requirements of Federal Rule of Civil Procedure 23. Rule 23(a) requires that: (1) the class be so numerous that joinder of all members is impracticable; (2) questions of law or fact common to the class exist; (3) such claims are typical of those of the class; and (4) the representatives will fairly and adequately

protect the interests of the class. Fed. R. Civ. P. 23(a). "In deciding a lead plaintiff motion, only a preliminary showing is required that Rule 23's requirements of typicality and adequacy are satisfied." *In re Orthodontic Centers of America, Inc. Sec. Litig.*, No. Civ. A. 01-949, 2001 WL 1636846 at *4 (E.D. La. Dec. 18, 2001). *See Tarica v. McDermott Intern, Inc.*, No. Civ. A. 99-3831, 2000 WL 377817, at *4 (E.D. La. Apr. 13, 2000) (noting courts have consistently held that lead plaintiff movants need only make a preliminary showing of typicality and adequacy under Rule 23(a)).

### i. The West Palm Beach Police Fund's Claims Are Typical of the Claims of the Class

The West Palm Beach Police Fund's claims are typical of the claims of other Class members. "Typicality exists where plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all class members." *Thompson*, 2004 WL 2988503 at *5. "The test 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *In re Orthodontic Centers*, at *4 (quoting *Tarica*, 2000 WL 377817, at *4 which cites to *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999)).

Here, the West Palm Beach Police Fund, like other Class members, seeks to hold defendants liable for the consequences of their violations of the federal securities laws. In addition, the West Palm Beach Police Fund purchased shares in Amedisys during the Class Period at prices artificially inflated by the false statements and omissions of the defendants and suffered damages as a result. The West Palm Beach Police Fund's claims, therefore, arise from the same events and are based on the same legal theories as the Class' claims. Thus, the West Palm Beach Police Fund fully satisfies the typicality requirement of Rule 23.

9

### ii. The West Palm Beach Police Fund Will Fairly And Adequately Represent The Interests Of The Class

"Adequacy exists unless the Court finds (1) the presence of a potential conflict between the proposed lead plaintiff and the class members; or (2) [] the proposed lead plaintiff[] chooses counsel to represent the class who is unqualified, incompetent, or otherwise unable to vigorously conduct the contemplated litigation on behalf of the class members." *Thompson*, 2004 WL 2988503 at *5.

The West Palm Beach Police Fund fully meets the adequacy of representation requirement. First, no potential conflict exists between the West Palm Beach Police Fund and the other class members. Rather, the West Palm Beach Police Fund purchased shares in Amedisys during the Class Period and suffered losses from defendants' untrue, false and/or misleading statements. As such, its interests and those of its counsel are aligned with, and not adverse to, those of the Class. Second, the West Palm Beach Police Fund has retained qualified and experienced securities class action attorneys to represent the Class. *See* Stern Decl., Exh. D. For these reasons, the West Palm Beach Police Fund is a more than adequate class representative.

Moreover, the West Palm Beach Police Fund is the paradigmatic lead plaintiff envisioned by Congress – a sophisticated institutional investor with a real financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at 11, 104th Cong. 1st Sess. (Nov. 28, 1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts. . . [and] believes that an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors."). Indeed, courts have recognized that "[t]he purpose behind the PSLRA is to prevent

10

Case 3:10-cv-00395-BAJ-CN   Document 20-1   08/09/10   Page 14 of 17

'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs [sic] counsel.' Congress believed this goal could best be achieved by encouraging institutional investors to serve as lead plaintiffs." *In re Motorola*, 03 C. 287, 2003 WL 21673928, at *3 (N.D. Ill. July 16, 2003) (quoting *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998)).

The West Palm Beach Police Fund is exactly the type of institutional investor envisioned as lead plaintiff by the PSLRA. As an institutional investor, the West Palm Beach Police Fund fully understands the role of fiduciaries and possesses the financial sophistication, experience and resources to ensure that lead counsel will litigate in the best interests of the Class. The West Palm Beach Police Fund fully understands the complexities of securities litigation and class actions, and its strength and position as an institutional investor will help it command the best possible recovery from defendants.

### C. This Court Should Approve the West Palm Beach Police Fund's Choice of Lead Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class." *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305 (S.D. Ohio 2005)). *See also* H.R. Conf. Rpt. No. 104-369, at 35, 104th Cong. 1st Sess (Nov. 28, 1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 (same); *Thompson*, 2004 WL 2988503, at *7 ("Unless the Court detects a conflict between the proposed Lead Counsel and the class members, Lead Plaintiff's selection is presumed to be proper.").

The West Palm Beach Police Fund has selected Berman DeValerio – a law firm that is highly experienced in prosecuting securities class actions – to serve as Lead Counsel for the class. Berman DeValerio is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. Further, counsel has the skill and knowledge that will enable them to prosecute this action effectively and expeditiously. *See* Stern Decl., Exh. D. The Court can be assured that by approving the West Palm Beach Police Fund's choice of counsel, the Class will receive the highest caliber of legal representation.

Accordingly, the West Palm Beach Police Fund's choice of counsel should be approved and Berman DeValerio should be appointed Lead Counsel and Harrell & Nowak, LLC should be appointed Liaison Counsel for the Class.

## IV. CONCLUSION

For the above reasons, the West Palm Beach Police Fund respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint the West Palm Beach Police Fund as Lead Plaintiff; and (3) approve the West Palm Beach Police Fund's choice of Lead and Liaison Counsel.

DATED: August 9, 2010               **HARRELL & NOWAK, LLC**

By: s/ Eric R. Nowak
Eric R. Nowak (#27025)
Shirin E. Harrell (#27495)
650 Poydras St., Suite 2107
New Orleans, LA 70130
Phone: (504)-522-7885
Fax: (504)-528-3131
enowak@harrell-nowak.com

*Liaison Counsel*

**BERMAN DEVALERIO**
Jeffrey C. Block
Leslie R. Stern
Abigail R. Romeo
One Liberty Square
Boston, MA 02109
Phone: (617) 542-8300
Fax: (617) 542-1194
LStern@bermandevalerio.com

*Counsel for West Palm Beach Police Pension Fund and Proposed Lead Counsel for the Class*