| | |
|---|---|
| ROBERT F. BACH and DIANE M. BACH, On Behalf of Themselves and All Others Similarly Situated,<br><br>                   Plaintiffs,<br><br>v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, and DALE E. REDMAN,<br><br>                   Defendants. | No. 3:10-cv-00395-BAJ-CN<br><br>Hon. Brian A. Jackson<br>Mag. Judge Christine Noland |
| DAVID ISMAN, On Behalf of Himself and All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, and DALE E. REDMAN,<br><br>                   Defendants. | No. 3:10-cv-00464-BAJ-DLD<br><br>Hon. Brian A. Jackson<br>Mag. Judge Docia L. Dalby |

*(Additional captions on following page)*

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION OF BALTIMORE COUNTY EMPLOYEES'
RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT
<u>AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL</u>**

| | |
|---|---|
| ARIK DVINSKY, On Behalf of Himself and All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>   v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, DALE E. REDMAN, JOHN F. GIBLIN, and GREGORY H. BROWNE,<br><br>                       Defendants. | No. 3:10-cv-00470-JJB-CN<br><br>Hon. James J. Brady<br>Mag. Judge Christine Noland |
| MELVIN W. BRINKLEY, On Behalf of Himself and All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>   v.<br><br>AMEDISYS, INC., WILLIAM F. BORNE, and DALE E. REDMAN,<br><br>                       Defendants. | No. 3:10-cv-00497-JJB-CN<br><br>Hon. James J. Brady<br>Mag. Judge Christine Noland |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 2

ARGUMENT .............................................................................................................................. 5

    I.    THE RELATED ACTIONS
          SHOULD BE CONSOLIDATED ................................................................... 5

    II.   BALTIMORE COUNTY SHOULD
          BE APPOINTED LEAD PLAINTIFF ........................................................... 5

          A.    The PSLRA Standard for Appointing Lead Plaintiff .............................. 5

          B.    The PSRLA Mandates That Baltimore
               County Should Be Appointed Lead Plaintiff ........................................... 7

               1.    Baltimore County Satisfies the
                     PSLRA's Procedural Requirements ............................................... 7

               2.    Baltimore County Possesses the Largest Financial Interest in the
                     Relief Sought by the Class .............................................................. 7

               3.    Baltimore County Satisfies Rule 23's
                     Typicality and Adequacy Requirements ....................................... 8

                     (a)    Baltimore County Fulfills
                          the Typicality Requirement ................................................ 8

                     (b)    Baltimore County Fulfills
                          the Adequacy Requirement ................................................ 9

               4.    Baltimore County Is the Prototypical Lead Plaintiff Envisioned By
                     the PSLRA ...................................................................................... 9

    III.  THE COURT SHOULD APPROVE
           BALTIMORE COUNTY'S SELECTION OF COUNSEL ................................ 10

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ..................................................................................................10

*In re Elan Corp. Sec. Litig.*,
  1:08-cv-8761, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ....................................................3

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006) ......................................................................................3

*Gluck v. CellStar Corp.*,
  976 F. Supp. 542 (N.D. Tex. 1997) ........................................................................................10

*Miller v. Dyadic Int'l, Inc.*,
  No. 07-80948, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) ....................................................3

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ....................................................................................................8

*In re Orthodontic Ctrs. of Am., Inc. Sec. Litig.*,
  No. 01-949, 2001 WL 1636846 (E.D. La. Dec. 18, 2001) ........................................................8

*Tarica v. McDermott Int'l, Inc.*,
  No. 99-3831, 2000 WL 377817 (E.D. La. Apr. 13, 2000) ................................................5, 8, 9

*Thompson v. Shaw Group Inc.*,
  No. 04-1685, 2004 WL 2988503 (E.D. La. Dec. 14, 2004) ......................................................8

*In re Waste Mgmt., Inc. Sec. Litig.*,
  128 F. Supp. 2d 401 (S.D. Tex. 2000) ....................................................................................11

## STATUTES

15 U.S.C. § 78j(b) ..............................................................................................................................1

15 U.S.C. § 78t(a) ..............................................................................................................................1

