# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT F. BACH, et al. | Consolidated Securities Class Action |
| | Civil Action No. 10- 00395-BAJ-CN |
| versus | |
| | Consolidated with Nos. 10-464-BAJ-CN, |
| AMEDISYS, INC., et al., | 10-470-BAJ-CN, and 10-497-BAJ-CN |

### NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF SECURITIES PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Lead plaintiffs in the above-captioned matter (the "Securities Class Action"), Public Employees' Retirement System of Mississippi and Puerto Rico Teachers' Retirement System (together, the "Securities Plaintiffs"), submit this Notice to advise the Court of certain matters relevant to Securities Plaintiffs' opposition to the Defendants' pending motions to dismiss.

**The Supreme Court's June 6, 2011 Decision In *Halliburton***

On June 6, 2011, the Supreme Court issued a 9-0 decision in *Erica P. John Fund, Inc. v. Halliburton Co.*, -- S. Ct. --, No. 09-1403, 2011 WL 2175208 (June 6, 2011) (see Exhibit A). *Halliburton* further undermines Defendants' arguments for dismissal on loss causation grounds.

Defendants assert that Securities Plaintiffs fail to plead loss causation because "[t]he essence of loss causation is ***proof*** that Plaintiffs' loss 'resulted from the specific correction of the fraud and not because of some independent reason'" and "[n]one of the five alleged 'corrective' disclosures alleged in the Complaint satisfy these requirements." *See* Dkt. No. 126-1 at 24-25 (emphasis added) (citing *Archdiocese of Milw. Supp. Fund, Inc. v. Halliburton Co,* 597 F.3d 330, 336 (5th Cir. 2010)). In response, Plaintiffs argued in their opposition brief that proof of loss causation is not required at the pleading stage – and that loss causation allegations are instead reviewed under Rule 8(a)'s notice pleading standards, which "are not meant to impose a great

burden upon a plaintiff" and simply require the plaintiff to "provide [the] defendant with *some* indication of the loss and the causal connection that the plaintiff has in mind." *See* Dkt. No. 165 at 36-38 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 at 347 (2005)) (emphasis added).

In *Halliburton*, the Supreme Court overruled the Fifth Circuit's underlying decision (and prior Fifth Circuit cases on which it was based) that Defendants relied on here by explicitly rejecting the Fifth Circuit's ruling that plaintiffs are required to prove loss causation at the class certification stage. As the Supreme Court explained, although securities fraud plaintiffs must demonstrate loss causation "[t]o prevail on the merits," they are *not* required to prove loss causation to obtain class certification. Exh. A at *3.

Because §10(b) plaintiffs need not show loss causation by a preponderance of evidence even at class certification, there is no basis to conclude that the Supreme Court would require them to meet heightened pleading standards at an even earlier stage to avoid dismissal. Indeed, the Supreme Court cited *Dura* for the principle that a plaintiff may ultimately be unable to show loss causation if other "intervening causes" prove to be "responsible for the loss or part of it." *Id.* at *6. This aspect of the Court's ruling plainly contemplates that loss causation should not be subjected to heightened scrutiny or evidentiary proof until after discovery and development of a full factual record, as long as plaintiffs – as here – have met the limited *Dura* standard under Rule 8(a) of "provid[ing] the defendants with *notice* of what the relevant economic loss *might be*." *Dura*, 544 U.S. at 346-47 (emphasis added). *See* Dkt. No. 165 at 36-43.

