# Exhibit B

| | | |
|---|---|---|
| ROBERT F. BACH, ET AL., | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No. 3:l0-cv-00395-BAJ-CN |
| | ) | |
| vs. | ) | Consolidated with: |
| | ) | |
| AMEDISYS, INC., ET AL., | ) | No. 3:10-cv-00441-BAJ-CN |
| | ) | No. 3: l0-cv-00464-BAJ-CN |
| Defendants. | ) | No. 3:10-cv-00468-BAJ-CN |
| | ) | No. 3:10-cv-00470-BAJ-CN |
| | ) | No. 3:10-cv-00480-BAJ-CN |
| | ) | No. 3:10-cv-00497-BAJ-CN |
| | ) | No. 3:l0-cv-00505-BAJ-CN |
| | ) | No. 3:l0-cv-00642-BAJ-CN |
| | ) | No. 3:10-cv-00732-BAJ-CN |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED ERISA COMPLAINT

Karleen Joseph Green
Bar Roll No. 25119
Jessica L. Coco
Bar Roll No. 30445
PHELPS DUNBAR LLP
400 Convention Street
Suite 1100
Baton Rouge, Louisiana 70821-4412

*Attorneys for Defendants Larry R. Graham and Alice Ann Schwartz*

Thomas W. Darling
Bar Roll No. 23020
GAUDRY, RANSON, HIGGINS &
GREMILLION LLC
2223 Quail Run, Suite C-2
Baton Rouge, LA 70808

David Tetrick, Jr.
Georgia Bar No. 713653
*Admitted Pro Hac Vice*
Darren A. Shuler
Georgia Bar No. 644276
*Admitted Pro Hac Vice*
Michael B. Wakefield
Ga. Bar No. 950517
*Admitted Pro Hac Vice*
KING & SPALDING LLP
1180 Peachtree St.
Atlanta, GA 30309

*Attorneys for all Defendants Except Larry R. Graham and Alice Ann Schwartz*

**INTRODUCTION**

In their Opposition Brief, Plaintiffs urge the Court to postpone examining the legal sufficiency of their ERISA Complaint until a later "stage of the litigation" when they have had "the chance to vet their claims through the discovery process."[1] But nothing Plaintiffs might gain by discovery could cure the legal deficiencies of their ERISA claims. And that is why the Complaint should be dismissed now, as a matter of law. Indeed, as the Supreme Court recently admonished, when a plaintiff's allegations do not give rise to a plausible claim of entitlement to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."[2] Requiring Plaintiffs to allege plausible grounds for relief under ERISA at the pleading stage does not, as Plaintiffs' suggest, "prematurely end" litigation.[3] Rather, it "serves the practical purpose of preventing a plaintiff with a largely groundless claim from tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value."[4] This Court should not put that power in Plaintiffs' hands. The allegations in their Complaint do not plead a plausible claim for relief under ERISA and, as a consequence, it should be dismissed with prejudice.

With specific respect to their Prudence Claim, Plaintiffs misapprehend what Federal Rule of Civil Procedure 8(a) requires to survive a motion to dismiss and overcome the "analytically rigorous" presumption of prudence adopted by the Fifth Circuit in Kirschbaum v. Reliant Energy.[5] Plaintiffs are not required to possess facts supporting their claims at the pleading stage,

---

[1] Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated ERISA Class Action Complaint [Doc. 167] ("Opp'n Br.") at 9, 2.

[2] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007) (internal citation omitted).

[3] Opp'n Br. at 2.

[4] Twombly, 550 U.S. at 559.

[5] 526 F.3d 243, 256 (5th Cir. 2008).

but they must at least plead facts that they <u>expect</u> to establish in discovery, which would, if proven, justify relief under ERISA. Here, Plaintiffs have failed to do so, and that failure cannot be cured by permitting this case to proceed.

