**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

ROBERT F. BACH, et al.,                           Civil Action No.  10-395-BAJ-SCN

               Plaintiffs,

v.

AMEDISYS, INC., et al.,

               Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AND**
**CLASS COUNSEL'S  MOTION FOR FINAL APPROVAL OF CLASS**
**SETTLEMENT, APPLICATION FOR CASE CONTRIBUTION AWARDS,**
**AND APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND.....................................................................................................3

      A.  Summary of the Litigation ...........................................................................3

          1.  Plaintiffs' Allegations ..........................................................................3

          2.  Procedural History ...............................................................................3

      B.  Settlement Negotiations ...............................................................................4

      C.  The Settlement Terms ...................................................................................4

          1.  The Settlement Class.............................................................................4

          2.  Monetary Relief for the Settlement Class.............................................5

          3.  Therapeutic Relief for the Settlement Class ........................................5

          4.  Release of Claims .................................................................................6

          5.  Class Representative Case Contribution Awards .................................6

          6.  Attorneys' Fees and Costs ....................................................................7

      D.  Reasons for the Settlement............................................................................7

      E.  The Class Notice............................................................................................8

III.  MOTION FOR FINAL APPROVAL.....................................................................9

          1.  The Court Has Personal Jurisdiction Over the Settlement Class Because the
              Class Received Adequate Notice and an Opportunity to Be Heard............................10

              a.  The Best Notice Practicable Was Furnished ..........................................10

              b.  The Class Notice Was Reasonably Calculated to Inform Settlement Class
                  Members of Their Rights ......................................................................10

          2.  The Settlement Should Be Approved as Fair, Adequate and Reasonable .................11

      a. There Was No Fraud or Collusion ........................................................................12

      b. The Settlement Will Avert Years of Highly Complex and Expensive
         Litigation...............................................................................................................13

      c. The Factual Record Is Sufficiently Developed to Enable Class Counsel to
         Make a Reasoned Judgment..................................................................................14

      d. Plaintiffs Would Have Faced Significant Obstacles to Prevailing .........................14

      e. The Benefits Provided by the Settlement Are Fair, Adequate, and
         Reasonable Compared to the Range of Possible Recovery ....................................16

      f. The Opinions of Class Counsel, the Class Representatives, and Absent
         Class Members Favor Approving the Settlement ...................................................17

    3. The Court Should Certify the Settlement Class..........................................................17

IV.    APPLICATION FOR CASE CONTRIBUTION AWARD .................................................17

V.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES...........................................19

  A. The Law Awards Class Counsel Fees From the Common
    Fund Created Through Their Efforts ...............................................................................19

  B. Application of the *Johnson* Factors Supports the Requested Fee ....................................21

    1. Prosecuting the Action Required Substantial Time and Labor.....................................22

    2. The Second and Third *Johnson* Factors Support The Requested Fee Award..............23

    3. The Preclusion of Other Employment ........................................................................24

    4. The Fifth and Sixth *Johnson* Factors Support The Required Fee Award ....................24

    5. Time Limitations Imposed by the Clients or the Circumstances .................................25

    6. Class Counsel Achieved a Superb Result ...................................................................25

    7. The Experience, Reputation, and Ability of the Attorneys..........................................26

    8. The "Undesirability" of the Action.............................................................................26

    9. The Nature and the Length of the Professional Relationship with the Clients............27

    10. The Requested Fee Comports With Fees Awarded in Similar Cases........................27

C.  The Expense Request Is Appropriate ............................................................................28

VI.  CONCLUSION ..........................................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Altier v. Worley Catastrophe Response, LLC,*
  No. 11-241, 2012 WL 161824 (E.D. La. Jan. 18, 2012) ............................................................ 18

*Ayers v. Thompson,*
  358 F.3d 356 (5th Cir. 2004) .................................................................................................... 14

*Barton v. Drummond Co.,*
  636 F.2d 978 (5th Cir. 1981) .................................................................................................... 20

*Batchelder v. Kerr-McGee Corp.,*
  246 F. Supp. 2d 525 (N.D. Miss. 2003) .................................................................................... 13

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.,*
  480 F. Supp. 1195 (S.D.N.Y. 1979) .......................................................................................... 28

*Bethea v. Sprint Commc'ns Co.,*
  No. 12-322, 2013 WL 228094 (S.D. Miss. Jan. 18, 2013) ....................................................... 20

*Billitteri v. Secs. Am., Inc.,*
  No. 09-01568, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) .............................................. 13, 23

*Bredthauer v. Lundstrom, et al.,*
  No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013) ............................................................ 10, 17, 26, 27

*Brieger v. Tellabs,*
  659 F. Supp. 2d 967 (N.D. Ill. 2009) ................................................................................... 2, 27

*Burford v. Cargill, Inc.,*
  No. 05-0283, 2012 WL 5472118 (W.D. La. Nov. 8 2012) ....................................................... 15

*Collins v. Sanderson Farms, Inc.,*
  568 F. Supp. 2d 714 (E.D. La. 2008) .......................................................................... 16, 19, 21

*Cook v. Howard,*
  No. 11-199, 2013 WL 943664 (S.D. Miss. Mar. 11, 2013) ....................................................... 18

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977) .............................................................................................. 11, 12

*Deposit Guar. Nat'l Bank v. Rope,*
  445 U.S. 326 (1980) .................................................................................................................. 20

*DiFelice v. U.S. Airways, Inc.,*
 436 F. Supp. 2d 756 (E.D. Va. 2006) ................................................................ 2, 27

*Frew v. Hawkins,*
 No. 93-065, 2007 WL 2667985 (E.D. Tex. Sept. 5, 2007)................................. 16

*Gaskill v. Gordon,*
 942 F. Supp. 382 (N.D. Ill. 1996) ...................................................................... 28

*Hargrove v. Eaglepicher Corp.,*
 No. 10-10946, 2012 WL 1668152 (E.D. Mich. 2012)....................................... 23

*In re Ampicillin Antitrust Litig.,*
 526 F. Supp. 494 (D.D.C. 1981) ........................................................................ 28

*In re Catfish Antitrust Litig.,*
 939 F. Supp. 493 (N.D. Miss. 1996)............................................................ 18, 28

*In re Chicken Antitrust Litig. Am. Poultry,*
 669 F.2d 228 (5th Cir. 1982) ......................................................................... 9, 11

*In re Combustion, Inc.,*
 968 F. Supp. 1116 (W.D. LA, 1997). ............................................. 22, 24, 25, 27

*In re Crazy Eddie Sec. Litig.,*
 824 F. Supp. 320 (E.D.N.Y. 1993) .................................................................... 28

*In re Dynegy, Inc. ERISA Litig.,*
 309 F. Supp. 2d 861 (S.D. Tex. 2004) ............................................................... 18

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
 586 F. Supp. 2d 732 (S.D. Tex. 2008) ............................................................... 24

