## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT F. BACH, et al., | Civil Action No.  10-395-BAJ-SCN |
| Plaintiffs, | |
| v. | |
| AMEDISYS, INC., et al., | |
| Defendants. | |

## DECLARATION OF STEPHEN J. FEARON, JR. IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, APPLICATION FOR CASE CONTRIBUTION AWARDS, AND APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

I, STEPHEN J. FEARON, JR., hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1476:

1.    I am a partner with the law firm Squitieri & Fearon, LLP ("S&F"), counsel of record for the named plaintiffs, Wanda Corbin, Linda Trammel, and Pia Galimba ("Named Plaintiffs" or "Plaintiffs")[1] and the preliminarily certified class in this matter (*see* Dkt. No. 248).

2.    I am personally involved in all aspects of the prosecution of this matter ("the Action").  The information set forth in this Declaration is based upon my personal knowledge, as well as information shared with me by my co-counsel.

3.    I am one of the attorneys responsible for prosecuting of this matter on behalf of S&F.  Indeed, I have been personally involved in the Action from the pre-suit investigation through today.  In the Preliminary Approval Order the Court preliminarily appointed my firm as one of the two Class Counsel.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated December 13, 2013, D.E. 244 (the "Settlement Agreement").

4.     I respectfully submit this Declaration in support of Plaintiffs' unopposed motion (a) for final approval of the Settlement Agreement, (b) approval of the Plan of Allocation, (c) approval of Case Contribution Awards for the Named Plaintiffs, and (d) an award of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel.

A.     **INTRODUCTION**

5.     The Action began on September 27, 2010 when Plaintiff Wanda Corbin filed her initial complaint against Defendants pursuant to §§ 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132 in the United States District Court Middle District of Louisiana, Dkt. No. 10-642-BAJ-SCR.

6.     Thereafter, Plaintiff Pia Galimba ("Galimba") filed a separate ERISA action before this Court on October 22, 2010, which was later consolidated with the *Corbin* action.

7.     On March 10, 2011, Plaintiffs Corbin and Galimba, along with Linda Trammel, filed the Consolidated ERISA Class Action Complaint ("Complaint"). Defendants responded by moving to dismiss Plaintiffs' Complaint in its entirety in April 2011.

8.     Rather than repeat the procedural history of the case that is more fully set forth in the Settlement Agreement and in the papers that Plaintiffs previously submitted with their preliminary approval motion, I will primarily discuss here the proposed Settlement and the reasons why I believe that the Settlement is fair, reasonable and adequate and why the Court should approve the other relief requested in this motion.

9.     Defendants' motions to dismiss were fully briefed and pending before this Court when the Parties agreed to mediate this matter in October 2013.

10.     Settlement negotiations in this case were hard-fought and at arm's-length.  On November 5, 2013, the Parties participated in a full-day mediation session before Robert A. Meyer, Esq. of Loeb & Loeb, an experienced mediator in ERISA class actions.

11.     The negotiations were complex and intense and lasted until early evening.  During the mediation, the Parties debated the legal and factual issues concerning liability and damages. Both Parties defended their positions vigorously before Mr. Meyer ultimately was able to bridge the gap separating the Parties.

12.     After agreeing in principal to the terms of the Settlement, several weeks of further negotiation ensued, including with regard to the scope of releases.  On December 13, 2013, the Parties executed the Settlement Agreement and moved for preliminary approval of the proposed Settlement.

13.     Nothing in the course of the negotiations or the substance of this Settlement discloses grounds to doubt its fairness.  To the contrary, the arm's-length nature of the negotiations and the participation of experienced advocates on both sides throughout the process strongly support the conclusion that the proposed Settlement is fair, reasonable and adequate.

14.     The Court granted preliminary approval to this proposed Settlement on April 14, 2014.

15.     The Settlement provides that the Settlement Class shall receive the sum of $1.2 million, net of attorneys' fees, expenses, notice and administration costs, Court-approved Case Contribution Awards to Named Plaintiffs and other Court-approved deductions pursuant to the Plan of Allocation, which Plaintiffs previously filed with their preliminary approval motion.

16.     In addition to the $1.2 million cash payment, Defendants agreed to implement certain therapeutic relief which will help ensure that Plan participants are fully informed of their rights under ERISA and help prevent the conduct that originally gave rise to Plaintiffs' claims.