15 U.S.C. § 78u-4(a) *et seq.* .................................................................................................. *passim*

17 C.F.R. § 240.10b-5 ........................................................................................................................1

Fed. R. Civ. P. 23(a) *et seq.* .........................................................................................................8, 9

Fed. R. Civ. P. 42(a) *et seq.* ..........................................................................................................4, 5

## MISCELLANEOUS

H.R. Rep. No. 104-369 (1995),
  *as reprinted in* 1995 U.S.C.C.A.N. 730 ................................................................................10

Baltimore County Employees' Retirement System ("Baltimore County") respectfully submits this Memorandum of Law pursuant to Section 21D(b)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in support of its Motion for the entry of an order: (1) consolidating the above-captioned, related cases; (2) appointing Baltimore County as Lead Plaintiff for a Class of purchasers of Amedisys, Inc. ("Amedisys" or the "Company") securities from August 2, 2005 through July 12, 2010, inclusive (the "Class Period"); (3) approving Baltimore County's selection of the law firms of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel and deGravelles, Palmintier, Holthaus & Fruge ("DPHF") as Liaison Counsel; and (4) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Presently pending before the Court are four securities class actions (collectively, the "Action") brought on behalf of purchasers of the securities of Amedisys. The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), *see* 15 U.S.C. §§ 78j(b) and 78t(a), and Securities Exchange Commission ("SEC") Rule 10b-5, *see* 17 C.F.R. § 240.10b-5.

In accordance with the Exchange Act, as amended by the PSLRA, 15 U.S.C. § 78u-4, and for the reasons set forth below, Baltimore County respectfully moves this Court for an Order appointing it as Lead Plaintiff on behalf of purchasers Amedisys securities during the Class Period who incurred damages as a result of the Defendants' alleged violations of the federal securities laws. Baltimore County suffered losses of approximately $339,969 under the last-in-first-out ("LIFO") loss calculation methodology in connection with its purchases of Amedisys stock. *See* Certification & Loss Analysis, attached as Exhibits A-B of the accompanying

Declaration of Alan I. Ellman ("Ellman Decl."). To Baltimore County's knowledge, these losses exceed those of any other movant in this Action. Thus, under the PSLRA, Baltimore County is presumptively the "most adequate plaintiff" and should be appointed lead plaintiff because it has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Baltimore County also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of the putative Class and it will fairly and adequately represent the interests of the Class.

In addition, Baltimore County is a sophisticated institutional investor who stands in the shoes of all other Class members and is ready and able to spearhead this litigation in the best interests of the Class. Indeed, the PSLRA's legislative history shows that Baltimore County is precisely the type of sophisticated institutional investor whose participation in securities class actions the PSLRA was meant to foster. In short, Baltimore County is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

Baltimore County is represented by Labaton Sucharow, which is seeking appointment as Lead Counsel, and DPHF, which is seeking appointment as Liaison Counsel. These firms are eminently qualified to prosecute securities fraud claims such as the ones asserted in the Action.

**FACTUAL BACKGROUND**

Amedisys is a provider of home health services to the chronic, co-morbid, and aging American population. The Company operates in two segments: home health and hospice. The Company's home health agencies deliver a range of services in the homes of individuals who may be recovering from surgery, have a chronic disease, disability, or terminal illness, and need assistance with the essential activities of daily living. Its typical home health patient is Medicare-eligible, approximately 83 years old, takes approximately 12 difference medications on

a daily basis, and has co-morbidities. Its hospice agencies provide palliative care and comfort to terminally-ill patients and their families.

Throughout the Class Period,[1] Defendants made false and/or misleading statements, as well as failing to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company's reported sales and earnings growth were materially impacted by a scheme whereby the Company intentionally increased the number of in-home therapy visits to patients for the purpose of triggering higher reimbursement rates under the Medicare home health prospective payment system, as those excess visits were not always medically necessary; (2) that the Company's reported sales and earnings were inflated by the aforementioned scheme and subject to recoupment by Medicare; (3) that the Company was in material violation of its Code of Ethical Business Conduct and compliance, due to the scheme to inflate Medicare revenues; and (4) based on the foregoing, Defendants lacked a basis for their positive statements about the Company, its prospects, and growth.