**The Sixth Circuit's May 25, 2011 Decision in *Frank v. Dana***

Recently, the Sixth Circuit has also issued a significant decision, *Frank v. Dana Corp.*, -- F.3d --, No. 09-4233, 2011 WL 2020717 (6th Cir. May 25, 2011), which discusses the impact of the Supreme Court's recent opinion in *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011) on the proper method for analyzing scienter allegations in §10(b) cases. Based on

*Matrixx* (and its clarification of standards previously set forth in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* 551 U.S. 308 (2007), the Sixth Circuit **repudiated** its former method of "sorting through each [scienter] allegation individually before concluding with a collective approach" because such an approach "risk[ed] losing the forest for the trees." *Dana* at *5. As the Sixth Circuit stated:

> [W]e decline to follow [our former] approach in light of the Supreme Court's recent decision in [*Matrixx*]. There, the Court provided for us a post-*Tellabs* example of how to consider scienter pleadings holistically in section 10(b) cases. Writing for the Court, Justice Sotomayor expertly addressed the allegations collectively, did so quickly, and, importantly, did not parse out the allegations for individual analysis. ***This is the only appropriate approach following Tellabs's mandate to review scienter pleadings based on the collective view of the facts, not the facts individually***.

*Id.* (emphasis added; internal citations omitted). Following *Matrixx, Dana* went on to hold that "the inference that [defendants] recklessly disregarded the falsity of their extremely optimistic statements is at least as compelling to us as their excuse of failed accounting systems" and found that plaintiffs there had adequately pleaded a strong inference of scienter. *Id.* at *6. *Dana* thus provides further support for Plaintiffs' position that their scienter allegations must be viewed holistically, and that Defendants' attack on isolated scienter allegations is squarely contrary to the Supreme Court's recent decisions in *Tellabs* and *Matrixx*. *See* Dkt. No. 165 at 24-36.

**Recent Factual Development**

Finally, Securities Plaintiffs note that Defendant Amedisys, in an SEC Form 8-K filed April 28, 2011, disclosed that it had received yet **another** Civil Investigative Demand ("CID") from the Department of Justice on April 26, 2011, and that this latest CID is "related to the [first] CID we received in September 2010." The earlier CID demanded production of a wide range of documents and information related to the Company's 'clinical and business operations, including reimbursement and billing claims submitted to Medicare" (Compl. ¶¶13, 133, 134) – the same

3

matters that are at issue in *this* Action.  Securities Plaintiffs respectfully submit that the issuance by the Justice Department of a second CID in April 2011 undercuts Amedisys' arguments that seek to downplay the significance of the government's investigations.  *See* Dkt. No. 126-1 at 1.

Dated:  June 9, 2011                                        Respectfully submitted by:

                                                            HYMEL DAVIS & PETERSEN
                                                            RICHARD P. IEYOUB (26287)

                                                              /s/Richard P. Ieyoub
                                                            RICHARD P. IEYOUB
                                                            10602 Coursey Boulevard
                                                            Baton Rouge, LA 70816
                                                            Telephone: (225) 298-8118
                                                            Facsimile: (225) 298-8119

                                                            *Liaison Counsel for Securities Plaintiffs*

                                                            BERNSTEIN LITOWITZ BERGER &
                                                                GROSSMANN LLP
                                                            G. Anthony Gelderman, III
                                                            John Alden Meade
                                                            2727 Prytania Street, Suite 14
                                                            New Orleans, LA 70130
                                                            Telephone: (504) 889-2339
                                                            Facsimile:  (504) 899-2342

                                                                  *- and -*

                                                            BERNSTEIN LITOWITZ BERGER &
                                                                GROSSMANN LLP
                                                            William C. Fredericks
                                                            Jeremy Robinson
                                                            Adam Wierzbowski
                                                            1285 Avenue of the Americas
                                                            New York, NY 10019
                                                            Telephone: (212) 554-1400
                                                            Facsimile: (212) 554-1444


                                                            WOLF POPPER LLP
                                                            Marian P. Rosner
                                                            Robert C. Finkel
                                                            Andrew E. Lencyk
                                                            Natalie Mackiel
                                                            Matthew Insley-Pruitt
                                                            845 Third Avenue
                                                            New York, NY 10022
                                                            Telephone: (212) 759-4600
                                                            Facsimile: (212) 486-2093

*Lead Counsel for Securities Plaintiffs*

POMERANTZ HAUDEK
GROSSMAN & GROSS LLP
Marc I. Gross
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

*- and -*

POMERANTZ HAUDEK
GROSSMAN & GROSS LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

KAPLAN FOX & KILSHEIMER LLP
Joel B. Strauss
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 661-7714

*Additional Plaintiffs' Counsel*

# Exhibit A

2011 WL 2175208
Only the Westlaw citation is currently available.
Supreme Court of the United States

ERICA P. JOHN FUND, INC., fka Archdiocese
of Milwaukee Supporting Fund, Inc., Petitioner,
v.
HALLIBURTON CO. et al.