Plaintiffs' argument that their Communication Claim should be spared dismissal is also unavailing. After conceding, as they must, that alleged misrepresentations made in SEC filings and other corporate communications were not made by any Defendant acting as an ERISA fiduciary, Plaintiffs narrow their Communication Claim to statements that Amedisys's CEO, William Borne, allegedly made to employees following media reports about the Company's Medicare billing practices. But Plaintiffs do not—and because the Plan did not allow participants to direct their contributions into Amedisys stock during the class period, logically cannot—allege that Mr. Borne "intentionally connected" any of those statements to a discussion of Plan benefits, as is required to state a claim under ERISA. The nondisclosure prong of Plaintiffs' Communication Claim also fails, as it depends on an argument that this Court should infer a new duty to disclose nonpublic financial information that extends far beyond what ERISA actually requires—an extension of the statute's text that the Fifth Circuit has already rejected.[6]

For these reasons, and those detailed in Defendants' opening Brief,[7] Plaintiffs' ERISA Complaint fails as a matter of Fifth Circuit law and should be dismissed with prejudice.

---

[6] <u>Ehlmann v. Kaiser Found. Health Plan of Tex.</u>, 198 F.3d 552, 555 (5th Cir. 2000) ("Given the canon of statutory construction that the specific language in a statute rules the general, this court should not add to the specific disclosure requirements that ERISA already provides.").

[7] Doc. 161-1 ("Defs.' Br.").

2
Case 3:10-cv-00395-BAJ -CN   Document 181   06/15/11   Page 4 of 18

## ARGUMENT

I. **The Fifth Circuit's Presumption of Prudence Requires Dismissal of Plaintiffs' Prudence Claim as a Matter of Law.**

   A. **Plaintiffs Misapprehend Rule 8(a)'s Pleading Requirements and Misstate Fifth Circuit Law Applying <u>Kirschbaum</u>.**

Plaintiffs ask the Court to delay careful scrutiny of their Prudence Claim by asserting that the presumption of prudence does not apply at the pleading stage. Plaintiffs point to <u>Kirschbaum</u>, in which the Fifth Circuit adopted the presumption of prudence while reviewing a summary judgment order, and extrapolate from its procedural posture a holding the Fifth Circuit never made: that the presumption of prudence does not apply until discovery has occurred.[8] Plaintiffs even suggest that the <u>Kirschbaum</u> district court's denial of a motion to dismiss in 2004—four years before the Fifth Circuit reviewed the summary judgment order—supports their argument.[9] Neither argument holds water.

The <u>Kirschbaum</u> district court did not consider, let alone decide, whether the presumption of prudence applies at the pleading stage.[10] That is because the defendants in <u>Kirschbaum</u> did not argue it in their motion to dismiss—not surprising, since the Fifth Circuit had yet to adopt the presumption.[11] In any event, the absence of a holding by the <u>Kirschbaum</u> district court in no way limits the one actually made by the Fifth Circuit: to state a plausible claim under ERISA plaintiffs must allege "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest" a plan's holdings in employer

---

[8] Opp'n Br. at 9.

[9] <u>Id.</u> at 2 n.2 and 9 n.7.

[10] <u>See</u> <u>In re Reliant Energy ERISA Litig.</u>, 336 F. Supp. 2d 646, 652 (S.D. Tex. 2004).

[11] <u>See</u> <u>id.</u>

stock.[12] That the Fifth Circuit reached that conclusion while reviewing a summary judgment order in Kirschbaum is of no moment, and it has not prevented district courts from applying the presumption of prudence at the pleading stage.

Indeed, as Defendants noted in their opening brief, district courts in the Fifth Circuit,[13] and the majority of courts across the country,[14] have held that the presumption of prudence applies, and must be overcome, at the pleading stage. No Circuit has refused to apply the presumption on a motion to dismiss, and those that have had occasion to decide whether it applies at the pleading stage have all agreed that it does, including the Third Circuit (where the presumption of prudence originated).[15]

Plaintiffs argue otherwise in their Opposition Brief, based primarily on Halaris v. Viacom, which they mistakenly claim "den[ied] motions to dismiss for failure to plead facts rebutting the Moench presumption because 'at this preliminary stage, we cannot rule out

---

[12] Kirschbaum, 526 F.3d at 256.