*In re Ford Motor Co. Bronco II Prods. Liab. Litig.,*
 CIV-MDL-991, 1995 WL 222177 (E.D. La. 1995)........................................... 11

*In re Granada P'ship Secs. Litig.,*
 803 F. Supp. 1236 (S.D. Tex. 1992) .................................................................. 11

*In re Lease Oil Antitrust Litig.,*
 186 F.R.D. 403 (S.D. Tex. 1999)....................................................................... 28

*In re Mexico Money Transfer Litig.,*
 164 F. Supp. 2d 1002 (N.D. Ill. 2000) .............................................................. 12

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977). ........................................................................... 10, 11

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
  910 F. Supp. 2d 891 (E.D. La. 2012) ............................................................. 13, 14, 17

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  No. 08-cv-1432, 2012 WL 1964451 (D.N.J. May 31, 2012) ...................................... 18

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993) ............................................................................. 14

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) ..................................................................... 27

*Johnson v. Ga. Hwy. Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974). ........................................................................... passim

*Jones v. Gusman*,
  No. 12-138, 2013 WL 2458817 (E.D. La. 2013) ...................................................... 13

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ....................................................... 17, 23, 24

*Landgraff v. Columbia/HCA Healthcare Corp.*,
  No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000) ........................... 2, 27

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
  540 F.2d 102 (3d Cir. 1976) .................................................................................... 27

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 660 (M.D. Ala. 1988) ........................................................................ 20

*McNary v. Am. Sav. and Loan Ass'n*,
  76 F.R.D. 644 (D.C. Tex. 1977) ............................................................................... 9

*Mock v. Grady-White Boats, Inc.*,
  No. 11-2057, 2013 WL 1879683 (E.D. La. Apr. 17, 2013) ...................................... 13

*Muehler v. Land O'Lakes, Inc.*,
  617 F. Supp. 1370 (D. Minn. 1985) ......................................................................... 20

*Nelson v. Hodowal (IPALCO)*,
  512 F.3d 347 (7th Cir. 2008) .................................................................................. 27

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ................................................................................ 11

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) .............................................................................. 16

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................ 10

*Ruiz v. McKaskle*,
   724 F.2d 1149 (5th Cir. 1984). ........................................................................... 12

*Smith v. Tower Loan of Miss., Inc.*,
   216 F.R.D. 338 (S.D. Miss. 2003) ...................................................................... 21

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) .............................................................................. 12

*Walco Investments v. Thenen*,
   975 F. Supp. 1468 (S.D. Fla. 1997) ................................................................... 27

*Warren v. City of Tampa*,
   693 F. Supp. 1051 (M.D. Fla. 1988) .................................................................. 16

*Zinman v. Avemco Corp.*,
   No. 75-1254, 1978 WL 5686 (E.D. Pa. Jan. 18, 1978) ....................................... 28

Plaintiffs, who are participants in the Amedisys, Inc. 401(k) Plan (the "Plan), respectfully submit this memorandum of law in support of their unopposed motion for an order (i) granting final approval of the proposed class action Settlement Agreement (the "Settlement" or "Settlement Agreement")[1] and the proposed plan of allocation, (ii) certifying the Settlement Class, (iii) approving the Case Contribution Award for each Plaintiff, and (iv) granting Class Counsel's requested award of attorneys' fees and expenses.  Such an order will bring to a close the settlement process which began on April 14, 2014 when this Court preliminarily certified the Settlement Class and preliminarily approved the proposed Settlement.  *See* D.E. 248 (the "Order Preliminarily Approving Settlement").  With this unopposed motion, Plaintiffs are filing a supporting declaration of Co-Lead Counsel[2] and are submitting a proposed Final Approval Order.

## I.    INTRODUCTION

The Parties have reached a proposed Settlement of this ERISA[3] case for a monetary payment of $1,200,000.00.  In addition to this significant cash payment, Defendants agreed to implement certain therapeutic relief which will help ensure that Plan participants are fully informed of their rights under ERISA and will help prevent the precise conduct that originally gave rise to Plaintiffs' claims.  The proposed Settlement provides significant relief to the Settlement Class Members.[4]

Importantly, this Settlement was achieved under the supervision of mediator Robert A.

---

[1] Unless otherwise defined all capitalized terms shall have the same meaning as set forth in the Settlement Agreement dated December 13, 2013, D.E. 244.

[2] *See* Declaration of Stephen J. Fearon, Jr. ("Fearon Decl.").

[3] ERISA refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA")

[4] Pursuant to the Order Preliminarily Approving Settlement, the Settlement Class includes participants in the Amedisys, Inc. 401(k) Plan whose retirement savings were invested through the Plan in Amedisys stock at any time between January 1, 2008 and December 13, 2013.

Meyer, Esq. of Loeb & Loeb, an experienced class action mediator.  D.E. 245, Exh. A.  This Settlement is an excellent result in light of the factual and legal risks to the Class of continued litigation, including the risk that the Class would recover nothing if the Court granted Defendants' motion to dismiss as it did in the related Securities Action.  Further, had Plaintiffs defeated the motion to dismiss, there is no guarantee that Plaintiffs would have won at trial – as defendants have won at trial in several analogous ERISA class cases.[5]  Accordingly, Class Counsel believes the proposed Settlement is fair, reasonable, adequate, and in the best interest of the proposed Settlement Class, as it provides for an immediate and meaningful recovery.

In addition, Class Counsel respectfully request that the Court approve the Case Contribution Awards to the three Plaintiffs, whose willingness to represent the Settlement Class and active participation in the Action helped make possible the Settlement.  Class Counsel also respectfully request that the Court award attorneys' fees representing thirty-three and one-third percent (33.33%) of the Settlement Fund[6], and reimbursement of certain expenses, to compensate them for their work in achieving the Settlement.

As detailed below, Plaintiffs have fully complied with the terms of the Order Preliminarily Approving Settlement, including with respect to providing notice of the proposed Settlement to the Settlement Class Members.  After mailing the approved Class Notice to 43,285 potential members of the Settlement Class, Class Counsel have received *no* objections to any aspect of the proposed Settlement, including the requested fees, expenses and Case Contribution Awards. D.E. 249, ¶ 3.[7]

---

[5] *See, e.g., Brieger v. Tellabs,* 659 F. Supp. 2d 967 (N.D. Ill. 2009); *Nelson v. Hodowal (IPALCO),* 512 F.3d 347 (7th Cir. 2008); *DiFelice v. U.S. Airways, Inc.,* 436 F. Supp. 2d 756 (E.D. Va. 2006); *Landgraff v. Columbia/HCA Healthcare Corp.,* No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000).

[6] Class Counsel's fee request is predicated solely on the monetary recovery and seeks no compensation for the significant therapeutic relief provided by the Settlement.