17.     In my opinion, the proposed Settlement provides significant relief to the Settlement Class members, especially in light of the significant risks that the Settlement Class faced in this case, as discussed below.

**B.     THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE**

18.     The Settlement, which is the product of extensive arm's-length negotiations after litigation by the Parties, is fair, reasonable, and adequate, and, consequently, is in the best interests of the Settlement Class.

19.     The Settlement establishes a Settlement Fund for the benefit of Settlement Class members in the amount of $1.2 million, less applicable deductions.  The Settlement also provides certain therapeutic relief for Plan participants going forward, helping to prevent some of the problems that gave rise to this litigation.

20.     As set forth in greater detail in the accompanying memorandum, Plaintiffs entered into this Settlement fully understanding the strengths and weaknesses of their claims, based on their direct involvement in this Action as Named Plaintiffs, as well as the extensive legal research conducted by Class Counsel and Class Counsel's unique experience with these types of complex class actions.

21.     The Settlement is the culmination of over three and a half years' worth of hard-fought litigation, followed by vigorous arm's-length settlement negotiations under the auspices of an experienced and well-regarded mediator.

22.     Class Counsel believes that the Settlement represents an excellent result for the Settlement Class, both in absolute terms and in light of the risks and uncertainties of continued litigation and is, by any reasonable objective measure, a fair, adequate and reasonable Settlement.

23.     Resolving this case now allows the Parties to avoid years of litigation that would deplete available insurance coverage and could result in a judgment or verdict that is less than the recovery under the Settlement.  In fact, it is possible that there would be no recovery at all without the Settlement.

24.     Throughout the litigation I believed that there was a real risk to the Settlement Class of limited recovery or no recovery at all and my belief became more firm when this Court dismissed the parallel Securities Action against some of the same defendants as in this case. Many of the arguments on which the defendants in that case prevailed also applied in this case.

25.     In recommending this Settlement as fair, reasonable and adequate I considered the six factors identified by the Court of Appeal as those that courts should consider in deciding whether a proposed class action settlement is fair, reasonable, and adequate.  Those factors are: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

26.     It is my opinion that each of these factors favors approving the Settlement.

27.    For example, this Settlement was not the result of fraud or collusion.  Rather, this Settlement was the product of extensive arms-length negotiations between experienced counsel under the supervision of a respected mediator.  Accordingly, the first *Reed* factor supports approval of the Settlement.

28.    ERISA class action litigation is a highly complex area of the law.  Had the Parties not reached the Settlement, they faced several years of litigation, including extensive discovery and substantial motion practice.  This Settlement eliminates the need to devote further time and expense to this case and removes the risk and uncertainty of continuing to litigate this complex case.

29.    Before agreeing to the Settlement, Plaintiffs and their counsel thoroughly understood the factual and legal issues involved in the case and appreciated its strengths and weaknesses.  They understood Defendants' arguments on liability and damages and had developed sufficient information to assess the claims and defenses in the case and to properly value the claims.

30.    Plaintiff's Counsel were well aware of the strengths and weaknesses of this case before agreeing to the Settlement.  Accordingly, in my view, the third *Reed* factor supports approval of the Settlement.

31.    The fourth *Reed* factor -- the probability of plaintiffs' success on the merits -- also supports approving the Settlement.  Although Class Counsel are confident in their ability ultimately to prove Plaintiffs' claims, the risk of losing the case on a pre-trial motion or at trial or appeal favors the Settlement.  Indeed, Plaintiffs' Counsel were well aware that Defendants made substantially similar arguments here to the ones that they successfully made in the related Securities Action and that led the Court to dismiss that case.

32.     Here Plaintiffs alleged that when the Company's stock price declined, the Plan's holdings of Amedisys stock were worth millions of dollars less than they were before the drop. Plaintiffs contended that the Class incurred millions of dollars in damages.

33.     During the course of the litigation (and mediation), however, Defendants consistently challenged Plaintiffs' damages, arguing that Plaintiffs cannot establish imprudence or damages during the Class Period and that any conceivable imprudence could not have occurred until well after Amedisys stock had lost a significant majority of its value. Defendants also asserted that the Company's stock continues to trade at more than $14 per share, undermining Plaintiffs' assertion that the company was at risk and that the stock was an imprudent investment.