On July 31, 2009, the Company's President and Chief Operating Officer, Larry Graham—who had worked at Amedisys for over ten years—sold most of his Amedisys holdings. This stock transaction exceeded all of his prior stock sales combined. Just five weeks later, on

---

[1] For the purposes of this Motion, Baltimore County adopts the longest class period involved in these actions. The Class Period in *Dvinsky v. Amedisys Inc.*, 10-cv-395 (M.D. La. June 10, 2010) is August 2, 2005 through June 30, 2010, while the Class Period in *Brinkley v. Amedisys Inc.*, 10-cv-497 (M.D. La. July 28, 2010), is April 30, 2008 through July 12, 2010. When faced with multiple varying class periods, numerous courts have held that the class period spanning the longer time frame should be used for the purpose of calculating the largest financial interest under the PSLRA's lead plaintiff framework. *See, e.g.*, *In re Elan Corp. Sec. Litig.*, 1:08-cv-8761, 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009) ("I find that it is appropriate to use that more inclusive period for present [lead plaintiff appointment] purposes."); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006) (same); *see also Miller v. Dyadic Int'l, Inc.*, No. 07-80948, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) ("The Court agrees with the reasoning of the court in *In re Doral*, that the longest, most inclusive class period is appropriate at this stage of the litigation because "'it encompasses more potential class members.' 414 F. Supp. 2d at 402. Narrowing the class period is more appropriate at a later stage of the litigation, with participation from the Defendant."). In the event Baltimore County is appointed Lead Plaintiff, it will reconcile the different class periods upon filing an amended complaint.

September 3, 2009, Graham resigned, effective immediately, without any stated reason (beyond the ubiquitous "personal reasons") and without a succession plan in effect. On the same day, Chief Information Officer Alice Schwartz, an Amedisys employee for more than eleven years, also abruptly resigned, also effective immediately and without an explanation or succession plan. Amedisys stock closed down 25 percent on this news.

On April 27, 2010, *The Wall Street Journal* ("WSJ") reported that Amedisys had been taking advantage of the Medicare reimbursement system by increasing the number of in-home therapy visits in order to trigger additional reimbursements. In response to this revelation, Amedisys common stock fell $3.98 per share, or 6.5 percent.

On May 13, 2010, the WSJ reported that the Senate Finance Committee (the "Committee") had started an investigation into the billing and operating practices of Amedisys. In a letter dated May 12, 2010 to Amedisys, the Committee cited the findings of the WSJ article and requested the Company to produce documents dating as far back as 2006 concerning data on therapy visits, lists of physicians with the highest patient referrals to the Company, and copies of all marketing materials. In response to this additional revelation, Amedisys common stock fell nearly 8 percent, or $4.48 per share.

On June 30, 2010, Amedisys announced that it had received notice of a formal investigation from the SEC pertaining to the Company, and received a subpoena for documents relating to matters under review by the Committee. As a result, on July 1, 2010, the price of Amedisys common stock declined by $4.64 per share, or approximately 11 percent. On July 13, 2010, Amedisys announced that its second quarter earnings would drop substantially, due, in part, to nonrecurring costs of 17 cents per share connected with the investigations. Following this announcement, Amedisys common stock fell an additional 25 percent.

- 4 -
Case 3:10-cv-00395-BAJ-CN   Document 22-2   08/09/10   Page 8 of 16

# ARGUMENT

## I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Four related securities class actions have been filed in this Court against Amedisys and several other defendants. Rule 42(a) of the Federal Rules of Civil Procedure allows the Court to consolidate actions that involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *see also*, 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA recommends courts to make the decision regarding the appointment of lead plaintiffs for the consolidated action "[a]s soon as practicable after [the consolidation] decision is rendered"); *Tarica v. McDermott Int'l, Inc.*, No. 99-3831, 2000 WL 377817, at *11 (E.D. La. Apr. 13, 2000) ("the court shall not make the determination . . . [regarding the appointment of lead plaintiff] until after the decision on the motion to consolidate is rendered") (brackets in original).