No. 09–1403.   Argued April
25, 2011.   Decided June 6, 2011.

**Synopsis**

**Background:** Investor, on behalf of itself and others similarly situated, filed putative securities fraud class action against corporation and its chief executive officer (CEO) during the class period, seeking to recover from defendants on fraud-on-the-market theory. The United States District Court for the Northern District of Texas, Barbara M.G. Lynn, J., 2008 WL 4791492, denied class certification, and investor appealed. The United States Court of Appeals for the Fifth Circuit, Reavley, Circuit Judge, 597 F.3d 330, affirmed. Certiorari was granted.

**Holding:** The Supreme Court, Chief Justice Roberts, held that plaintiffs in a private securities fraud action need not prove loss causation in order to obtain class certification, abrogating *Oscar Private Equity Investments v. Allegiance Telecom, Inc.,* 487 F.3d 261.

Vacated and remanded.

  West Headnotes (11)

| 1 | **Securities Regulation**
 Causation;  Existence of Injury

"Loss causation," as required for investors to prevail on the merits in a private securities fraud action, means that the defendant's deceptive conduct caused the investors' claimed economic loss. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

| 2 | **Federal Civil Procedure**
 Common Interest in Subject Matter, Questions and Relief;  Damages Issues

Considering whether questions of law or fact common to class members predominate over any questions affecting only individual members begins with the elements of the underlying cause of action. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

| 3 | **Securities Regulation**
 Manipulative, Deceptive or Fraudulent Conduct

The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b–5 are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. 28 U.S.C.A.; Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

| 4 | **Securities Regulation**
 Reliance

Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action for securities fraud, because proof of reliance ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

| 5 | **Securities Regulation**
 Reliance

The traditional and most direct way a plaintiff can demonstrate reliance, as element of § 10(b) private cause of action for securities fraud, is by showing that he was aware of a company's deceptive statement and engaged in a relevant transaction, e.g., purchasing common stock, based on that specific misrepresentation. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

| 6 | **Securities Regulation**
    Fraud on the Market

"Fraud-on-the-market theory," as basis for establishing the reliance element of § 10(b) private cause of action for securities fraud, is a rebuttable presumption of reliance based on theory that the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations; because the market transmits information to the investor in the processed form of a market price, it can be assumed that an investor relies on public misstatements whenever he buys or sells stock at the price set by the market. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

| 7 | **Securities Regulation**
    Fraud on the Market

The fraud-on-the-market theory, as basis for establishing the reliance element of § 10(b) private cause of action for securities fraud, creates a presumption of reliance, which can be rebutted by appropriate evidence. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

| 8 | **Securities Regulation**
    Fraud on the Market

In order to invoke the fraud-on-the-market theory, as basis for establishing the reliance element of § 10(b) private cause of action for securities fraud, plaintiffs must demonstrate that the alleged misrepresentations were publicly known, that the stock traded in an efficient market, and that the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

| 9 | **Federal Civil Procedure**
    Stockholders, Investors, and Depositors
**Securities Regulation**
    Causation; Existence of Injury

Plaintiffs in a private securities fraud action need not prove loss causation in order to obtain class certification; abrogating *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

| 10 | **Securities Regulation**
    Causation; Existence of Injury
**Securities Regulation**
    Reliance