[13] See, e.g., In re RadioShack Corp. ERISA Litig., 547 F. Supp. 2d 606, 612-16 (N.D. Tex. 2008); Halaris v. Viacom, 2008 WL 3855044, at *2 (N.D. Tex. Aug. 19, 2008); Fulmer v. Klein, 2011 U.S. Dist. LEXIS 36602 (N.D. Tex. Mar. 16, 2011) (all granting motions to dismiss for failure to overcome presumption of prudence).

[14] See, e.g., Griffin v. Flagstar Bancorp, Inc., 2011 WL 1261196, at *12 (E.D. Mich. March 31, 2011) (applying presumption at pleading stage, collecting cases, and recognizing that "in this context the presumption merely indicates the standard required for plaintiffs to state claims in 'stock drop' cases"); In re UBS AG ERISA Litig., 2011 WL 1344734, at *6 (S.D.N.Y. March 24, 2011) (applying presumption at pleading stage, collecting cases, and noting that although "there are a handful of cases, many of which were decided prior to Twombly, in which a district court declined to apply the presumption at the motion-to-dismiss stage," after Twombly courts "have regularly applied Moench at the motion to dismiss stage") (internal citation omitted); In re Citigroup ERISA Litig., 2009 WL 2762708, at *16 (S.D.N.Y. Aug. 31, 2009) ("[F]ollowing the Supreme Court's ruling in Twombly . . . [courts] have regularly applied Moench at the motion-to-dismiss stage." (internal citations omitted)); In re Wachvoia Corp. ERISA Litig., 2010 WL 3081359, at *13 (W.D.N.C. Aug. 6, 2010) (same).

[15] Edgar v. Avaya, Inc., 503 F.3d 340, 349 n.14 (3d Cir. 2007); Pugh v. Tribune Co., 521 F.3d 686, 699 (7th Cir. 2008); Wright v. Or. Metallurgical Corp., 360 F.3d 1090, 1098 (9th Cir. 2004).

[plaintiffs'] theories as a matter of law.'"[16] The Halaris order to which Plaintiffs cite actually grants motions to dismiss claims for failure to plead facts sufficient to overcome the Moench presumption, and it does not contain the language Plaintiffs attribute to it.[17] Plaintiffs' favored language appears in a 2007 order from the Halaris court, issued pre-Kirschbaum.[18] After the Fifth Circuit decided Kirschbaum, the Halaris court granted motions to dismiss, holding that the plaintiffs' "pleadings [were] devoid of 'persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest,' and thus fail[ed] to overcome the Moench presumption."[19] The difference in the Halaris court's application of Rule 12 to the same cause of action before and after Kirschbaum vividly illustrates Defendants' point: Twombly and Kirschbaum combined to dramatically raise the bar for pleading a plausible claim for relief in the Fifth Circuit. Plaintiffs' Prudence Claim fails to clear that bar.

Plaintiffs also misstep by arguing that the Complaint cannot be dismissed because "there has been no meaningful discovery."[20] Plaintiffs are correct that, where the legal sufficiency of allegations has been established and a case proceeds beyond the pleading stage, a plaintiff "may introduce evidence" to rebut the presumption of prudence.[21] And Defendants likewise have no quarrel with the truism that "a 12(b)(6) inquiry focuses on the allegations in the pleadings, not

---

[16] Opp'n Br. at 9 (citing Halaris v. Viacom, 2008 WL 3855044 (N.D. Tex. Aug. 19, 2008)) (second alteration in Opp'n Br.).

[17] Later in their brief, Plaintiffs cite this 2008 Halaris opinion to show what type of allegations are required to overcome the Moench presumption at the pleadings stage. See Opp'n Br. at 10.

[18] See Halaris v. Viacom, 2007 WL 4145405, at *10 (N.D. Tex. Sep. 21, 2007).