[7] June 23, 2014 is the deadline for objecting to the Settlement and the related relief that Plaintiffs request in this motion.  To the extent objections are filed, Class Counsel will address them in a supplemental submission to this Court by July 8, 2014 in accordance with the Order Preliminarily Approving Settlement.

As set forth below, the Settlement satisfies the factors set forth in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Accordingly, Plaintiffs and Class Counsel respectfully request that the Court grant the relief requested in this motion and enter the Final Approval Order dismissing the Action with prejudice.

## II.   BACKGROUND

### A. Summary of the Litigation

#### 1. Plaintiffs' Allegations

Plaintiffs are three participants in the Plan who brought this ERISA Action on behalf of themselves and participants in the Plan whose accounts included investments in Amedisys stock. They alleged that the fiduciaries of the Plan breached their duties by offering Amedisys stock as a retirement investment when the stock was an imprudent retirement investment. The claims center on the Named Plaintiffs' allegation that the company's Medicare billing practices jeopardized more than 90% of the company's revenues and its continued financial health, making the stock an imprudent retirement investment. When Plaintiffs first filed the case, Amedisys was subject to several ongoing government investigations into its business practices and it faced the threat of severe penalties, including fines and criminal and civil liability. As the market learned about the company's problems, its stock price dropped by more than 60% from $66 per share to approximately $27 per share.

#### 2. Procedural History

The accompanying Fearon Declaration and the previously filed motion for preliminary approval set forth the background of the case and its procedural history leading to the proposed settlement. D.E. 245 (Declaration in support of preliminary approval), ¶¶ 3-10.[8]

---

[8] Plaintiffs incorporate these submissions as if set forth fully herein.

## B. Settlement Negotiations

The Parties engaged in informal settlement discussions during the pendency of Defendants' motions to dismiss. By the Fall of 2013, Defendants' motions to dismiss were fully briefed when the Parties' informal discussions became significantly more advanced as they discussed the possible parameters of a settlement. Then, in October 2013, the parties agreed to mediate the case with Robert A. Meyer, Esq. of Loeb & Loeb, an experienced mediator in ERISA and other complex class actions. Each side submitted detailed mediation statements in advance of the formal mediation session.

On November 5, 2013 the parties mediated the case in New York under Mr. Meyer's supervision. The mediation was vigorous, contentious and arms-length. With Mr. Meyer's guidance, the parties agreed in principal to the terms of the proposed Settlement late that evening. The Parties then began a month-long process of negotiating the Settlement Agreement and ancillary documents. The Settlement Agreement is the product of these vigorous discussions and was preliminarily approved by this Court on April 14, 2014. D.E. 248.

## C. The Settlement Terms

The following is a summary of the Settlement's material terms:

### 1. The Settlement Class

The Settlement Class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is defined as:

> All Persons who were participants in or beneficiaries of the Plan and who held the Company's common stock in their Plan accounts at any time between January 1, 2008 through December 13, 2013, excluding any of the Defendants or any of the Individual Defendants' Immediate Family, beneficiaries, alternate payees, Representatives or Successors-In-Interest, except to the extent

4

> Immediate Family, beneficiaries, alternate payees, Representatives or Successors-In-Interest were themselves participants in the Plan.

Settlement Agreement ¶ 1.37.

### 2. Monetary Relief for the Settlement Class

Under the Settlement, Defendants timely deposited $1,200,000.00 into an Escrow Account following this Court's entry of the Preliminary Approval Order. That deposit created the Settlement Fund, which will be used to pay: (i) all distributions of money to the Settlement Class; (ii) all Court approved attorneys' fees and expenses; (iii) case contribution awards to the Named Plaintiffs; and (iv) administration of the Settlement and costs associated with dissemination of Notice. Settlement Agreement ¶¶ 1.38, 7.1.

The Plan of Allocation provides for distributing the Settlement Fund based on a allocation of net proceeds to Class Members on a *pro rata* basis. Importantly, Settlement Class Members do not have to submit claim forms or take any other affirmative steps to receive relief under the Settlement. Instead, the Claims Administrator will determine each Class member's *pro rata* distribution by analyzing Plan data. The Plan of Allocation proposed by the Parties here is based upon similar plans in other ERISA cases that have been repeatedly approved by other courts around the country.

### 3. Therapeutic Relief for the Settlement Class

As part of the Settlement, Defendants also have agreed to provide non-monetary relief in the form of (a) annual training in fiduciary duties and best practices for existing Plan fiduciaries, provided by outside counsel selected by the Company's General Counsel (with such training to begin no later than 180 days after the Settlement becomes Final); (b) training for each new Plan fiduciary within a reasonable time following his or her appointment; and (c) participant education campaigns, including education regarding the benefits of diversifying investments, the

availability and potential benefits of age-targeted investments, and evaluating the risks and potential benefits of different investment options (with such campaigns to begin no later than 180 days after the Settlement becomes Final). Settlement Agreement ¶ 7.4. Defendants have agreed to pay all of the fees, expenses and costs incurred to provide this non-monetary relief. *Id.* at ¶ 7.5.

Class Counsel believe that this significant non-monetary component of the Settlement will help ensure that Plan participants are fully informed of their rights under ERISA and help prevent the precise conduct that gave rise to Plaintiffs' claims in the first instance.

### 4. Release of Claims

In exchange for the benefits conferred by the Settlement, Plaintiffs and the Settlement Class shall automatically be deemed to have fully and irrevocably released and forever discharged Defendants from claims relating to the subject matter of the Action. The details of the release are set forth in ¶¶ 6-6.3 of the Settlement Agreement.

### 5. Class Representative Case Contribution Awards

The Settlement Agreement permits Class Counsel to request Case Contribution Awards of $5,000 for each named Plaintiff. Settlement Agreement ¶ 10. If the Court approves them, the Case Contribution Awards will be paid from the Settlement Fund and will be in addition to the other relief the three Plaintiffs will be entitled to as Settlement Class Members. As set forth below, these awards will compensate these individuals for their time and effort in the Action and for the risk they undertook in prosecuting the Action against Defendants. The Parties negotiated and reached agreement regarding the Case Contribution Awards only after reaching agreement on all other material terms of the Settlement.

### 6. Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, Class Counsel have requested, and Defendants do not oppose, an award of attorneys' fees of thirty-three and one-third percent (33.33%) of the Settlement Fund, plus reimbursement of litigation costs and expenses. Settlement Agreement ¶ 9. The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.

### D.  Reasons for the Settlement

Plaintiffs entered into this Settlement fully understanding the strengths and weaknesses of their claims, based on Class Counsel's extensive experience with ERISA litigation, the investigation performed by counsel, and the facts they obtained during the litigation.  In negotiating the proposed Settlement, Class Counsel considered the risks and uncertainties of proceeding with the litigation and ultimately prevailing at trial.  Each of these issues was debated during the mediation process.