34.     After this Court dismissed the Securities Action, I considered it very possible that the Court would likewise dismiss this case on Defendants' motion to dismiss. I also considered that recent decisions in other ERISA cases had made it significantly more difficult for plaintiffs to prevail in this type of ERISA case than it had been when Plaintiffs first filed this case. I believed that unfavorable decisions in other ERISA cases made it possible that the Class would receive nothing here even if "on paper" the damages to the Class could be millions of dollars. Thus, in my view, the fifth *Reed* factor -- the range of possible recovery -- favors this sum-certain Settlement.

35.     I also believe that the final *Reed* factor -- the opinions of the class counsel, class representatives, and absent class members – strongly supports approving the Settlement. Each Named Plaintiff wholly supports this Settlement. So too does Class Counsel. Moreover, not a single Class Member has objected to the Settlement even though the Settlement Administrator

7

has mailed more than 43,000 notices to Settlement Class members describing the Settlement and giving them the chance to object to it being mailed.

36.     My co-counsel and I, who all have significant experience litigating class actions like this, share the view that the Settlement is fair and reasonable in light of the relevant risk factors.  Accordingly, based on their professional opinion, all of Plaintiffs' Counsel support this Settlement.

## C.     THE PLAN OF ALLOCATION SHOULD BE APPROVED

37.     The Settlement proceeds will be allocated to Settlement Class Members pursuant to the proposed Plan of Allocation.

38.     The allocation method set forth in the Plan of Allocation is the basic approach that has been used in settlements of other 401(k) company stock class actions under ERISA, and it has been approved by judges in numerous cases, including other similar ERISA class actions in which I was class counsel.

39.     Importantly, the Plan of Allocation provides that each qualifying Class Member will automatically receive their portion of the Settlement proceeds based on their percentage of the loss suffered in their Plan account.

## D.     THE CLASS SHOULD BE CERTIFIED AND CLASS COUNSEL APPOINTED

40.     Because Plaintiffs pursued this case in a representative capacity, in accordance with ERISA's remedial provisions, this Action is particularly appropriate for class action treatment under Rule 23(b)(1).

41.     On April 14, 2014 this Court preliminarily approved the Settlement Class, finding that Plaintiffs had demonstrated that the Action satisfied the requirements of Fed. R. Civ. P. 23.

42.     Since then, I have become aware of no changed facts or circumstances that would cause me to change my opinion that this Action and the Settlement Class satisfy the Rule 23 requirements for class certification.

43.     Accordingly, based on my experience in prosecuting ERISA class actions and other types of class actions, I believe that this Action and the Settlement Class satisfy the requirements for final class certification.

44.     I also believe that the best interests of the class will be served by appointing my firm and Faruqi & Faruqi as Class Counsel.

45.     Indeed, those two firms have served well as co-lead class counsel in previous ERISA actions. *See, e.g., Bredthauer v. Lundstrom, et al.,* No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013) (Order granting final certification to settlement class in analogous ERISA class action, including finding appointment of S&F and F&F as class counsel satisfied Rule 23(g)).

46.     I support certifying the Settlement Class and appointing Class Counsel as requested in the motion for final approval of the Settlement.

## E.     SETTLEMENT ADMINISTRATION

47.     The Preliminary Approval Order established a schedule for disseminating the approved form of Class Notice and established a schedule leading to the Final Approval Hearing. (Dkt. No.248)

48.     Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Berdon Claims Administration ("Berdon"), mailed, via First-Class Mail, the Court-approved Class Notice to 43,285 Settlement Class Members on April 23, 2014. *See* Affidavit of Michael Rosenbaum Re: Dissemination of Class Notice, Dkt. No. 249 ("Berdon Claims Affidavit").

49.     In accordance with the Court's Preliminary Approval Order, Berdon also has placed on its website, www.berdonclaims.com, the Class Notice along with the Complaint, Settlement Agreement, Preliminary Approval Order, Plan of Allocation and other documents relating to this Action.

50.     The notice program has been effective in advising the Settlement Class of the pendency of this Settlement.  To date, multiple individuals have contacted Class Counsel and Berdon to inquire about the Settlement and to update their contact information.