These actions present substantially similar factual and legal issues, arise out of the same alleged scheme by Defendants, and allege violations of the federal securities laws. Each action has been filed pursuant to Sections 10(b) and 20(a) of the Exchange Act, names Amedisys and its senior officers as defendants, and arises from the same underlying facts and circumstances. Because these actions are based on the same facts and involve the same subject matter, discovery obtained in this lawsuit will undoubtedly be relevant to all others. Consolidation of the actions is therefore appropriate under Rule 42(a) and the PSLRA as common questions of law and fact predominate, *see* Fed. R. Civ. P. 42(a); 15 U.S.C. § 78u-4(a)(3)(B)(ii), and these actions should be consolidated.

## II. BALTIMORE COUNTY SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA sets forth a procedure for selecting lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal

Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(l) and (3)(B). Specifically, Section 2lD(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class --
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 US.C. § 78u-4(a)(3)(A)(i).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the court is to consider any motion made by class members and appoint as lead plaintiff the movant that the court determines to be most capable of adequately representing the interests of the class. Specifically, the PSLRA provides that the court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating this motion, the court shall be guided by a presumption that the "most adequate plaintiff" is the person or group of persons who: (a) filed a complaint or made a motion to serve as lead plaintiff; (b) has the largest financial interest in the relief sought by the class; and (c) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### B. The PSRLA Mandates That Baltimore County Should Be Appointed Lead Plaintiff

As discussed below, Baltimore County is presumptively the most adequate plaintiff because it has satisfied all of the PSLRA's procedural requirements, holds the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements.

#### 1. Baltimore County Satisfies the PSLRA's Procedural Requirements

Baltimore County filed this Motion to serve as lead plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Action caused notice regarding the pending nature of this case to be published in *Globe Newswire*, a widely-circulated, national, business-oriented news service, on June 10, 2010. *See* Ellman Decl. Ex. C. Thus, as permitted by the PSLRA, any person who is a member of the proposed Class may apply to be appointed as lead plaintiff by the Court within sixty (60) days after publication of the notice, *i.e.*, on or before August 9, 2010. Baltimore County has filed its motion within the required time frame.

#### 2. Baltimore County Possesses the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Baltimore County suffered substantial losses of $339,969 calculated using the LIFO method of accounting for purchases. *See* Loss Analysis, Ellman Decl. Ex. B.[2] Baltimore County is presently unaware of any other movant with a larger financial interest in the outcome of this

---

[2] Baltimore County suffered losses of $328,799 calculated using the first-in-first-out ("FIFO") method of accounting for purchases and sales. *See id.*

litigation.  Consequently, Baltimore County is entitled to the legal presumption that it is the most adequate plaintiff, given that it also satisfies Rule 23's typicality and adequacy requirements.

### 3. Baltimore County Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ."  15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(cc).  With respect to the claims of the class representative, Rule 23(a) requires that: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the class; (c) such claims are typical of those of the class; and (d) the representative will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  At this stage of the litigation, however, only a preliminary showing of typicality and adequacy is required.  *See Tarica*, 2000 WL 377817, at *4; *In re Orthodontic Ctrs. of Am., Inc. Sec. Litig.*, No. 01949, 2001 WL 1636846, at *4 (E.D. La. Dec. 18, 2001).

#### (a) Baltimore County Fulfills the Typicality Requirement

The typicality requirement of Rule 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ."  Fed. R. Civ. P. 23(a)(3).  The test of typicality is whether the "plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all class members."  *Thompson v. Shaw Group Inc.*, No. 04-1685, 2004 WL 2988503, at *5 (E.D. La. Dec. 14, 2004) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999)).

The typicality requirement is satisfied in this case because Baltimore County seeks the same relief and advances the same legal theories as other Class members.  Baltimore County, along with all members of the Class, acquired Amedisys securities at prices artificially inflated by Defendants' misrepresentations and omissions, and were damaged thereby.  These shared

claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3). *See Tarica*, 2000 WL 377817, at *4.

### (b) Baltimore County Fulfills the Adequacy Requirement

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when: (1) "class representatives . . . [do] not have interests antagonistic to the class members;" and (2) lead plaintiff's selection of counsel is "qualified, experienced, and able to prosecute the action vigorously . . . ." *Tarica*, 2000 WL 377817, at *5.