Loss causation, as element of § 10(b) private cause of action for securities fraud, addresses a matter different from the reliance element of such a claim; the reliance element involves whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock, while loss causation requires an investor to show that a misrepresentation that affected the integrity of the market price also caused a subsequent economic loss. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

| 11 | **Securities Regulation**
    Causation; Existence of Injury

The fact that a stock's price on the date of purchase was inflated because of a misrepresentation does not necessarily mean that the misstatement is the cause of a later decline in value, for purposes of the loss causation element of § 10(b) private cause of action for securities fraud; the drop could instead be the result of other intervening causes, such as changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, and if one of those factors were responsible for the loss or part of it, a plaintiff would not be able to prove loss causation to that extent, even if the plaintiff purchased the stock at a distorted price, and thereby presumptively relied on the misrepresentation reflected in that price. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

*Syllabus*[*]

**\*1** Petitioner Erica P. John Fund, Inc. (EPJ Fund), is the lead plaintiff in a putative securities fraud class action filed against Halliburton Co. and one of its executives (collectively Halliburton). EPJ Fund alleges that Halliburton made various misrepresentations designed to inflate the company's stock price, in violation of § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5. EPJ Fund also contends that Halliburton later made a number of corrective disclosures that caused the stock price to drop and, consequently, investors to lose money. EPJ Fund sought to have its proposed class certified pursuant to Federal Rule of Civil Procedure 23. The District Court found that the suit could proceed as a class action under Rule 23(b)(3), but for one problem: Fifth Circuit precedent required securities fraud plaintiffs to prove "loss causation"—*i.e.,* that the defendant's deceptive conduct caused the investors' claimed economic loss—in order to obtain class certification. The District Court concluded that EPJ Fund had failed to satisfy that requirement. The Court of Appeals agreed and affirmed the denial of class certification.

*Held:* Securities fraud plaintiffs need not prove loss causation in order to obtain class certification. Pp. —— – ——.

(a) In order to certify a class under Rule 23(b)(3), a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Considering whether "questions of law or fact common to class members predominate" begins, of course, with the elements of the underlying cause of action. The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b–5 are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. ——, ——, 131 S.Ct. 1309, —— L.Ed.2d ——.

Whether common questions of law or fact predominate in such an action often turns on the element of reliance. The traditional way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction—*e.g.,* purchasing common stock—based on that specific misrepresentation. The Court recognized in *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194, however, that "[r]equiring proof of individualized reliance from each member of the proposed plaintiff class effectively would" prevent such plaintiffs "from proceeding with a class action, since individual issues" would "overwhelm[ ] the common ones." *Id.,* at 242, 108 S.Ct. 978. The Court in *Basic* sought to alleviate that concern by permitting plaintiffs to invoke a rebuttable presumption of reliance based on what is known as the "fraud-on-the-market" theory. According to that theory, "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Id.,* at 246, 108 S.Ct. 978. Under that doctrine, the Court explained, one can assume an investor relies on public misstatements whenever he "buys or sells stock at the price set by the market." *Id.,* at 247, 108 S.Ct. 978. The Court also made clear that the presumption could be rebutted by appropriate evidence. Pp. —— – ——.

(b) It is undisputed that securities fraud plaintiffs must prove certain things in order to invoke *Basic* 's rebuttable presumption of reliance. According to the Court of Appeals, EPJ Fund had to prove the separate element of loss causation in order to trigger the presumption. That requirement is not justified by *Basic* or its logic. This Court has never mentioned loss causation as a precondition for invoking *Basic* 's rebuttable presumption. Loss causation addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock.

**\*2** The Court has referred to the element of reliance in a private Rule 10b–5 action as "transaction causation," not loss causation. *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 341–342, 125 S.Ct. 1627, 161 L.Ed.2d 577. Consistent with that description, when considering whether a plaintiff has relied on a misrepresentation, the Court has typically focused on facts surrounding the investor's decision to engage in the transaction. Loss causation, by contrast, requires a plaintiff to show that the misrepresentation caused a subsequent economic loss. That has nothing to do with whether an investor relied on that misrepresentation in the first place, either directly or through the fraud-on-the-market theory. The Court of Appeals' rule contravenes *Basic* 's fundamental premise—that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction. Pp. —— – ——.