[19] Halaris, 2008 WL 3855044, at *2 (quoting Kirschbaum, 526 F.3d at 256).

[20] Opp'n Br. at 10.

[21] Id. at 9 (quoting Moench, 62 F.3d at 571).

whether a plaintiff <u>actually has</u> sufficient evidence to succeed on the merits."[22] But because <u>Kirschbaum</u> undeniably made the presumption of prudence the law of this Circuit—as illustrated by the <u>Halaris</u> court's willingness to apply it under Rule 12—it is now clear that Plaintiffs must allege facts that, if assumed true at the pleading stage, <u>would</u> constitute the "sufficient evidence" they would need to succeed on the merits.[23] Plaintiffs' Prudence Claim must be dismissed because it fails to do so.

>   B.  **Plaintiffs Bid to Water Down <u>Kirschbaum</u>'s "Analytically Rigorous" Presumption of Prudence Is Unavailing.**

Plaintiffs next argue that they have overcome the presumption of prudence by speculating about what might happen to Amedisys in the future. Specifically, Plaintiffs reiterate their allegations that Amedisys's "<u>future</u> business" has been "jeopardized" by "<u>ongoing</u> government investigations," and that "Amedisys still faces the <u>prospect</u> of severe fines, civil liability . . . criminal prosecution and even <u>potential</u> exclusion from Medicare and Medicaid programs."[24] Such sheer speculation falls far short of the "persuasive and analytically rigorous facts" required by binding Fifth Circuit precedent.[25] Nevertheless, Plaintiffs urge this Court to place fiduciaries in exactly the "untenable position of having to predict the future of the company stock's performance" that the Fifth Circuit warned against in <u>Kirschbaum</u>.[26] In Plaintiffs' view, the launch of any governmental inquiry, or any rumor reported to the market, is grounds enough to

---

[22] <u>Id.</u> at 4 (quoting <u>Ferrer v. Chevron Corp.</u>, 484 F.3d 776, 782 (5th Cir. 2007) (emphasis added)).

[23] <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1940 (2009) (requiring pleading to "contain . . . sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' . . . [and that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting <u>Twombly</u>, 550 U.S. at 570, 556)).

[24] <u>Id.</u> at 11 (emphasis added).

[25] <u>Kirschbaum</u>, 526 F.3d at 256.

[26] <u>Id.</u>

state a claim under ERISA, so long as plaintiffs possess sufficient power of imagination to speculate about future events that, if they were to occur, might overcome the presumption of prudence. However powerful this imagineering might be, it is not the "rigorous application of the Moench presumption" that the Fifth Circuit has admonished district courts to undertake.[27] It is, instead, a "[l]ess than rigorous application of the Moench presumption" that the Fifth Circuit warned would "threaten[] its essential purpose."[28]

Plaintiffs attempt to distinguish the authorities collected in Defendants' opening brief by asserting that they are all based on "allegations that fell far short of those alleged here."[29] But the Fifth Circuit cases cited in Defendants' opening brief illustrate that the presumption of prudence protected fiduciaries even where a company subsequently filed for bankruptcy,[30] as well as where a company's stock fluctuated by over 50% but was not at risk of "becoming worthless" because (much like Amedisys) its revenue, income, and assets all increased during the class period.[31] And Kirschbaum itself held that the presumption of prudence was not overcome where a company's stock dropped by over 40% in a single week after it publicly admitted to engaging in fraudulent "round-trip" energy trades.[32] The truth is that courts all across the country have found allegations far graver that those alleged by Plaintiffs insufficient to overcome the presumption of prudence.[33] Plaintiffs' Complaint does not plead the "persuasive

---

[27] Id.

[28] Id.

[29] Opp'n Br. at 12 n.10.

[30] Fulmer, 2011 U.S. Dist. LEXIS 36602 at *12-*15.

[31] In re Dell ERISA Litig., 563 F. Supp. 2d 681, 694 (W.D. Tex. 2008).