In addition, Class Counsel were keenly aware that this Court had previously dismissed the Securities Action which was premised on the same underlying Medicare billing practices; the primary difference between this Action and the Securities Action being the classes and the laws at issue in each case.[9]  Here, Defendants made substantially similar arguments in their dismissal motions to those that the defendants made in the Securities Action as well as raising ERISA-specific defenses.  If the Court accepted Defendants' arguments in this ERISA Action, it could have dismissed all of Plaintiffs' claims, leaving Plaintiffs and the Class with no recovery.

---

[9] Here the Class consists of participants in the Plan who held Amedisys stock in the Plan and brough ERISA claims to recover their losses.  In the Securities Action the proposed class included investors who bought Amedisys stock on the open market and sough to recover their losses by bringing claims under the federal securities laws.  The plaintiffs in the Securities Action alleged that the company's stock price was artificially inflated by the defendants' false and misleading statements and that, as a result, investors were damaged when the stock price dropped significantly.

Further, Class Counsel were aware that Amedisys stock had rebounded from its Class Period low. Defendants argued vigorously that this rising stock price mitigated Plaintiffs' damages. Had this Action survived Defendants' motions to dismiss, Defendants would have argued this fact before the Court – turning summary judgment into a battle of the experts. Class Counsel also considered the ever-evolving case law that applies to this type of action which created a real risk to Plaintiffs' claims.

Class Counsel support the proposed Settlement as providing a certain and immediate benefit to the Settlement Class members, especially considering the risks of this case. Without this Settlement, there is no assurance that Plaintiffs would prevail if the litigation continued - much less that the Settlement Class would recover more than the Settlement Fund.

### E.    The Class Notice

In accordance with the Court's Order Preliminarily Approving Settlement, the Settlement Class was provided with ample and sufficient notice of this Settlement including an appropriate opportunity to voice any objections they may have. The date for filing objections is June 23, 2014. To date, no member of the Settlement Class has objected to any term of the Settlement Agreement including Plaintiffs' requested Case Contribution Award and Class Counsel's fee and expense request.

The Class Notice was designed to provide the best notice practicable and was tailored to take advantage of the information Defendants had available about the members of the Settlement Class. The Class Notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's fee application and request for Case Contribution Awards for the Named Plaintiffs, and their right to

object to the Settlement.  In short, the Class Notice satisfied all applicable requirements of law including Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

Pursuant to the Order Preliminarily Approving Settlement, the Class Notice was sent via first-class mail, postage prepaid, to the last known address of each member of the Settlement Class maintained by the Plan's record keeper.  Berdon Claims Administration LLC ("Berdon Claims"), an experienced claims administrator, served as the Settlement Administrator and distributed the Class Notice.  Using the mailing list provided by Defendants, Berdon Claims mailed 43,285 notices on April 23, 2014.  *See* Affidavit of Michael Rosenbaum, D.E. 249, ¶ 3. In addition, pursuant to the Order Preliminarily Approving Settlement, Berdon Claims also posted the Class Notice on its website.  The Settlement Class is well informed of the pendency of this Settlement as multiple individuals have contacted Berdon and Class Counsel to inquire about certain terms of the Settlement.  *See* Fearon Decl. ¶ 50.

### III.    **MOTION FOR FINAL APPROVAL**

Court approval is required to settle a class action.  Fed. R. Civ. P. 23(e).  The federal courts have long recognized a strong policy and presumption in favor of class settlements.  The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement."  *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'"  *McNary v. Am. Sav. and Loan Ass'n*, 76 F.R.D. 644, 649 (D.C. Tex. 1977) (quoting *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).  Indeed, "[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are

a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

The Settlement here satisfies Rule 23(e), warranting Final Approval.

**1.      The Court Has Personal Jurisdiction Over the Settlement Class Because the Class Received Adequate Notice and an Opportunity to Be Heard**

In addition to having personal jurisdiction over the Named Plaintiffs, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

**a.      The Best Notice Practicable Was Furnished**

Notice to the Settlement Class was comprised of (i) a detailed direct mail notice to Settlement Class Members and (ii) providing detailed information of the Settlement by the Claims Administrator on their website, www.berdonclaims.com.     Each of these items was properly accomplished. *See* Fearon Decl. ¶¶ 47 – 51. Courts in analogous actions have found the mailing of direct notice to class members and providing a website was sufficient notice for purposes of satisfying Rule 23 and due process. *See Bredthauer v. Lundstrom, et al.,* No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013)("the mailing and Web site provided sufficient notice of the Fairness Hearing and of the terms of the settlement . . . the court finds the notice satisfies the requirements of Fed. R. Civ. P. 23 and due process."). Respectfully, this Court should find that the Class Notice satisfies due process.

**b.      The Class Notice Was Reasonably Calculated to Inform Settlement Class Members of Their Rights**

The Court-approved Class Notice satisfies due process requirements because it described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a

decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05. The Class Notice, among other things, defined the Settlement Class, described the claims asserted in the Action, the Plan of Allocation, and the amount and proposed distribution of the Settlement Fund, and informed members of the Settlement Class of their right to object, the procedures for doing so, and the time and place of the Fairness Hearing. It also notified the Settlement Class where they could get more information. Further, the Class Notice described Class Counsel's intention to seek attorneys' fees of up to thirty-three and one-third percent (33.33%) of the $1.2 million Settlement Fund.

Hence, Settlement Class members were provided with the best practicable notice, which was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15). To date there have been no objections to the Settlement or the Notice.

## 2. The Settlement Should Be Approved as Fair, Adequate, and Reasonable

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (quoting *Cotton*, 599 F.2d at 1330); *see also In re Chicken Antitrust Litig.*, 669 F.2d at 238. A settlement is fair, reasonable, and adequate when "the interests of the Plaintiff Settlement Class, as a whole, will be better served if the claims against these Defendants are resolved by the Settlement rather than pursued." *In re Granada P'ship Secs. Litig.*, 803 F. Supp. 1236, 1244 (S.D. Tex. 1992); *see also In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 222177, at *3 (E.D. La. 1995).

Importantly, the Court is "not called upon to determine whether the settlement reached by

the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Fifth Circuit has identified six (6) factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

(1)     the existence of fraud or collusion behind the settlement;

(2)     the complexity, expense, and likely duration of the litigation;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the probability of the plaintiffs' success on the merits;

(5)     the range of possible recovery; and

(6)     the opinions of the class counsel, class representatives, and absent class members.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir.1983)); *see also In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 194-95 (5th Cir. 2010).   Analyzing these factors shows this Settlement to be eminently fair, adequate, and reasonable.

### a.    There Was No Fraud or Collusion

The Fifth Circuit has held that the "cardinal rule" for approving a settlement as "fair, adequate and reasonable" is a determination that it "is not the product of collusion between the parties." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977).   In the absence of fraud or collusion, the trial court "should be hesitant to substitute its own judgment for that of counsel." *Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984).