51.     District courts in analogous ERISA actions have found the mailing of direct notice to class members and providing a website was sufficient notice for purposes of satisfying Rule 23 and due process. *See Bredthauer v. Lundstrom, et al.,* No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013)("the mailing and Web site provided sufficient notice of the Fairness Hearing and of the terms of the settlement . . . the court finds the notice satisfies the requirements of Fed. R. Civ. P. 23 and due process.").  I believe that this notice program satisfies the requirements of due process and Rule 23.

52.     To date, I am aware of no objections to  the Settlement or any portion of the relief that plaintiffs request in this motion.

## F.    PLAINTIFFS' COUNSEL'S LODESTAR

53.     During the period from inception of this Action through May 23, 2014, Plaintiffs' Counsel performed more than 667 hours of work in connection with this Action for a lodestar of $342,583.  Below is a summary of the time and lodestar incurred by Plaintiffs' Counsel.

### 1.     Squitieri & Fearon, LLP

54.     Squitieri & Fearon, LLP ("S&F"), co-lead counsel in this Action, has incurred a total lodestar of $198,553.75, which is based on 405.25 hours of work by attorneys and

paralegals.  The rates listed below are the current hourly rates regularly charged by each of the attorneys and paralegals from my firm who helped prosecute the Action.  The hourly rates for the attorneys and paraprofessionals are the same as the regular current rates charged for their services in non-contingent matters and which have been accepted by courts in other complex class actions.

| Name | Position | Hours Billed | Hourly Rate | Total Lodestar |
|---|---|---|---|---|
| Stephen J. Fearon, Jr. | Partner | 201.00 | $675.00 | $135,675.00 |
| Caitlin Duffy | Associate | 57.70 | $400.00 | $ 23,080.00 |
| Olga Posmyk | Associate | 54.00 | $300.00 | $ 16,200.00 |
| Raymond Barto | Associate | 37.00 | $300.00 | $ 11,100.00 |
| Cathy McNally | Paralegal | 54.00 | $225.00 | $ 12,498.75 |
| **Total** | | 405.25 | | $198,553.75 |

## 2.    Faruqi & Faruqi, LLP

55.    Faruqi & Faruqi, LLP ("F&F"), co-lead counsel in this Action, has incurred a total lodestar of $106,024.25, which is based on 192.75 hours of work by attorneys and paralegals.  The rates listed below are the current hourly rates regularly charged by each of the attorneys and paralegals who assisted in prosecuting the Action.  The hourly rates for the attorneys and paraprofessionals are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted by courts in other complex class actions.

| Name | Position | Hours Billed | Hourly Rate | Total Lodestar |
|---|---|---|---|---|
| Jacob A. Goldberg | Partner | 18.1 | $725 | $13,122.50 |
| Richard Gonnello | Partner | .75 | $690 | $517.50 |

| Gerald D. Wells, III | Partner[2] | 159.25 | $550 | $87,587.50 |
|---|---|---|---|---|
| Stephen E. Connolly | Associate | 3.6 | $525 | $1,890.00 |
| Derek Behnke | Paralegal | 2.25 | $275 | $618.75 |
| Joy Williams | Paralegal | 1.1 | $260 | $286.00 |
| Lilia Volynkova | Paralegal | .5 | $260 | $130.00 |
| Jessica Jenks | Paralegal | 7.2 | $260 | $1,872.00 |
| **Total** | | 192.75 | | $106,024.25 |

56.    For any attorney or paralegal who left F&F during the pendency of this Action, their hourly rate was as of the last day of their employment.  No upward adjustment was made.

### 3.    Connolly Wells & Gray, LLP

57.    Connolly Wells & Gray, LLP ("CWG") is a firm formed after Mr. Wells, the primary attorney who prosecuted this matter on behalf of F&F, left F&F at the end of August 2013.  Mr. Wells' hourly rate charged here is the same rate that has been accepted by courts in other complex class actions.

| Name | Position | Hours Billed | Hourly Rate | Total Lodestar |
|---|---|---|---|---|
| Gerald D. Wells, III | Partner | 69.1 | $550 | $38,005.00 |

### 4.    Bohrer Law Firm, L.L.C.

58.    Bohrer Law Firm, L.L.C. ("Bohrer Law") served as liaison counsel in this Action and will be paid by Class Counsel for its work on the case.  As a result, Plaintiffs are not including the lodestar of Bohrer Law in the lodestar calculation.