Baltimore County is an adequate representative for the Class. There is no antagonism between Baltimore County's interests and those of the Class. Indeed, the interests of Baltimore County and absent Class member investors are squarely aligned. Moreover, Baltimore County has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted its choice to the Court for approval, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Furthermore, Baltimore County suffered substantial losses due to Defendants' alleged fraud, and therefore has a sufficient interest in the outcome of the case to ensure vigorous prosecution of this Action. Accordingly, Baltimore County satisfies the adequacy requirement.

### 4. Baltimore County Is the Prototypical Lead Plaintiff Envisioned By the PSLRA

In addition to satisfying the requirements of Rule 23, Baltimore County is precisely the type of large, sophisticated institutional investor—the prototypical lead plaintiff—envisioned by the framers of the PSLRA. As noted by Congress in the Statement of Managers, the PSLRA was

enacted "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  H.R. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733; *see also Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) (noting that "Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").

Baltimore County oversees in excess of $2 billion in pension assets for employees of Baltimore County, Maryland.  Baltimore County is a sophisticated institutional investor with vast resources sufficient to adequately litigate this action and supervise Class counsel.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent behind enacting the PSLRA was to encourage large institutional investors to serve as lead plaintiff).  Thus, as demonstrated above, Baltimore County is the prototypical lead plaintiff under the PSLRA.

### III. THE COURT SHOULD APPROVE BALTIMORE COUNTY'S SELECTION OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices."  *Cendant*, 264 F.3d at 274.

Baltimore County has selected Labaton Sucharow to serve as Lead Counsel.  Labaton Sucharow has had a leading role in numerous important actions on behalf of defrauded investors.  Labaton Sucharow is lead counsel in *In re American International Group, Inc. Securities Litigation*, 04-cv-8141 (S.D.N.Y.), where it recently achieved settlements in principle totaling

approximately $1 billion.  Labaton Sucharow is also lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, 07-cv-5295 (C.D. Cal.), which resulted in a settlement in principle of $624 million, the largest subprime-related securities class action settlement achieved to date.  In addition, Labaton Sucharow served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at that time.  *See* Labaton Sucharow Firm Resume, Ellman Decl. Ex. D; *see also In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions").  Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against HealthSouth, Bear Stearns, Fannie Mae, Satyam, and others.  In *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-2237 (S.D.N.Y. filed Mar. 15, 2007), Judge Jed Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation."  (*Id.,* Hrg. Tr. 24:25-25:1, June 14, 2007).

Proposed Liaison Counsel, deGravelles, Palmintier, Holthaus & Fruge, has been providing diverse legal services to its clients for over many years.  DPHF has litigated numerous cases in the federal courts of Louisiana, including *In re Katrina Canal Breaches Litigation*, 05-cv-04182 (E.D. La.).  Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, Baltimore County respectfully requests that the Court: (1) consolidate the above-captioned, related cases; (2) appoint Baltimore County as Lead

Plaintiff; (3) approve Baltimore County's selection of Labaton Sucharow as Lead Counsel and DPHF as Liaison Counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated: August 9, 2010

Respectfully submitted,

 /s/ Michael C. Palmintier

Michael C. Palmintier (LA Bar # 10288)
**deGRAVELLES, PALMINTIER,
    HOLTHAUS & FRUGÉ**
618 Main Street
Baton Rouge, Louisiana 70801
Telephone: (225) 344-3735
Facsimile: (225) 344-0522
mpalmintier@dphf-law.com

*Proposed Liaison Counsel for the Class*

Christopher J. Keller
Alan I. Ellman
Stefanie J. Sundel
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
aellman@labaton.com
ssundel@labaton.com

Sidney S. Liebesman
**LABATON SUCHAROW LLP**
One Commerce Center
1201 N. Orange Street, Suite 801
Wilmington, Delaware 19801
Telephone: (302) 573-2540
Facsimile: (302) 573-2529
sliebesman@labaton.com

*Counsel for Baltimore County
Employees' Retirement System and
Proposed Lead Counsel for the Class*