(c) Halliburton concedes that securities fraud plaintiffs should not be required to prove loss causation in order to invoke *Basic* 's presumption of reliance. Halliburton nonetheless defends the judgment below on the ground that the Court of Appeals did not actually require EPJ Fund to prove "loss causation" as the Court has used that term. According to Halliburton, "loss causation" was shorthand for a different analysis. The lower court's actual inquiry, Halliburton insists, was whether EPJ Fund had demonstrated "price impact"— that is, whether the alleged misrepresentations affected the market price in the first place.

The Court does not accept EPJ Fund's interpretation of the Court of Appeals' opinion. Loss causation is a familiar and distinct concept in securities law; it is not price impact. Whatever Halliburton thinks the Court of Appeals meant to say, what it said was loss causation. The Court takes the Court of Appeals at its word. Based on those words, the decision below cannot stand. Pp. ---- – ----.

597 F.3d 330, vacated and remanded.

ROBERTS, C.J., delivered the opinion for a unanimous Court.

Attorneys and Law Firms

David Boies, Armonk, NY, for Petitioner.

Nicole A. Saharsky, for United States as amicus curiae, by special leave of the Court, supporting the Petitioner.
David Sterling, Houston, Texas, for Respondents.
Lewis Kahn, Neil Rothstein, Kahn Swick & Foti, LLC, Madisonville, LA, E. Lawrence Vincent, Plano, TX, David Boies, Boies, Schiller & Flexner LLP, Armonk, NY, Carl E. Goldfarb, Justin D. Fitzdam, Boies, Schiller & Flexner LLP, Ft. Lauderdale, FL, for Petitioner.
Robb L. Voyles, Jessica B. Pulliam, Susan C. Kennedy, Baker Botts L.L.P., Dallas, Texas, David D. Sterling, Aaron M. Streett, Benjamin A. Geslison, Baker Botts L.L.P., Houston, Texas, for Respondent Halliburton Co.
Donald E. Godwin, Godwin Ronquillo P.C., Dallas, Texas, R. Alan York, Godwin Ronquillo P.C., Houston, Texas, for Respondent David Lesar.
Evan A. Young, Baker Botts L.L.P., Austin, Texas, Jeffrey A. Lamken, Martin V. Totaro, MoloLamken L.L.P., Washington, DC, for Respondents.

Opinion

Chief Justice ROBERTS delivered the opinion of the Court.

*3 1 To prevail on the merits in a private securities fraud action, investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss. This requirement is commonly referred to as "loss causation." The question presented in this case is whether securities fraud plaintiffs must also prove loss causation in order to obtain class certification. We hold that they need not.

I

Petitioner Erica P. John Fund, Inc. (EPJ Fund), is the lead plaintiff in a putative securities fraud class action filed against Halliburton Co. and one of its executives (collectively Halliburton). The suit was brought on behalf of all investors who purchased Halliburton common stock between June 3, 1999, and December 7, 2001.

EPJ Fund alleges that Halliburton made various misrepresentations designed to inflate its stock price, in violation of § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5. See 48 Stat. 891, 15 U.S.C. § 78j(b); 17 CFR § 240.10b–5 (2010). The complaint asserts that Halliburton deliberately made false statements about (1) the scope of its potential liability in asbestos litigation, (2) its expected revenue from certain construction contracts, and (3) the benefits of its merger with another company. EPJ Fund contends that Halliburton later made a number of corrective disclosures that caused its stock price to drop and, consequently, investors to lose money.

After defeating a motion to dismiss, EPJ Fund sought to have its proposed class certified pursuant to Federal Rule of Civil Procedure 23. The parties agreed, and the District Court held, that EPJ Fund satisfied the general requirements for class actions set out in Rule 23(a): The class was sufficiently numerous, there were common questions of law or fact, the claims of the representative parties were typical, and the representative parties would fairly and adequately protect the interests of the class. See App. to Pet. for Cert. 3a.