[32] Kirschbaum, 526 F.3d at 247, 255.

[33] See, e.g., Kuper v. Iovenko, 66 F.3d 1447, 1451, 1459 (6th Cir. 1995) (80% drop insufficient); Wright v. Or. Metallurgical Corp., 360 F.3d 1090, 1098-99 (9th Cir. 2004) (75% drop insufficient); Griffin v. Flagstar Bancorp, Inc., 2011 U.S. Dist. LEXIS 35080 (E.D. Mich. Mar.

and analytically rigorous facts" required to overcome the presumption of prudence and, as a consequence, their Prudence Claim fails as a matter of law.

## II. Plaintiffs' Communication Claim Fails as a Matter of Law.

### A. Plaintiffs Abandon Much of their Communication Claim and Attempt to Salvage What Remains by Ignoring the Requirement That Alleged Misrepresentations Must Be "Intentionally Connected" to a Discussion of Plan Benefits.

In their Opposition Brief, Plaintiffs concede that the allegedly misleading statements contained in Amedisys's SEC filings and other corporate communications (calls with market analysts and press releases) were not made by any Defendant acting in a fiduciary capacity, and therefore do not give rise to potential liability under ERISA.[34] Plaintiffs continue to argue, however, that they have stated an ERISA claim by alleging that Mr. Borne told employees that Amedisys "(i) did not engage in any wrongdoing, (ii) was in a strong financial position, and (iii) Amedisys stock was a sound retirement investment" and "encouraged employee investment in Company stock following announcement of the SEC investigation, touting the drop in Amedisys's stock price as a good 'opportunity to buy' additional shares of Amedisys stock."[35]

But again, Mr. Borne's alleged statements do not form the basis of an ERISA claim because Plaintiffs have not (and cannot) plausibly allege that they were made in a fiduciary

---

31, 2011) (95% drop insufficient); In re UBS, 2011 WL 1344734 (69% drop insufficient); Carr v. Int'l Game Tech., 2011 WL 923944, at *1 (D. Nev. March 16, 2011) (67% drop insufficient); In re Bear Stearns Co. Inc. Secs., Derivative, & ERISA Litig., 2011 U.S. Dist. LEXIS 6026 (S.D.N.Y. Jan. 19, 2011) (97% drop insufficient); In re Lehman Bros. Secs. & ERISA Litig., 683 F. Supp. 2d 294 (S.D.N.Y. 2010) (company's filing for bankruptcy during class period insufficient); Gearren v. McGraw Hill Co., 690 F. Supp. 2d 254 (S.D.N.Y. 2010) (64% drop insufficient); Dudenhoeffer v. Fifth Third Bank, 2010 WL 4970767, at *7 (S.D. Ohio Nov. 24, 2010) (75% drop insufficient); In re Citigroup ERISA Litig., 2009 WL 2762708, at *18-19 (S.D.N.Y. Aug. 31, 2009) (52% drop insufficient).

[34] Opp'n Br. at 14 n.11 and 15 n.12.

[35] Opp'n Br. at 14; see also Compl. ¶¶ 161, 186.

capacity, or that they were "intentionally connected" to a discussion of Plan benefits.[36] Contrary to Plaintiffs' argument, Varity Corp. v. Howe does not support their proposition that, because participants "may reasonably" view any statements that a corporate executive makes about financial results "as communications about the risks of investing retirement assets in Company stock," such statements are, *per force*, "sufficient to state a claim" under ERISA.[37] In fact, Varity stands for the opposite proposition: unless a corporate executive takes extraordinary steps to "intentionally connect" his allegedly misleading statements about a company's financial performance to a discussion of ERISA plan benefits, fiduciary liability will not lie.[38] Indeed, the Supreme Court in Varity made clear that it "d[id] not hold . . . that [the defendant] acted as a fiduciary simply because it made statements about its expected financial condition or because an ordinary business decision turn[ed] out to have an adverse impact on the plan."[39] And the Varity Court certainly did not hold, as Plaintiffs contend, that any statement a corporate executive makes about a company's financial performance can give rise to ERISA liability simply because it "may reasonably be viewed by employees—who are Plan participants—as communications about the risks of investing retirement assets in Company stock."[40] Indeed, Plaintiff's "eye-of-the-beholder" approach to ERISA communication claims has never been adopted by any court, in any jurisdiction. Without the "intentional connection" required by Varity and its progeny,