Here, there is no evidence that the Settlement was obtained by fraud or collusion. Rather, the sharply contested nature of this case and the negotiations under the supervisions of an

experienced mediator demonstrate the absence of fraud or collusion. *See, e.g., Jones v. Gusman*, 2013 WL 2458817, *42 (E.D. La. 2013) (citing the "protracted period of litigation between" the parties as evidence that class a settlement was "not tainted by fraud or collusion").[10]  Indeed, this settlement was only achieved "after a long and hard-fought process that culminated in ultimately successful mediation. . ." *Billitteri v. Secs. Am., Inc.*, 2011 WL 3586217, *10 (N.D. Tex. Aug. 4, 2011) (citing *Quintanilla v. A & R Demolition Inc.,* 2007 WL 5166849, *4 (S.D. Tex. May 7, 2007)).

Plaintiffs and the Settlement Class were represented by experienced counsel throughout the arm's-length and extensive negotiations under the supervision of an experienced ERISA and class action mediator, Robert A. Meyer, Esq.  Even after the parties agreed to the general outline of the Settlement, the Parties continued to negotiate the precise terms for more than a month.

Accordingly, this factor strongly favors Final Approval.

### b.    The Settlement Will Avert Years of Highly Complex and Expensive Litigation

This Action involves claims on behalf of thousands of settlement class members. Continued litigation would be both difficult and time-consuming.  Recovery by any means other than settlement would require additional years of litigation. *Reed*, 703 F.2d at 172 ("The very purpose of [a class action] compromise is to avoid the delay and expense of . . . trial") (quoting *Young v. Katz,* 447 F.2d 431, 433 (5th Cir. 1971)) (punctuation omitted); *Mock v. Grady-White Boats, Inc.*, 2013 WL 1879683, *3 (E.D. La. Apr. 17, 2013) (citing "the expense and anticipated time required for trial preparation and the trial itself" as justification for finding a 'proposed

---

[10] *See also In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010,* 910 F. Supp. 2d 891, 931 (E.D. La. 2012) (stating that "any suggestion of fraud or collusion" respecting a class action settlement was "baseless" since "the Settlement was reached only after many months of hard-fought negotiations"); *Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 527 (N.D. Miss. 2003) ("The court was intimately involved in the long-running and frequently contentious settlement negotiations between the parties in this action and has no reason to believe that fraud or collusion played a role in the negotiations").

[class] settlement . . . fair and reasonable").

Rather than face delay and uncertainty, the Settlement provides immediate and substantial benefits to the Settlement Class Members. *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993) "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Here, the prospect of continued litigation was very real, favoring Final Approval.

### c.    The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment

Prior to settling, Class Counsel developed ample information and performed analyses from which "to assess their position[] in great detail and make a reasonable decision on settlement, which is all that is required." *In re Oil Spill by Oil Rig Deepwater Horizon*, 2013 WL 144042, at *37 (E.D. La. Jan. 11, 2013). Here, Class Counsel were able to obtain Plan-related documents, Plan transactional data, and information gleaned from the numerous governmental investigations regarding the underlying facts that gave rise to Plaintiffs' claims of imprudence. This extensive informal discovery allowed Class Counsel to better understand the merits of this Action, prepared them for the mediation, and allowed them to engage in vigorous, arms-length negotiations under the direction of an experienced and well-respected mediator who fully explored the issues in the case and helped the parties reach the proposed Settlement. Thus, this factor too favors approving the Settlement.

### d.    Plaintiffs Would Have Faced Significant Obstacles to Prevailing

The probability of plaintiffs' success on the merits and the range of possible recovery absent settlement is another important factor in assessing the reasonableness of a settlement. *Ayers v. Thompson*, 358 F.3d 356, 370 (5th Cir. 2004). Class Counsel believe that Plaintiffs

14

have a solid case against Defendants for their fiduciary transgressions. Even so, Class Counsel are mindful that Defendants advanced significant defenses that Plaintiffs would have been required to overcome in the absence of the Settlement.

Although the value of Amedisys stock declined significantly when the market learned about some of the company's problems, in June 2012 this Court dismissed the Securities Action, which was predicated on a finding that the investor plaintiffs had not sufficiently alleged that the defendants' conduct or the allegedly false statements (which are also at issue here) had caused the company's stock price to be artificially inflated or caused the investors' losses. When the Court dismissed the Securities Action, the parties here had fully briefed Defendants' motion to dismiss in which Defendants sought to dismiss all of Plaintiffs' ERISA claims, making arguments similar to those that the defendants made in the Securities Action as well as making additional arguments that were specific to the ERISA claims. If the Court accepted any of Defendants' arguments, it could have dismissed this ERISA Action too, leaving Plaintiffs and the Class with no recovery. This fact favors approving the Settlement.

Apart from the risks Plaintiffs faced in litigation, continuing to prosecute this Action would have involved substantial delay and expense, further favoring Final Approval here. Even if Plaintiffs had obtained class certification and survived an inevitable Rule 23(f) petition, they still faced summary judgment, a trial on the merits (and the reality that recent ERISA cases taken to trial have resulted in verdicts in defendants' favor[11]), and a post-judgment appeal. The risks, uncertainties and delays from this process would have been significant, favoring the Settlement. *See, e.g., Burford v. Cargill, Inc.*, 2012 WL 5472118, \*5 (W.D. La. Nov. 8 2012).

---

[11] *See* n.5 *supra.*

e.     **The Benefits Provided by the Settlement Are Fair, Adequate, and Reasonable Compared to the Range of Possible Recovery**

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "[t]he fact that a proposed settlement . . . only amount[s] to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974)). Indeed, "a satisfactory settlement . . . could . . . amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* (quoting *City of Detroit*, 495 F.2d at 455 n.2). This is because a settlement must be evaluated "taking into account the uncertainty and risks involved in litigation" and "in light of the strength of the claims and possible defenses." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 727 (E.D. La. 2008).

Courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988). "By definition, settlements are the product of give and take. In the process, parties make concessions and in doing so, give up relief that they may have sought in exchange for other relief that is agreeable to both sides." *Frew v. Hawkins*, 2007 WL 2667985, *29 (E.D. Tex. Sept. 5, 2007). Consequently, "courts do not look for perfection when deciding whether to approve settlements in class actions." *Id.*

The $1.2 million cash recovery, as well as Defendants' therapeutic relief, are significant given the complexity of the Action and the substantial barriers that lay ahead for Plaintiffs and the Settlement Class. The Settlement, facilitated and supported by an experienced mediator, is an extremely fair and reasonable recovery for the Settlement Class in light of Defendants' possible

defenses and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement.

> ### f.    The Opinions of Class Counsel, the Class Representatives, and Absent Class Members Favor Approving the Settlement

Class Counsel wholeheartedly endorse the Settlement. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010) (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)). Further, Plaintiffs also support this Settlement.