---

2 Mr. Wells did not become a partner at F&F until January 2012. Thus, much of hours work by Mr. Wells on this matter were performed while he was an associate of F&F.

59.     The hourly rates utilized by Plaintiffs' Counsel in computing the lodestar are at or below their usual and customary hourly rates charged for ERISA breach of fiduciary duty and other complex litigation.  No upward adjustment in billing rates were made, notwithstanding the contingency and risk of the case.

60.     The time and services provided by Plaintiffs' Counsel for which fees are sought in the petition are reflected in contemporaneously maintained records of the firm.  All of the services performed by Plaintiffs' Counsel in connection with this Action were reasonable and necessary in the prosecution of this case.

61.     No time is included in the fee petition for work in connection with the fee petition and expense application or accompanying documents, including this declaration.

62.     Plaintiffs' Counsel allocated work in this case to maximize efficiency, assigning tasks both amongst the firms and within each of their respective firms with the goal of minimizing duplication.  In addition, every effort was made to assign work within and amongst the firms to minimize fees in the case.

63.     Throughout the litigation, Plaintiffs' Counsel balanced resources – again, within each of their firms and amongst the firms themselves – to ensure that the matter was litigated in the most efficient manner.  Had such efforts not been made, the number of hours devoted to the prosecution of the Action would have been significantly higher.

64.     Plaintiffs' Counsel's lodestar figures do not include charges for expense items. Each firm bills expense items separately and such charges are not duplicated in any of the firm's billing rates.

## G.   THE JOHNSON FACTORS SUPPORT PLAINTIFFS' COUNSEL'S FEE REQUEST

65.   As set forth above, Plaintiffs' Counsel have incurred a total lodestar of $342,583. However, Plaintiffs request a fee award of one third of the Settlement Amount, or $400,000. This would result in a lodestar multiplier of 1.16.

66.   Notably, this fee request does not take into account the substantial therapeutic relief provided to Plan participants nor the interest accrued on the Settlement Fund.

67.   In *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), the Fifth Circuit provided a set of twelve factors a district court should use to determine a reasonable percentage to award class action counsel.  They are:

(1)   the time and labor required;

(2)   the novelty and difficulty of the relevant questions;

(3)   the skill required to properly carry out the legal services;

(4)   the preclusion of other employment by the attorney as a result of his acceptance of the case;

(5)   the customary fee;

(6)   whether the fee is fixed or contingent;

(7)   time limitations imposed by the clients or the circumstances;

(8)   the results obtained, including the amount recovered for the clients;

(9)   the experience, reputation, and ability of the attorneys;

(10)   the "undesirability" of the case;

(11)   the nature and the length of the professional relationship with the clients; and

14

(12)   fee awards in similar cases.

68.   Here these factors support Plaintiffs' Counsel's one-third fee request.

69.   I am aware for no Settlement Class member who has objected to Plaintiffs' request for an award of attorneys fees in this case.

70.   Plaintiffs' Counsel spent a substantial amount of time investigating and pursuing the alleged fiduciary breaches at issue in this Action, billing some 667 hours to prosecuting this Action.  Accordingly, the first *Johnson* factor favors granting Plaintiffs' fee request.

71.   The complexity of the questions at issue in the Action required deft litigators, skilled at prosecuting ERISA class actions, in order to successfully resolve this Action. Consequently, the second and third *Johnson* factors also support Plaintiffs' fee request.

72.   The fourth *Johnson* factor -- the preclusion of other employment – also favors approving the requested fee award because Plaintiffs' Counsel spent 667 hours litigating Plaintiffs' claims when they could have devoted that time to on other matters.

73.   ERISA class actions such as this are customarily taken on a contingent fee basis. There is no guaranteed or customary fee when counsel prosecutes these claims for participants in ERISA plans.  As such, the fifth and sixth *Johnson* factors also support the fee request.

74.   The seventh *Johnson* factor – the time limitations imposed by the clients or the circumstances – is neutral because here Plaintiffs and the circumstances of the case did not impose time limits on Plaintiffs' Counsel.

75.   The eighth *Johnson* factor -- the results obtained, including the amount recovered for the clients – strongly supports the fee request.  Although the related Securities Action was dismissed, Plaintiffs' Counsel here were able to obtain a Settlement consisting of a cash payment of $1.2 million, as well as additional therapeutic relief.