The District Court also found that the action could proceed as a class action under Rule 23(b)(3), but for one problem: Circuit precedent required securities fraud plaintiffs to prove "loss causation" in order to obtain class certification. *Id.,* at 4a, and n. 2 (citing *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.,* 487 F.3d 261, 269 (C.A.5 2007)). As the

District Court explained, loss causation is the " 'causal connection between the material misrepresentation and the [economic] loss' " suffered by investors. App. to Pet. for Cert. 5a, and n. 3 (quoting *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)). After reviewing the alleged misrepresentations and corrective disclosures, the District Court concluded that it could not certify the class in this case because EPJ Fund had "failed to establish loss causation with respect to any" of its claims. App. to Pet. for Cert. 54a. The court made clear, however, that absent "this stringent loss causation requirement," it would have granted the Fund's certification request. *Ibid.*

 **\*4** The Court of Appeals affirmed the denial of class certification. See 597 F.3d 330 (C.A.5 2010). It confirmed that, "[i]n order to obtain class certification on its claims, [EPJ Fund] was required to prove loss causation, i.e., that the corrected truth of the former falsehoods actually caused the stock price to fall and resulted in the losses." *Id.,* at 334. Like the District Court, the Court of Appeals concluded that EPJ Fund had failed to meet the "requirements for proving loss causation at the class certification stage." *Id.,* at 344.

We granted the Fund's petition for certiorari, 562 U.S. ––––, 131 S.Ct. 856, 178 L.Ed.2d 622 (2011), to resolve a conflict among the Circuits as to whether securities fraud plaintiffs must prove loss causation in order to obtain class certification. Compare 597 F.3d, at 334 (case below), with *In re Salomon Analyst Metromedia Litigation,* 544 F.3d 474, 483 (C.A.2 2008) (not requiring investors to prove loss causation at class certification stage); *Schleicher v. Wendt,* 618 F.3d 679, 687 (C.A.7 2010) (same); *In re DVI, Inc. Securities Litigation,* 639 F.3d 623, ––––, 2011 WL 1125926, \*7 (C.A.3, Mar.29, 2011) (same; decided after certiorari was granted).

**II**

EPJ Fund contends that the Court of Appeals erred by requiring proof of loss causation for class certification. We agree.

**A**

 2 3 As noted, the sole dispute here is whether EPJ Fund satisfied the prerequisites of Rule 23(b)(3). In order to certify a class under that Rule, a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. Rule Civ. Proc. 23(b)(3). Considering whether "questions of law or fact common to class members predominate" begins, of course, with the elements of the underlying cause of action. The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b–5 are: " '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.' " *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. ––––, ––––, 131 S.Ct. 1309, 1317, –––L.Ed.2d –––– (2011) (quoting *Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008)).

Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance. The courts below determined that EPJ Fund had to prove the separate element of loss causation in order to establish that reliance was capable of resolution on a common, classwide basis.

 **\*5** 4 5 "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge, supra,* at 159, 128 S.Ct. 761. This is because proof of reliance ensures that there is a proper "connection between a defendant's misrepresentation and a plaintiff's injury." *Basic Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction—*e.g.,* purchasing common stock—based on that specific misrepresentation. In that situation, the plaintiff plainly would have relied on the company's deceptive conduct. A plaintiff unaware of the relevant statement, on the other hand, could not establish reliance on that basis.

We recognized in *Basic,* however, that limiting proof of reliance in such a way "would place an unnecessarily unrealistic evidentiary burden on the Rule 10b–5 plaintiff who has traded on an impersonal market." *Id.,* at 245, 108 S.Ct. 978. We also observed that "[r]equiring proof of individualized reliance from each member of the proposed plaintiff class effectively would" prevent such plaintiffs "from proceeding with a class action, since individual issues" would "overwhelm[ ] the common ones." *Id.,* at 242, 108 S.Ct. 978.