---

[36] See Defs.' Br. at 17-19 (citing Kirschbaum, 526 F.3d at 256; Pergam v. Hedrich, 530 U.S. 221, 226 (1996); Varity Corp. v. Howe, 516 U.S. 489, 505 (1996)).

[37] See Opp'n Br. at 15-16 (citing Varity).

[38] See Defs.' Br. at 19 (citing Varity).

[39] Varity, 516 U.S. at 504 (quotation marks and citation omitted).

[40] Opp'n Br. at 15-16.

9

corporate statements like Mr. Borne's are not made in a fiduciary capacity, and therefore they cannot give rise to an ERISA claim.[41]

Moreover, even if Mr. Borne had been addressing participants in a fiduciary capacity, his comments could not have prompted any participant "to buy" a <u>single share</u> of Amedisys stock through the Plan, as Plaintiffs suggest was his intent. As acknowledged in the Complaint, participants could not "buy" Amedisys stock for their Plan accounts at any time during the class period.[42] Here, the required nexus between Mr. Borne's allegedly misleading statements and Plan benefits is not only missing—it is not possible.

> **B. ERISA Does Not Impose a Roving Duty to Disclose Nonpublic Financial Information and the Fifth Circuit has Refused to Expand the Statute's Specific Disclosure Provisions.**

Plaintiffs cite no authority to support their argument that ERISA contains a roving fiduciary duty to disclose any nonpublic financial information that may be "needed to adequately protect the participants' interests."[43] And there is none; courts have long recognized that "[i]t would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed."[44] In fact, as Defendants noted in their opening Brief, the Circuits (including the Fifth Circuit) have

---

[41] Plaintiffs' reliance on <u>In re Enron Corporation Securities, Derivative, and ERISA Litigation</u>, 284 F. Supp. 2d 511, (S.D. Tex. 2003) and <u>In re Electric Data Systems Corporation ERISA Litigation</u>, 305 F. Supp. 2d 658 (E.D. Tex. 2004) only illustrates their error. Like <u>Varity</u>, both cases involve ERISA fiduciaries who intentionally connected misleading corporate statements to a discussion of ERISA benefits. <u>In re Enron</u>, 284 F. Supp. 2d at 658-59 (defendants expressly alleged to have encouraged participants to invest in company stock by intentionally connecting fraudulent corporate communications to discussion of ERISA benefits); <u>In re Elec. Data Sys.</u>, 305 F. Supp. 2d at 663 (misleading corporate disclosures were incorporated by reference into summary plan descriptions and other ERISA plan documents).

[42] <u>See</u> Compl. ¶ 97 (acknowledging Amedisys stock was not offered as an investment alternative for participant contributions at any time during the class period).

[43] Opp'n Br. at 16-17.

[44] <u>Sprague v. Gen. Motors Corp.</u>, 133 F.3d 388, 405 (6th Cir. 1998) (*en banc*).

uniformly refused to expand ERISA's disclosure obligations.[45]  And in the specific context of
"stock-drop" cases like this one, the two Circuits and the overwhelming majority of district
courts to address this argument have determined that fiduciaries are under no disclosure
obligations regarding publicly traded securities beyond those spelled out in ERISA's text.[46]