To date, no Settlement Class Members had objected to the Settlement. It is settled "that one indication of the fairness of a settlement is the lack of or small number of objections." *In re Oil Spill by Oil Rig Deepwater Horizon*, 2013 WL 144042 at *39; *Quintanilla v. A & R Demolition Inc.*, 2008 WL 9410399, *5 (S.D. Tex. May 7, 2007) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"). Accordingly, this factor also supports final approval of the Settlement.

> ### 3.    The Court Should Certify the Settlement Class

This Court previously found that the proposed Settlement Class satisfied the requirements of Rule 23(a) and 23(b)(1). *See* D.E. 248. The Court should make the same class certification findings in granting Final Approval. *See Bredthauer v. Lundstrom, et al.*, No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013) (Order granting final certification to settlement class in analogous ERISA class action.

> ## IV.    APPLICATION FOR CASE CONTRIBUTION AWARDS

The excellent result obtained in this Action could not have been achieved without the substantial and continuing effort of the Named Plaintiffs. From counsel's pre-suit investigation,

through the filing of the initial complaints, and until the Settlement Agreement was memorialized, the Named Plaintiffs actively pursued the litigation, remained informed, and offered their insight and opinions. Accordingly, Class Counsel respectfully submits that the Named Plaintiffs should be compensated for their contributions. The Settlement Class Members appear to endorse this request as, to date, no Settlement Class Member has objected to Class Counsel's request of a Case Contribution Award of $5,000 for each Named Plaintiff.

Case Contribution Awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Altier v. Worley Catastrophe Response, LLC*, 2012 WL 161824, *15 (E.D. La. Jan. 18, 2012) (quoting *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 333 n.65 (3rd Cir. 2011)). "It is not unusual for a court to make an 'incentive award' to named plaintiffs because of their sacrifices in pursuit of litigation on behalf of the class." *Cook v. Howard*, 2013 WL 943664, *3 n.4 (S.D. Miss. Mar. 11, 2013) (quoting *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 503-04 (N.D. Miss. 1996)). Courts have consistently found incentive awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g., In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 504 (N.D. Miss. 1996) ("approving incentive awards of $10,000 to each of the four named plaintiffs").

Accordingly, courts within this Circuit, and across the country, have approved incentive awards in analogous ERISA class actions substantially higher than the Case Contribution Awards requested here. *See In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004) (awarding $10,000 to the named plaintiff); *see also, Cook*, 142 F.3d at 1016 (Seventh Circuit affirmed award of $25,000 incentive payment to named plaintiff in ERISA action); *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, at *8 (D.N.J.

May 31, 2012) (approving a $10,000 incentive award).

Here, the three Named Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including (1) submitting to interviews with Class Counsel, (2) providing Class Counsel with documents and information (*i.e.*, Plan account statements), and (3) participating in conferences with Class Counsel. These individuals not only devoted time and effort to the litigation, but the end result of their efforts, and those of Class Counsel, substantially benefited the Settlement Class. The Settlement would not have been possible without the effort of the Named Plaintiffs.

Accordingly, Class Counsel respectfully submits that the Case Contribution Awards requested here are reasonable and should be approved.

## V.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

As indicated in the Agreement and the Notice, and consistent with standard class action practice and procedure, Class Counsel respectfully request attorneys' fees equal to one-third of the $1.2 million Settlement Fund created through counsel's efforts. Class Counsel also seek reimbursement of limited out-of-pocket costs and expenses totaling $41,442.76 incurred to prosecute this Action. Defendants do not oppose this request. Settlement Agreement ¶ 9. More importantly, to date no member of the Settlement Class has objected to this request either.

As set forth below, the one-third fee request is well within the range of attorneys' fees consistently awarded by District Courts in the Fifth Circuit in common fund class actions. *Collins*, 568 F. Supp. 2d at 729 ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third") (citing *In re Harrah's Entm't, Inc.,* 1998 WL 832574, *4 (E.D. La. Nov. 25, 1998)). Accordingly, and for the reasons detailed herein, Class Counsel submits that the requested fee is appropriate, fair, and reasonable and should be approved.

A.    **The Law Awards Class Counsel Fees From the Common
      Fund Created Through Their Efforts**

The Supreme Court and the Fifth Circuit have recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) (citing *Van Gemert*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature. *See, e.g.*, *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 687 (M.D. Ala. 1988); *see also Deposit Guar. Nat'l Bank v. Rope*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons. *Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

In *Dell*, the controlling authority regarding attorneys' fees in common-fund class action cases, the Fifth Circuit "endorse[d] the district courts' . . . use of the percentage method" when calculating attorneys' fees in common fund class action cases. 669 F.3d at 644. When using the "percentage method . . .[,] the court awards fees as a reasonable percentage of the common fund." *Id.* at 642. "[D]istrict courts in [the Fifth] Circuit regularly use the percentage method," which "allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Id.* at 643; *see also Bethea v. Sprint Commc'ns Co.*, 2013 WL 228094, *3 (S.D. Miss. Jan. 18, 2013) ("adopt[ing] the percentage-of-the-fund approach" to calculate attorneys' fees in a common fund class action case).

The Court has substantial discretion in determining the appropriate fee percentage. "No

general rule can be articulated on what is a reasonable percentage of a common fund." *Bethea*, 2013 WL 228094, *3 (quoting *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 369 (S.D. Miss. 2003)). Nonetheless, awards commonly fall between a lower end of 20% and an upper end of 50%. *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003). Further, as noted above, "it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third." *Collins*, 568 F. Supp. 2d at 729.

Class Counsel's fee request of one-third of the Settlement Amount falls within this accepted range. Importantly, Plaintiffs' fee application seeks no enhancement predicated on the therapeutic relief conferred under the Settlement Agreement.

**B.      Application of the *Johnson* Factors Supports the Requested Fee**

The Fifth Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award class action counsel:

(1)      the time and labor required;

(2)      the novelty and difficulty of the relevant questions;

(3)      the skill required to properly carry out the legal services;

(4)      the preclusion of other employment by the attorney as a result of his acceptance of the case;

(5)      the customary fee;

(6)      whether the fee is fixed or contingent;

(7)      time limitations imposed by the clients or the circumstances;

(8)      the results obtained, including the amount recovered for the clients;

(9)      the experience, reputation, and ability of the attorneys;

(10)      the "undesirability" of the case;

21

(11)    the nature and the length of the professional relationship with the clients;
        and

(12)    fee awards in similar cases.

*Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). "Even though it is apparent that the *Johnson* factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered." *In re Combustion, Inc.*, 968 F. Supp. 1116, (W.D. LA, 1997). As applied here, the *Johnson* factors demonstrate that the Court should approve the requested fee.