76.     The ninth *Johnson* factor – the experience, reputation, and ability of counsel –
also favors approving the requested fee award.  Here, Class Counsel, consisting of Squitieri &
Fearon, LLP and Faruqi & Faruqi, LLP are well-recognized, experienced class action litigators.
Indeed, they have served as class counsel in analogous ERISA class actions.  *See Bredthauer v.
Lundstrom, et al.*, No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013)(in final approval order, appointing
Squitieri & Fearon, LLP and Faruqi & Faruqi, LLP as class counsel in analogous ERISA class
action).

77.     The tenth *Johnson* factor -- the "undesirability" of the Action – favors approving
the fee request because this case involved many risks that made it unappealing to other ERISA
attorneys.  This was the only case that was brought for the Settlement Class.  Unlike many
ERISA stock cases where multiple law firms file numerous lawsuits challenging a fiduciary's
conduct, no other plaintiffs or attorneys stepped forward with similar cases on behalf of Plan
participants. The case was undesirable for a number of reasons and became even more so after
this Court dismissed the related Securities Action.

78.     The eleventh *Johnson* factor, the nature and the length of the professional
relationship with the clients, is neutral with respect to Plaintiffs' fee request because here there
was no special length of relationship between Plaintiffs' Counsel and the Named Plaintiffs.

79.     The last *Johnson* factor – the fee award in similar cases – strongly supports the
fee request here.  Indeed, the one-third fee request here matches the fee typically awarded in
similar cases. *See Bredthauer v. Lundstrom, et al.,* No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013)
(Order awarding one-third in analogous ERISA class action); *In re Marsh ERISA Litig.*, 265
F.R.D. 128 (S.D.N.Y. 2010)(awarding attorneys' fees of 33% of settlement fund).

80.     Thus, as set forth above, the overwhelming majority of the *Johnson* factors

supports the propriety of Plaintiffs' Counsels' fee request.

### G.     PLAINTIFFS' COUNSEL'S EXPENSES

81.     Plaintiffs' Counsel incurred a total of $41,442.76 in unreimbursed expenses in

connection with prosecuting this Action.  The expenses incurred by Plaintiffs' Counsel are

reflected on the books and records of each of the firms.

82.     Notably, although certain of the expenses identified below were incurred several

years ago when Plaintiffs began the Action, no firm has sought an upward adjustment, or mark-

up, of the actual expense incurred.  Below is a summary of the expenses incurred by each firm.

83.     I am aware for no Settlement Class member who has objected to Plaintiffs'

request for reimbursement of the expenses in this case.

### 1.     Squitieri & Fearon, LLP

84.     S&F, co-lead counsel in this Action, incurred expenses totaling $12,685.87.

85.     These expenses can be ascertained from the firm's books and records that are

prepared from expense vouchers, check records and other materials, and are an accurate

contemporaneous recordation of the expenses incurred.

86.     The largest expense incurred by S&F was $6,556.82 for Plaintiffs' share of the

mediator's expenses. I understand that Defendants paid this same amount for their share of the

mediator's expense.   My firm's next largest expense in the case was $3,504.31 for travel-related

expenses, mostly for travel from New York to Louisiana and Tennessee to meet with witnesses

and with the class representatives. At all times, professionals my firm travel coach and stay at

modestly-priced hotels, being careful to economize.  My firm's next largest expense was

$1,204.44 for expenses associated with obtaining documents in response to FOIA requests to

government agencies and obtaining materials from other litigation involving Amedisys and its personnel.

87.   Below is a summary of the expenses incurred by S&F:

| Description of Expense | TOTAL |
|---|---|
| FEDERAL EXPRESS | $ 119.13 |
| PROCESS SERVICE | $ 95.00 |
| RESEARCH:OTHER LITIGATION | $ 1,204.44 |
| COURT REPORTERS | $ 65.70 |
| MEDIATOR | $ 6,556.82 |
| TRAVEL EXPENSES | $ 3,504.31 |
| FOOD/BEVERAGE | $ 430.23 |
| COURT FILING FEES | $ 165.00 |
| LOCAL TRANSPORTATION | $ 545.24 |
| **TOTAL** | **$12,685.87** |