**6  7**  The Court in *Basic* sought to alleviate those related concerns by permitting plaintiffs to invoke a rebuttable presumption of reliance based on what is known as the "fraud-on-the-market" theory. According to that theory, "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Id.,* at 246, 108 S.Ct. 978. Because the market "transmits information to the investor in the processed form of a market price," we can assume, the Court explained, that an investor relies on public misstatements whenever he "buys or sells stock at the price set by the market." *Id.,* at 244, 247, 108 S.Ct. 978 (internal quotation marks omitted); see also *Stoneridge, supra,* at 159, 128 S.Ct. 761; *Dura Pharmaceuticals,* 544 U.S., at 341–342, 125 S.Ct. 1627. The Court also made clear that the presumption was just that, and could be rebutted by appropriate evidence. See *Basic, supra,* at 248, 108 S.Ct. 978.

**B**

**8**  It is undisputed that securities fraud plaintiffs must prove certain things in order to invoke *Basic* 's rebuttable presumption of reliance. It is common ground, for example, that plaintiffs must demonstrate that the alleged misrepresentations were publicly known (else how would the market take them into account?), that the stock traded in an efficient market, and that the relevant transaction took place "between the time the misrepresentations were made and the time the truth was revealed." *Basic,* 485 U.S., at 248, n. 27, 108 S.Ct. 978; *id.,* at 241–247, 108 S.Ct. 978; see also *Stoneridge, supra,* at 159, 128 S.Ct. 761.

According to the Court of Appeals, EPJ Fund also had to establish loss causation at the certification stage to "trigger the fraud-on-the-market presumption." 597 F.3d, at 335 (internal quotation marks omitted); see *ibid.* (EPJ Fund must "establish a causal link between the alleged falsehoods and its losses in order to invoke the fraud-on-the-market presumption"). The court determined that, in order to invoke a rebuttable presumption of reliance, EPJ Fund needed to prove that the decline in Halliburton's stock was "because of the correction to a prior misleading statement" and "that the subsequent loss could not otherwise be explained by some additional factors revealed then to the market." *Id.,* at 336 (emphasis deleted). This is the loss causation requirement as we have described it. See *Dura Pharmaceuticals, supra,* at 342, 125 S.Ct. 1627; see also 15 U.S.C. § 78u–4(b)(4).

**\*6  9  10**  The Court of Appeals' requirement is not justified by *Basic* or its logic. To begin, we have never before mentioned loss causation as a precondition for invoking *Basic* 's rebuttable presumption of reliance. The term "loss causation" does not even appear in our *Basic* opinion. And for good reason: Loss causation addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock.

We have referred to the element of reliance in a private Rule 10b–5 action as "transaction causation," not loss causation. *Dura Pharmaceuticals, supra,* at 341–342, 125 S.Ct. 1627 (citing *Basic, supra,* at 248–249, 108 S.Ct. 978). Consistent with that description, when considering whether a plaintiff has relied on a misrepresentation, we have typically focused on facts surrounding the investor's decision to engage in the transaction. See *Dura Pharmaceuticals, supra,* at 342, 125 S.Ct. 1627. Under *Basic* 's fraud-on-the-market doctrine, an investor presumptively relies on a defendant's misrepresentation if that "information is reflected in [the] market price" of the stock at the time of the relevant transaction. See *Basic,* 485 U.S., at 247, 108 S.Ct. 978.

**11**  Loss causation, by contrast, requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss. As we made clear in *Dura Pharmaceuticals,* the fact that a stock's "price on the date of purchase was inflated because of [a] misrepresentation" does not necessarily mean that the misstatement is the cause of a later decline in value. 544 U.S., at 342, 125 S.Ct. 1627 (emphasis deleted; internal quotation marks omitted). We observed that the drop could instead be the result of other intervening causes, such as "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events." *Id.,* at 342–343, 125 S.Ct. 1627. If one of those factors were responsible for the loss or part of it, a plaintiff would not be able to prove loss causation to that extent. This is true even if the investor purchased the stock at a distorted price, and thereby presumptively relied on the misrepresentation reflected in that price.