Faced with these authorities, Plaintiffs turn back to Varity (and cases applying its holding
in the context of alleged misrepresentations) to infer an unbounded duty to affirmatively disclose
nonpublic financial information.[47]  But Varity expressly did "not reach the question whether
ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own
initiative."[48]  And Plaintiffs' other cases are similarly devoid of support for an affirmative duty to
provide a continuous stream of nonpublic information.  In fact, each stands for the
uncontroversial proposition that, where an ERISA fiduciary does communicate with plan
participants about their benefits, the fiduciary may not mislead them.[49]

Plaintiffs also fail to acknowledge that the duty of disclosure they seek to impose is
inconsistent with the plain language of ERISA and unworkable in practice.  Plaintiffs do not
dispute that the unbounded duty to disclosure that they read into ERISA would overlap with the

---

[45] See Defs.' Br. at 21 n.105 and n.106 (collecting cases).

[46] See Defs.' Br. at 21-22 n.107 and n.108 (collecting cases).

[47] Opp'n Br. at 17-18 (citing Varity, 516 U.S. at 504; Braden v. Wal-Mart Stores, 588 F.3d 585, 598 (8th Cir. 2009); James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 452 (6th Cir. 2002); Jones v. Am. Gen. Life & Acc. Ins., 370 F.3d 1065, 1072 (11th Cir. 2004)).

[48] Varity, 516 U.S. at 506.

[49] Jones, 370 F.3d at 1067-68, 1071-72 (fiduciary breached duty by making knowingly false representations to plan participants that welfare benefits could never be terminated); Braden, 588 F.3d at 598-600 (fiduciaries breached duty to make accurate disclosures to participants regarding fees and expenses charged by pension plan investment options); James, 305 F.3d at 452 (fiduciary breached duty to truthfully respond to participant inquiries about benefits).

11

disclosure requirements of the securities laws,[50] a result precluded by the text of ERISA[51] and the basic tenants of our federal regulatory system.[52] Moreover, even if Plaintiffs' theory were made law, it would not actually help ERISA plan participants. The Fifth Circuit has recognized that, even assuming such a duty existed, ERISA fiduciaries could not disclose information only to participants and not to the market.[53] Likewise, any investment decisions participants made based on information disclosed to the market would necessarily come too late.[54] In sum, the unbounded duty to disclose that Plaintiffs propose is precluded by ERISA's statutory text, binding Fifth Circuit authority, and practical and policy considerations.[55]

---

[50] See 15 U.S.C. §§ 78l, 78m.

[51] 29 U.S.C. § 1144(d) ("Nothing in [ERISA] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law.").

[52] Gearren, 690 F. Supp. 2d at 273 (subjecting securities filings to duplicative and potentially conflicting regulation under ERISA would "render much of the securities law a dead letter"); see also Milwaukee v. Illinois, 451 U.S. 304, 317 (1981) (holding that federal common law is foreclosed where Congress has established a "comprehensive regulatory program supervised by an expert administrative agency.")

[53] See Kirschbaum, 526 F.3d at 256.

[54] See Edgar, 503 F.3d at 349-51; Nelson v. Hodowal, 512 F.3d 347, 350-51 (7th Cir. 2008). Defendants do not rely on the efficient market hypothesis to "excuse their fiduciary breaches," as Plaintiffs suggest (Opp'n Br. at 22). Rather, Defendants discussed it in their opening brief to illustrate that, even if Plaintiffs' theory were made law, it would not have helped them avoid the harm of which they now complain.

[55] In re Dynegy, Inc. ERISA Litigation, 309 F. Supp. 2d 861, 886-90 (S.D. Tex. 2004), does not support Plaintiffs' theory of an unbounded disclosure duty. Dynegy reached two holdings related to nondisclosure claims: (1) plaintiffs stated a claim that fiduciaries breached their duty to disclose information to correct a previous statement in an SPD that might have misled participants by encouraging them to review SEC filings that contained false statements (clearly not applicable here, because Plaintiffs admit that Amedisys's SEC filings are not incorporated in Plan documents or otherwise actionable under ERISA); and (2) plaintiffs did not state a claim that the fiduciaries breached their duties by failing to correct misstatements they made to the market, but not to participants. Id. at 890. Neither holding supports Plaintiffs' position here, and nowhere does Dynegy hold that ERISA imposes an open-ended duty to disclose nonpublic information.