### 1.    Prosecuting the Action Required Substantial Time and Labor

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable.  Throughout the Action, Class Counsel, devoted significant time and effort to prosecuting these claims and worked diligently to coordinate their efforts on the case, maximizing efficiency and minimizing duplication.  Frequent conference calls among Plaintiffs' Counsel were held during the course of the litigation.

Class Counsel spent a substantial amount of time investigating the claims of fiduciary breaches against Defendants.  Class Counsel also reviewed and monitored the governmental investigations, and the related Securities and Derivative Actions, and gathered information about Defendants' conduct and the precise contours of the Plan and its operation.  This information was essential to Class Counsel's ability to understand the nature of Defendants' alleged fiduciary transgressions and to develop an appropriate settlement position.  Class Counsel also expended significant resources researching and developing the legal claims at issue.

Settlement negotiations and internal refinement of the Plan's estimated damages consumed additional time and resources.  The in-person all day mediation, and the preceding

telephone conversations, also required substantial preparation. Moreover, after reaching the Agreement in principal, Class Counsel spent a month having detailed discussions and negotiations about the specific terms of the Settlement.

Class Counsel's coordinated work paid great dividends for the Settlement Class and was essential to achieving the Settlement. The time and resources Class Counsel devoted to prosecuting and settling this Action justify the fee that is being requested. It bears noting that Class Counsel are not seeking fees for the additional time they will spend stewarding this Settlement through disbursement.

### 2. The Second and Third *Johnson* Factors Support The Requested Fee Award

To begin with, "[a]n ERISA case involves highly-specialized and complex areas of law." *Hargrove v. Eaglepicher Corp.*, 2012 WL 1668152, at *2 (E.D. Mich. 20912). Accordingly, most law firms are not able to prosecute successfully these complex claims, much less on a class-wide basis.

Class Counsel, experienced ERISA litigators, possess the attributes needed to prosecute these claims including addressing the complex nature of ERISA claims as well as the complexities of class actions in general. Their skill and effort provided a substantial benefit to the Settlement Class. Accordingly, the complexity of the legal issues involved, and the skill demonstrated by Class Counsel in addressing these issues, warrant the fee request. *See Klein*, 705 F. Supp. 2d at 677 ("The court finds that the complexity of the issues also favors an increase in the benchmark percentage.").

The Court also should consider the quality of opposing counsel in evaluating the quality of representation by Class Counsel. *See Billitteri v. Secs. Am.*, Inc., 2011 WL 3585983, *7 (N.D. Tex. Aug. 4, 2011) ("[B]ecause of the extremely effective work of opposing counsel . . . The

skill required here . . . certainly justifies the contemplated award"); *Shaw*, 91 F. Supp. 2d at 970 (finding the presence of "very skilled [opposing] counsel from two of the largest, if not the two largest, Texas-based law firms" as relevant to a *Johnson* analysis). Throughout the litigation, Defendants were represented by extremely capable counsel. Consequently, this too favors approving the requested fee award. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, *30 (N.D. Tex. Nov. 8, 2005) ("The standing of opposing counsel should be weighed in determining the fee, because such standing reflects the challenge faced by plaintiffs' attorneys").

### 3. The Preclusion of Other Employment

The fourth *Johnson* factor -- the preclusion of other employment by the attorney as a result of his acceptance of the case – also favors approving the requested fee award. Class Counsel spent 667 hours litigating Plaintiffs' claims. Clearly, this was time that they could not spend on other matters. *See Klein*, 705 F. Supp. 2d at 677 ("The reported hours demonstrates that work on other cases was often precluded."); *In re Combustion, Inc.*, 968 F. Supp. 1137 (same). Thus, this factor strongly favors the requested attorneys' fees.

### 4. The Fifth and Sixth *Johnson* Factors Support The Requested Fee Award

The fifth and sixth *Johnson* factors regarding the customary fee and whether this was a contingency fee case also support the requested fee award. As a preliminary matter, ERISA class actions like this are customarily taken on a contingent fee basis.[12] *See* Fearon Decl. ¶ 73. Thus, there is no guaranteed or customary fee.

In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants an

---

[12] Because this is a common fund case, the Court is not precluded from considering a lodestar multiplier, or enhancing Plaintiffs' fee. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 791 (S.D. Tex. 2008)(the holding in [*Dague*] that enhancement of the lodestar by a multiplier based on the contingent nature of a fee is not allowed when fees are awarded to plaintiffs' counsel under fee-shifting provisions of statutes, does not apply to common fund cases.").

appropriate fee.  In "[r]ecognizing the contingent risk of nonpayment in [class action] cases, courts have found that class counsel ought to be compensated . . . for risk of loss or nonpayment assumed by carrying through with the case." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859-60 (E.D. La. 2007) (citing *In re Combustion, Inc.,* 968 F. Supp. 1116, 1132 (W.D. La. 1997)).

> Public policy concerns also support the requested fee.  As one district court aptly noted,

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures.  If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 546 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

Despite Class Counsel's enormous effort in litigating the Action for nearly four years, they remain completely uncompensated for the time they invested and the expenses they advanced.  Uncompensated expenditures of this magnitude can severely damage or destroy firms of the relatively small size of the firms of Class Counsel.  There can be no dispute that this case entailed substantial risk of nonpayment, supporting the requested fee.

### 5.  Time Limitations Imposed by the Clients or the Circumstances

"The *Johnson* Court stated that this factor is particularly important when a new counsel is called in to prosecute the appeal or handle matters at a late stage in the proceeding."  *In re Combustion, Inc.,* 968 F. Supp. at 1138 (citing *Johnson v. Georgia Highway Express,* 488 F.2d at 718).  Accordingly, "[t]his factor has no relevance to this particular case." *Id.*

### 6.  Class Counsel Achieved a Superb Result

Given the significant litigation risks faced by the Settlement Class here, Class Counsel

took great risk, demonstrated great skill, and obtained a favorable result for the Settlement Class. Defendants mounted vigorous defenses and advanced substantially similar arguments to those which this Court found persuasive in the related Securities Action. Success under these circumstances represents an achievement worthy of appropriate compensation.

Indeed, rather than facing several more years of costly and uncertain litigation, eligible Settlement Class Members will receive an immediate cash benefit. Moreover, the payments to the Settlement Class will be forthcoming automatically, through automatic deposit into their Plan account. They are not required to complete a claim form. Finally, as part of the Settlement, Defendants have agreed to certain therapeutic relief which benefit the Settlement Class and help obviate the risk factors that originally gave rise to this litigation. Accordingly, this *Johnson* factor supports the requested fee award.

### 7. The Experience, Reputation, and Ability of the Attorneys

The ninth *Johnson* factor – the experience, reputation, and ability of counsel – also favors approving the requested fee award. As set forth in Plaintiffs' preliminary approval motion, Plaintiffs' counsel are experienced ERISA litigators who have recovered tens of millions of dollars for plans' participants. *See* D.E. 243-2 and D.E. 245-1 and 2 filed therewith. Courts in other jurisdictions have appointed Class Counsel to leadership positions for other complex class actions based upon their experience. *See, e.g., Bredthauer v. Lundstrom, et al.,* No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013)(in final approval order, appointing Squitieri & Fearon, LLP and Faruqi & Faruqi, LLP as class counsel in analogous ERISA class action).