## 2.   Faruqi & Faruqi, LLP

88.   F&F, co-lead counsel in this Action, incurred expenses totaling $28,523.05. These expenses can be ascertained from the firm's books and records.  These books and records are prepared from expense vouchers, check records and other materials, and are an accurate contemporaneous recordation of the expenses incurred.  Below is a summary of the expenses incurred by F&F:

| Description of Expense | Total |
|---|---|
| Local Counsel | $26,045.00 |
| FOIA request | $575.00 |
| Investigatory fees | $1,579.00 |
| Postage | $158.10 |
| Research | $90.95 |
| Filing Fee | $75.00 |

89.    F&F paid their local counsel (Donald Becker & Assoc.) out-of-pocket and treated this as an unreimbursed business expense.   Notably, once it was determined that his assistance would no longer be necessary on a day-to-day basis, F&F directed Mr. Becker to cease working on the file thereby minimizing the Class's total exposure for this expense.

**3.    Connolly Wells & Gray, LLP**

90.    CWG incurred expenses totaling $233.84.  These expenses can be ascertained from the firm's books and records.  These books and records are prepared from expense vouchers, check records and other materials, and are an accurate contemporaneous recordation of the expenses incurred.  Below is a summary of the expenses incurred by CWG:

| Description of Expense | Total |
|---|---|
| Travel/Food/Parking for Mediation | $174.00 |
| Printing/Postage/Mediation Expenses | $59.84 |

**H.    CASE CONTRIBUTION AWARDS TO NAMED PLAINTIFFS**

91.    As set forth in greater detail in the accompanying memorandum, Plaintiffs also respectfully request that the Court grant Case Contribution Awards of $5,000 to each of the three

Named Plaintiffs, Wanda Corbin, Linda Trammel, and Pia Galimba, for an aggregate award of $15,000.

92.     Federal courts often exercise their discretion under Rule 23(d) and (e) to approve case contribution awards to plaintiffs who instituted and prosecuted an action on the theory that there would be no class-wide benefit absent their suit.  The trial court has discretion to recognize the benefit of the Plaintiffs' actions with such an award.

93.     Each Named Plaintiff stepped forward to file suit on behalf of the Settlement Class and on behalf of the Plan, undertaking the responsibilities of serving as a named plaintiff and class representative.

94.     Each Named Plaintiff was instrumental in helping Class Counsel pursue this case for the Settlement Class and was willing to serve as a class representative.  Each Named Plaintiff searched his or her files for relevant records, obtained copies of documents concerning the Plan and provided information to counsel to assist them in litigating this case.  Each Named Plaintiff offered to testify for the Settlement Class at deposition and trial and they each were available throughout the litigation and the settlement process.

95.     The Named Plaintiffs also were consulted and provided input for strategic decisions, including negotiating and approving the Settlement terms.  The Named Plaintiffs actively participated in prosecuting this case and devoted a substantial amount of time and energy to protecting the Settlement Class.

96.     The Parties negotiated and reached agreement regarding the Case Contribution Awards only after reaching agreement on all other material terms of the Settlement.

97.     I am aware of no Settlement Class member who has objected to the application for the Case Contribution Awards.

98.     Based on my experience in ERISA class actions, the requested Case Contribution

Awards are at or below awards in analogous ERISA actions.  *See, e.g., See Bredthauer v.*

*Lundstrom, et al.*, No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013)(in final approval order, awarding

case contribution award of $5,000 to each of seven named plaintiffs); *see also In re Dynegy, Inc.*

*ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004) (awarding $10,000 to the named plaintiff);

*In re Household Int'l, Inc. ERISA Litig.*, No. 02-cv-7921 (N.D. Ill. Nov. 22, 2004) (awarding

$10,000 to each class representative); *In re Diebold ERISA Litig.*, No. 06-cv-170 (N.D. Ohio

Feb. 11, 2011) (awarding $10,000 to each of the four named plaintiffs).

99.     Pursuant to 28 U.S.C. §1746, I, Stephen J. Fearon, Jr., declare under penalty of

perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of May, 2014 in New York, New York.


By: */s/ Stephen J. Fearon, Jr.*
       Stephen J. Fearon, Jr. (pro hac vice)
       SQUITIERI & FEARON, LLP