According to the Court of Appeals, however, an inability to prove loss causation would prevent a plaintiff from invoking the rebuttable presumption of reliance. Such a rule contravenes *Basic* 's fundamental premise—that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction. The fact that a subsequent loss may have been caused by factors

other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place, either directly or presumptively through the fraud-on-the-market theory. Loss causation has no logical connection to the facts necessary to establish the efficient market predicate to the fraud-on-the-market theory.

**\*7** The Court of Appeals erred by requiring EPJ Fund to show loss causation as a condition of obtaining class certification.

## C

Halliburton concedes that securities fraud plaintiffs should not be required to prove loss causation in order to invoke *Basic* 's presumption of reliance or otherwise achieve class certification. See Tr. of Oral Arg. 26–29. Halliburton nonetheless defends the judgment below on the ground that the Court of Appeals did not actually require plaintiffs to prove "loss causation" as we have used that term. See *id.,* at 27 ("it's not loss causation as this Court knows it in *Dura* "). According to Halliburton, "loss causation" was merely "shorthand" for a different analysis. Brief for Respondents 18. The lower court's actual inquiry, Halliburton insists, was whether EPJ Fund had demonstrated "price impact"—that is, whether the alleged misrepresentations affected the market price in the first place. See, *e.g., id.,* at 16–19, 24–27, 50–51; see also Tr. of Oral Arg. 27 (stating that the Court of Appeals' "test is simply price impact" and that EPJ Fund's "only burden under the Fifth Circuit case law was to show price impact"). \*

"Price impact" simply refers to the effect of a misrepresentation on a stock price. Halliburton's theory is that if a misrepresentation does not affect market price, an investor cannot be said to have relied on the misrepresentation merely because he purchased stock at that price. If the price is unaffected by the fraud, the price does not reflect the fraud.

We do not accept Halliburton's wishful interpretation of the Court of Appeals' opinion. As we have explained, loss causation is a familiar and distinct concept in securities law; it is not price impact. While the opinion below may include some language consistent with a "price impact" approach, see, *e.g.,* 597 F.3d, at 336, we simply cannot ignore the Court of Appeals' repeated and explicit references to "loss causation," see *id.,* at 334 (three times), 334 n. 2, 335, 335 n. 10 (twice), 335 n. 11, 336, 336 n. 19, 336 n. 20, 337, 338, 341 (twice), 341 n. 46, 342 n. 47, 343, 344 (three times).

Whatever Halliburton thinks the Court of Appeals meant to say, what it said was loss causation: "[EPJ Fund] was required to prove loss causation, i.e., that the corrected truth of the former falsehoods actually caused the stock price to fall and resulted in the losses." 597 F.3d, at 334; see *id.,* at 335 ("we require plaintiffs to establish loss causation in order to trigger the fraud-on-the-market presumption" (internal quotation marks omitted)). We take the Court of Appeals at its word. Based on those words, the decision below cannot stand.

\* \* \*

**\*8** Because we conclude the Court of Appeals erred by requiring EPJ Fund to prove loss causation at the certification stage, we need not, and do not, address any other question about *Basic,* its presumption, or how and when it may be rebutted. To the extent Halliburton has preserved any further arguments against class certification, they may be addressed in the first instance by the Court of Appeals on remand.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Parallel Citations

11 Cal. Daily Op. Serv. 6803

Footnotes

\*   The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

\*   Halliburton further concedes that, even if its conception of what the Court of Appeals meant by "loss causation" is correct, the Court of Appeals erred by placing the initial burden on EPJ Fund. See Tr. of Oral Arg. 29 ("We agree ... that the Fifth Circuit put the initial burden of production on the plaintiff, and that's contrary to *Basic* "). According to Halliburton, a plaintiff must prove price impact only after *Basic* 's presumption has been successfully rebutted by the defendant. Tr. of Oral Arg. 28, 38–40. We express no views on the merits of such a framework.

**End of Document**  © 2011 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing **Notice of Supplemental Authority in Support of Securities Plaintiffs' Opposition to Defendants' Motions to Dismiss** was filed on this 9th day of June, 2011 with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

                                               /s/ Richard P. Ieyoub
                                               Richard P. Ieyoub