### III. Plaintiffs Must Satisfy Rule 9(b)'s Pleading Requirements for Allegations That Are Predicated on Fraud.

Plaintiffs' argument that Rule 9(b) does not apply because ERISA is "a statute independent of the federal securities laws" confuses the Federal Rules of Civil Procedure with a separate source of heightened pleading requirements: the Private Litigation Securities Reform Act (the "PSLRA").[56] In securities-fraud cases, the PSLRA imposes additional heightened pleading standards that are even more difficult to satisfy than Rule 9(b)'s particularity requirement.[57] By its terms, Rule 9(b) applies to any allegations in a civil case that are predicated on "fraud or mistake."[58] Here, Plaintiffs' claims are predicated on fraud: there can be no dispute that without the allegations of fraudulent Medicare billing practices, Plaintiffs' ERISA claims would fail. Thus, Plaintiffs must state with particularity the circumstances constituting fraud or mistake, as required by Rule 9(b).[59] Because Plaintiffs have not done so, their claims must be dismissed.

### CONCLUSION

For these reasons and those set forth in Defendants' opening Brief [Doc. 161-1], the Court should grant Defendants' motion to dismiss Plaintiffs' ERISA Complaint with prejudice.

---

[56] Opp'n Br. at 24.

[57] See 15 U.S.C. § 78u-4(b).

[58] See Brown v. Bilek, C.A. No. H-09-2193, 2009 WL 2601615, at *2 (S.D. Tex. Aug. 20, 2009) (citing In re Elec. Sys. Data Corp. ERISA Litig., 305 F. Supp. 2d 658, 672 (E.D. Tex. 2004), aff'd, 401 F. App'x 889 (5th Cir. 2010)).

[59] Shandong Yinguang Indus. Joint Stock Co. v. Potter, 607 F.3d 1029, 1032 (5th Cir. 2010) (requiring pleading of "the who, what, when, where, and how" of the circumstances constituting the fraud (quoting Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003))).

Submitted this 7th day of June, 2011.

> Thomas W. Darling
> Bar Roll No. 23020
> GAUDRY, RANSON, HIGGINS &
> GREMILLION, L.L.C.
> Bar Roll No. 23020
> 2223 Quail Run, Suite C-2
> Baton Rouge, LA 70808
> Telephone: 225-663-6016
> Fax: 225-663-6102
> tdarling@grhg.net
>
> */s/ Darren A. Shuler*
> David Tetrick, Jr. (T.A.)
> Georgia Bar No. 713653
> *Admitted Pro Hac Vice*
> Darren A. Shuler
> Georgia Bar No. 644276
> *Admitted Pro Hac Vice*
> Michael B. Wakefield
> Georgia Bar No. 950517
> *Admitted Pro Hac Vice*
> KING & SPALDING LLP
> 1180 Peachtree St.
> Atlanta, GA 30309
> Telephone: 404-572-3526
> Fax: 404-572-5139
> dtetrick@kslaw.com
>
> *Attorneys for All Defendants Except Larry R. Graham and Alice Ann Schwartz*
>
> Karleen Joseph Green (T.A.)
> Bar Roll No. 25119
> Jessica L. Coco
> Bar Roll No. 30445
> PHELPS DUNBAR LLP
> 400 Convention Street
> Suite 1100
> Baton Rouge, Louisiana 70821-4412
> Telephone: 225-346-0285
> Fax: 225-381-9197
> greenk@phelps.com

*Attorneys for Defendants Larry R. Graham and Alice Ann Schwartz*

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2011, a copy of the foregoing Defendants' Brief in Support of Their Motion to Dismiss the Consolidated ERISA Complaint was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

                                        */s/ Darren A. Shuler*
                                        Darren A. Shuler
                                        Georgia Bar No. 644276
                                        (*Admitted Pro Hac Vice*)