### 8. The "Undesirability" of the Action

The Settlement here is particularly noteworthy because the substantial risks of the case made it relatively undesirable. Consideration of the "litigation risks" factor under *Johnson*

"recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit – not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976); *Walco Investments v. Thenen*, 975 F. Supp. 1468, 1473 (S.D. Fla. 1997).

Prosecuting the Action was risky from the outset as ERISA actions are inherently complicated. Moreover, as noted above, plaintiffs have not fared well in ERISA imprudent investment cases at trial and have lost at least four trials in similar cases.[13] Despite these facts, Plaintiffs' counsel commenced this action using a contingent fee arrangement, further supporting Class Counsel' fee request.

### 9. The Nature and the Length of the Professional Relationship with the Clients

The eleventh *Johnson* factor, the nature and the length of the professional relationship with the clients, is neutral as there was no special length of relationship between Class Counsel and the Named Plaintiffs. *See* Fearon Decl. ¶ 78. As one district court within this Circuit aptly put it, "[i]n a class action" this *Johnson* factor "is not relevant." *In re Combustion, Inc.*, 968 F. Supp. at 1139.

### 10.   The Requested Fee Comports With Fees Awarded in Similar Cases

---

[13] *See Brieger v. Tellabs,* 659 F. Supp. 2d 967 (N.D. Ill. 2009); *Nelson v. Hodowal (IPALCO)*, 512 F.3d 347 (7th Cir. 2008); *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006); *Landgraff v. Columbia/HCA Healthcare Corp.*, No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000).

The fee sought here matches the fee typically awarded in similar cases. *See Bredthauer v. Lundstrom, et al.,* No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013) (Order awarding one-third in analogous ERISA class action). Legions of decisions have found that a one-third recovery is well within the range of a customary fee. *See, e.g., Shaw,* 91 F. Supp. 2d at 972 ("Empirical studies show that . . . fee awards in class actions average around one-third of the recovery"). Indeed, numerous decisions have awarded attorneys' fees up to (or in excess of) one-third, confirming the fairness and reasonableness of the fee requested here.[14]

Courts within the Fifth Circuit have awarded fees similar to the fees requested here. *See, e.g., Faircloth v. Certified Fin. Inc.,* 2001 WL 527489, \*9 (E.D. La. May 16, 2001) *(*awarding 33.34% on a $1,534,321 settlement fund); *Kleinman v. Harris,* Civil Action No. 3:89-CV-1869-X (N.D. Tex. June 21, 1993) ("approving fee of approximately one-third of benefit achieved of $1,170,000") (cited in *In re Catfish Antitrust Litig.,* 939 F. Supp. at 500).

As illustrated, Class Counsel's request for an attorneys' fee award of one-third of the Settlement here reflects the general market rate for class actions, including ERISA-based matters. In addition, Class Counsel's fee application of one-third is supported by the Settlement Agreement itself, a contract negotiated and executed with experienced defense counsel who agreed that Plaintiffs could seek a fee award up to 33.3% of the common fund. *See* Settlement Agreement ¶ 9. Further, the fact that no Settlement Class Member has objected to this provision underscores its reasonableness. Consequently, the *Johnson* factor also supports the requested fee.

---

[14] *See, e.g., In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403 (S.D. Tex. 1999) (35.1 percent)); *see also Gaskill v. Gordon,* 942 F. Supp. 382, 387-88 (N.D. Ill. 1996) (finding that 33 percent is the norm, and awarding 38 percent of settlement fund), *aff'd,* 160 F.3d 361 (7th Cir. 1998); *In re Crazy Eddie Sec. Litig.,* 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8 percent); *In re Ampicillin Antitrust Litig.,* 526 F. Supp. 494, 498 (D.D.C. 1981) (45 percent); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.,* 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979) (approximately 53 percent), *aff'd,* 622 F.2d 1106 (2d Cir. 1980); *Zinman v. Avemco Corp.,* 1978 WL 5686 (E.D. Pa. Jan. 18, 1978) (50 percent).

## C. The Expense Request Is Appropriate

Class Counsel also request reimbursement for a total of $41,442.76 in litigation expenses. This sum corresponds to the out-of-pocket expenses that Class Counsel necessarily incurred to prosecute and settle the Action. These costs and expenses consist primarily of (i) $6,556.82 in mediator's fees; (ii) $26,045 in local counsel fees for non-liaison counsel; (iii) $1,579 for investigatory fees; and (iv) approximately $3,600.00 in travel expenses, mostly for travel to Louisiana and Tennessee to meet with witnesses and the proposed class representatives. As set forth in the accompanying Declaration, Plaintiffs' Counsel attempted to minimize expenses and to economize. Fearon Decl. ¶ 86.

All of these out-of-pocket expenses were reasonably and necessarily incurred to prosecute this Action.

## VI.    CONCLUSION

Accordingly, Plaintiffs and Class Counsel respectfully request that this Court grant the relief requested and enter the proposed Final Judgment.

Dated: May 23, 2014                               Respectfully submitted,

                                                  By: /s/ Scott E. Brady
                                                      Scott E. Brady
                                                  **BOHRER LAW FIRM, L.L.C.**
                                                  8712 Jefferson Highway, Suite B
                                                  Baton Rouge, LA 70809
                                                  Telephone: (225) 925-5297
                                                  Facsimile: (225) 231-7000
                                                  Email: scott@bohrerlaw.com

                                                  *Interim Liaison Counsel for Plaintiffs*

By: /s/ Stephen J. Fearon, Jr.
Stephen J. Fearon, Jr. (pro hac vice)
SQUITIERI & FEARON, LLP
32 East 57th Street, 12th Floor
New York, New York 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com

FARUQI & FARUQI, LLP
101 Greenwood Avenue
Jenkintown, PA 19046
Tel: (215) 277-5770
Fax: (215) 277-5771
*Court-Appointed Co-Lead Counsel for Plaintiffs*

CONNOLLY WELLS & GRAY, LLP
Gerald D. Wells, III
2200 Renaissance Blvd., Suite
King of Prussia, PA 19406
Tel: (610) 822-3702
Email: gwells@cwg-law.com

*Counsel for Plaintiff Pia Galimba*

## CERTIFICATE OF SERVICE

I, Stephen J. Feaorn, Jr., counsel for Plaintiffs, hereby certify that on May 23, 2014, I electronically filed the attached with the Clerk of the Court using the ECF system which sent notification of such filing to counsel of record.

Dated: May 23, 2014                    By: /s Stephen J. Fearon, Jr.
                                           STEPHEN J. FEARON, JR.